# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| STREAMSCALE, INC., | |
| Plaintiff, | |
| | Civil Action No. 6:21-cv-00198 |
| v. | |
| | **JURY TRIAL DEMANDED** |
| CLOUDERA, INC., AUTOMATIC DATA PROCESSING, INC., EXPERIAN PLC, WARGAMING (AUSTIN), INC., and INTEL CORPORATION, | |
| | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

## DEFENDANT INTEL CORPORATION'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT UNDER FED. R. CIV. P. 12(B)(6)

<u>**TABLE OF CONTENTS**</u>

**Page**

I.      INTRODUCTION..................................................................................................... 1

II.     STATEMENT OF FACTS....................................................................................... 1

    A.      StreamScale's Legally Deficient Indirect Infringement Allegations........................... 2

        i.      StreamScale's '8-296 Patent Allegations.................................................... 2

        ii.     StreamScale's Allegations Regarding The Continuation Patents....................... 3

    B.      StreamScale's Legally Deficient Willful Infringement Allegations............................. 4

III.    LEGAL STANDARD .............................................................................................. 4

IV.     ARGUMENT ........................................................................................................... 5

    A.      StreamScale's Induced Infringement Claims Should Be Dismissed ........................... 5

        i.      StreamScale Alleges No Facts Supporting Pre-Suit Knowledge Of The
               Continuation Patents ............................................................................... 6

        ii.     StreamScale Has Not Alleged Any Knowledge Of Infringement Or Any Specific
               Intent To Induce Infringement Of Any Asserted Patent..................................... 8

    B.      StreamScale's Willful Infringement Claims Should Be Dismissed ........................... 11

V.      CONCLUSION ..................................................................................................... 13

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Affinity Labs of Texas, LLC v. Blackberry Ltd.*,
  Civ. No. W:13-CV-362, 2014 WL 12551207 (W.D. Tex. Apr. 30, 2014)............................10

*Affinity Labs of Texas, LLC v. Toyota Motor N. Am.*,
  No. W:13-CV-365, 2014 WL 2892285 (W.D. Tex. May 12, 2014) ............................ *passim*

*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*,
  876 F.3d 1350 (Fed. Cir. 2017)...................................................................................12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)......................................................................................................4

*Castlemorton Wireless, LLC v. Bose Corp.*,
  No. 6:20-CV-00029-ADA, 2020 WL 6578418 (W.D. Tex. July 22, 2020)......................5, 6

*Frac Shack Inc. v. AFD Petroleum (Texas) Inc.*,
  No. 7:19-CV-00026-DC, 2019 WL 3818049 (W.D. Tex. June 13, 2019) .............................12

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
  136 S. Ct. 1923 (2016).................................................................................................4, 12

*Helios Streaming, LLC v. Vudu, Inc.*,
  No. CV 19-1792-CFC-SRF, 2020 WL 2332045 (D. Del. May 11, 2020).............................8

*Inhale, Inc v. Gravitron, LLC*,
  No. 1-18-CV-762-LY, 2018 WL 7324886 (W.D. Tex. Dec. 10, 2018) ............................8, 11

*Iron Oak Techs., LLC v. Dell, Inc.*,
  No. 1:17-CV-999-RP, 2018 WL 1631396 (W.D. Tex. Apr. 4, 2018 ......................................9

*M & C Innovations, LLC v. Igloo Prods. Corp.*,
  Civ. A. No. 17-2372, 2018 WL 4620713 (S.D. Tex. July 31, 2018)......................................13

*Microsoft Corp. v. DataTern, Inc.*,
  755 F.3d 899 (Fed. Cir. 2014)...........................................................................................10

*Nobelbiz, Inc. v. Insidesales.com, Inc.*,
  No. 6:13-CV-360-MHS, 2014 WL 12378804 (E.D. Tex. Oct. 14, 2014) ...............................9

*Norman IP Holdings, LLC v. Lexmark Int'l, Inc.*,
  No. 6:11-CV-495-LED, 2013 WL 12153575 (E.D. Tex. Mar. 25, 2013) ...............................6

*Parity Networks, LLC v. Cisco Systems, Inc.*,
    Civ. No. 19-00207-209-ADA, 2019 WL 3940952 (W.D. Tex. July 26, 2019)......................11

*State Indus. v. A.O. Smith Corp.*,
    751 F.2d 1226 (Fed. Cir. 1985)..................................................................................6

*Vasudevan Software, Inc. v. TIBCO Software Inc.*,
    No. C 11-06638 RS, 2012 WL 1831543 (N.D. Cal. May 18, 2012) ........................8

**Statute**

35 U.S.C. § 284...............................................................................................................4, 12

## I.      INTRODUCTION

Plaintiff StreamScale, Inc. ("StreamScale") accuses Defendant Intel Corporation ("Intel") of willfully inducing infringement of six patents through the supposed distribution of certain opensource software.  StreamScale rests these serious allegations—and its entire basis for its claims against Intel—on a single factual allegation: that it provided Intel with "express notice" of one of the six asserted patents in 2014.  Indeed, the other five patents had not even issued as of this "express notice." It is black letter law that Intel cannot be liable for inducement or willful infringement of patents it did not know about.  That fact alone is fatal to StreamScale's claims for five of the six asserted patents.

But even if StreamScale's allegations concerning knowledge of the patents were sufficient, StreamScale does not aver the requisite facts needed to meet the other essential elements of induced and willful infringement.  Critically missing are any facts from which one could infer that Intel knew that third-party use of its opensource code supposedly infringed any of the asserted patents.  And on top of that, StreamScale's Complaint includes no factual allegations that Intel had or has the specific intent to induce infringement in connection with this opensource software, or has engaged in egregious conduct.

StreamScale's failure to plead the basic elements of induced and willful infringement warrant dismissal of StreamScale's Complaint as to Intel.

## II.     STATEMENT OF FACTS

StreamScale accuses Intel of indirectly and willfully infringing at least claim 1 of U.S. Patent Nos. 8,683,296, 9,160,374, 9,385,759, 10,003,358, 10,291,259, and 10,666,296 (the "asserted patents").  Compl. ¶¶ 44-50, 83.  The asserted patents all claim priority to a provisional patent application filed on December 30, 2011 (*id.* ¶ 44-50), and purportedly relate to accelerated erasure coding.  *Id.* ¶ 2.

1

Defendants Cloudera, Inc. ("Cloudera"), Automatic Data Processing, Inc. ("ADP"), Experian PLC ("Experian"), and Wargaming (Austin), Inc. ("Wargaming") are accused of directly infringing at least claim 1 of the asserted patents by making, using, selling, or offering to sell systems that incorporate Cloudera Erasure Coding Components.  *Id.* ¶¶ 51-52.[1]  StreamScale alleges that Intel indirectly infringes the asserted patents through use of Intel's Intelligent Storage Acceleration Library ("ISA-L") on Cloudera's platform.  *Id.* ¶¶ 83-89.

## A.    StreamScale's Legally Deficient Indirect Infringement Allegations

StreamScale's allegations fall into two categories: (1) Intel's purported infringement of U.S. Patent No. 8,683,296 (the "'8-296 Patent"); and (2) Intel's purported infringement of U.S. Patent Nos. 9,160,374 (the "'374 Patent"), 9,385,759 (the "'759 Patent"), 10,003,358 (the "'358 Patent"), 10,291,259 (the "'259 Patent"), and 10,666,296 (the "'10-296 Patent") (collectively, the "Continuation Patents").  Each is addressed in turn.

### i.    StreamScale's '8-296 Patent Allegations

StreamScale accuses Intel of inducing Cloudera, ADP, Experian, and Wargaming to infringe the '8-296 Patent by actively marketing and instructing them to use ISA-L to create systems incorporating accelerated erasure coding.  *Id.* ¶¶ 52, 83, 101.  ISA-L is allegedly "designed to be used with other components that, when combined with hardware, practice one or more claims of the '8-296 Patent."  *Id.* ¶ 102.

StreamScale's allegation of pre-suit knowledge resides in a single sentence: "In 2014,

---

[1] The Complaint accuses Cloudera, ADP, Experian, and Wargaming of "directly and/or indirectly infring[ing]" the asserted patents (Compl. ¶ 51), but otherwise includes no allegations of indirect infringement for those defendants.  *Compare* Compl. ¶¶ 55 ("ADP has directly infringed…"), 67 ("Experian has directly infringed…"), 77 ("Wargaming has directly infringed…") *with* Compl. ¶ 83 ("Intel has indirectly infringed…"); *see also id.* ¶¶ 92-98 (only alleging Cloudera, ADP, Experian, and Wargaming directly infringes), 99-104 (only alleging Intel indirectly infringes).

StreamScale provided Intel with express notice of the '8-296 Patent." *Id.* ¶ 84.

The Complaint fails to include any additional factual allegations regarding knowledge of infringement or specific intent to induce infringement. Instead, StreamScale makes generalized allegations about Intel's distribution of ISA-L:

> Intel's affirmative acts of selling and/or distributing ISA-L (or portions thereof), causing ISA-L (or portions thereof) to be manufactured and distributed, providing instructive materials and information concerning operation and use of ISA-L (or portions thereof), and providing maintenance/service for such products or services, induced Cloudera, ADP, Experian, and Wargaming to infringe at least Claim 1 of the '8-296 Patent.

*Id.* ¶ 100. StreamScale then merely parrots the claim elements for induced infringement:

> By and through these acts, Intel knowingly and specifically intended the users of ISA-L (or portions thereof) to infringe at least Claim 1 of the '8-296 Patent. Intel (1) knew or should have known of the '8-296 Patent since at least 2014, (2) performed and continues to perform affirmative acts that constitute induced infringement, and (3) knew or should have known that those acts would induce actual infringement of one or more of the '8-296 Patent's claims by users of ISA-L.

*Id.* StreamScale avers no facts to support these conclusory statements.

ii.   StreamScale's Allegations Regarding The Continuation Patents

Unlike the '8-296 Patent, StreamScale also alleges no facts relating to pre-suit knowledge of the Continuation Patents. Instead, StreamScale merely speculates that "[u]pon information and belief, Intel knew that continuation patent applications claimed priority to the '8-296 Patent" (*id.* ¶ 84), and that "[a]ll of the Patents-in-Suit are continuations of the application that ultimately issued as the '8-296 Patent." *Id.* Based on this guess, StreamScale includes the conclusory allegation that Intel therefore "knew or should have known of the Continuation Patents since at least [the date they were issued]." *See id.* ¶¶ 45, 114 ('374 Patent); 46, 129 ('759 Patent); 47, 143 ('358 Patent); 48, 157 ('259 Patent); 49, 171 ('10-296 Patent).

StreamScale's remaining allegations in support of its induced infringement claims are identical to the conclusory allegations for the '8-296 Patent, as recited above. *See* Compl. ¶¶ 114-16 ('374 Patent), 128-30 ('759 Patent), 142-146 ('358 Patent), 156-160 ('259 Patent), 170-74 ('10-296 Patent). Again, StreamScale avers no facts to support these conclusory statements.

### B.   StreamScale's Legally Deficient Willful Infringement Allegations

StreamScale also seeks enhanced damages pursuant to 35 U.S.C. § 284. Compl. ¶¶ 104 ('8-296 Patent), 118 ('374 Patent), 132 ('759 Patent), 146 ('358 Patent), 160 ('259 Patent), and 174 ('10-296 Patent).

Beyond StreamScale's failure to allege pre-suit knowledge of the Continuation Patents, described above, StreamScale does not allege any facts from which one could infer Intel has engaged in egregious conduct. Instead, StreamScale simply alleges that "Intel had actual notice of the [asserted patents] prior to this lawsuit being filed and had knowledge of the infringing nature of its activities, yet continues to induce infringement of at least Claim 1 of the [asserted patents] by Cloudera, ADP, Experian, and Wargaming." *Id.* ¶¶ 103 ('8-296 Patent), 117 ('374 Patent), 132 ('759 Patent), 145 ('358 Patent), 159 ('259 Patent), and 173 ('296 Patent). And concludes: "[t]herefore, upon information and belief, Intel's infringement of at least Claim 1 of the [asserted patents] has been and continues to be willful." *Id.* ¶¶ 104 ('8-296 Patent), 118 ('374 Patent), 132 ('759 Patent), 146 ('358 Patent), 160 ('259 Patent), and 174 ('10-296 Patent). Notably absent is any allegation that Intel committed any actions, pre-suit or otherwise, that were "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016).

### III.   LEGAL STANDARD

StreamScale's Complaint cannot survive a motion to dismiss if it fails to plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility requires "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Castlemorton Wireless, LLC v. Bose Corp.*, No. 6:20-CV-00029-ADA, 2020 WL 6578418, at *4 (W.D. Tex. July 22, 2020) (Albright, J.) (quoting *Iqbal*, 556 U.S. at 678). Well-pleaded facts are taken as true and are construed in favor of the plaintiff. *Id.* But a Complaint must establish more than a "sheer possibility" that the claims are true, and the Court is not bound to accept as true legal conclusions couched as factual allegations. *Id.*

## IV.   ARGUMENT

To manufacture claims against Intel for induced and willful infringement of the six asserted patents, StreamScale relies on a string of allegations that do not hold up legally: (1) that StreamScale's alleged notice to Intel of one of the six asserted patents can be used to impute knowledge of the remaining five patents that did not yet exist; and (2) that StreamScale's alleged notice of the ***existence*** of a single patent somehow imputed knowledge of ***infringement*** for all six patents. But these threadbare allegations fall far short of what is required to state a claim. Accordingly, StreamScale's Complaint should be dismissed as to Intel.

### A.   StreamScale's Induced Infringement Claims Should Be Dismissed

"To succeed on its induced infringement claim, [StreamScale] must allege facts showing that [Intel]: (1) had actual knowledge of the patent; (2) knowingly induced a third-party to infringe the patent; and (3) had specific intent to induce the patent infringement." *Affinity Labs of Texas, LLC v. Toyota Motor N. Am.* ("*Affinity Labs*"), No. W:13-CV-365, 2014 WL 2892285, at *2 (W.D. Tex. May 12, 2014) (citing *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006)). Dismissal of StreamScale's induced infringement claims is warranted for two reasons. First, StreamScale's Continuation Patent claims should be dismissed because it fails to allege pre-suit knowledge for those patents. Second, StreamScale's claims for all six patents should be

5

dismissed both because it fails to allege any facts to support that Intel knew its acts would result in infringement and because it fails to allege any facts to support that Intel specifically intended to induce infringement.

> i. StreamScale Alleges No Facts Supporting Pre-Suit Knowledge Of The Continuation Patents

A Complaint that "does not plead any facts that would support an allegation of pre-suit knowledge" fails as a matter of law. *Castlemorton*, 2020 WL 6578418, at *5. StreamScale's allegations with respect to pre-suit knowledge of the Continuation Patents amount to supposition that because Intel was allegedly aware of the '8-296 Patent in 2014, it was or should have been aware of later granted patents in the same family. *See* Compl. ¶ 84; *id.* ¶¶ 45, 115 ('374 Patent), 46, 129 ('759 Patent), 47, 143 ('358 Patent), 48, 157 ('259 Patent), 49, 171 ('10-296 Patent). This fails as a matter of law for two reasons.

***First***, StreamScale's speculation that Intel somehow knew that continuation patent applications claimed priority to the '8-296 Patent is legally deficient because it fails to allege a single ***fact*** showing Intel was, in fact, so aware. Critically missing from StreamScale's Complaint are any facts "alleging whether, when, or how [Intel] became aware of the [Continuation Patents]." *Norman IP Holdings, LLC v. Lexmark Int'l, Inc.*, No. 6:11-CV-495-LED, 2013 WL 12153575, at *3 (E.D. Tex. Mar. 25, 2013); *see also Affinity Labs*, 2014 WL 2892285, at *6 (holding that plaintiff's allegation that defendant was "aware of [p]laintiffs portfolio of patents" that included patents to which the asserted continuation patents claimed priority insufficient for an induced infringement claim).

***Second***, even assuming Intel knew that continuation patent applications claimed priority to the '8-296 Patent, StreamScale's allegations still fail as a matter of law because knowledge of a patent application ***does not*** impute knowledge of the resulting ***patent***. *See State Indus. v. A.O.*

*Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985) ("[f]iling an application is no guarantee any patent will issue and a very substantial percentage of applications never result in patents. What the scope of claims in patents that do issue will be is something totally unforeseeable."). As of 2014, when Intel was purportedly made aware of the '8-296 Patent, none of the Continuation Patents had even issued. *See* Compl. ¶¶ 45 ('374 Patent issued October 13, 2015), 46 ('759 Patent issued July 5, 2016), 47 ('358 Patent issued June 19, 2018), 48 ('259 Patent issued May 14, 2019), and 49 ('10-296 Patent issued May 26, 2020).

This District and others have consistently dismissed inducement claims under these circumstances. Plaintiff's Complaint in *Affinity Labs*, for instance, alleged only that "on information and belief, Toyota [had] actively induced and is actively inducing others, such as Toyota's customers, to directly infringe." 2014 WL 2892285, at *4. In its opposition to Toyota's motion to dismiss, the plaintiff added that Toyota was willfully blind to the asserted patents because they were continuations of an application included in a patent portfolio of which Toyota was aware. *Id.* at *3. The Court found Toyota's awareness of the portfolio insufficient to defeat a motion to dismiss because "[t]he fact that the Asserted Patents were issued from a continuation of a patent application … did not, without more, make plausible knowledge of the patent for purposes of inducing infringement." *Id.* at *6 (collecting cases).

Similarly, the plaintiff in *Meetrix IP, LLC v. Cisco Sys., Inc.* alleged that the defendant received actual notice of the asserted continuation patents because the parent patent was cited in several patent applications prosecuted by defendant's subsidiary. No. 1-18-CV-309-LY, 2018 WL 8261315, at *2 (W.D. Tex. Nov. 30, 2018). But the Court held that "actual notice stemming from [defendant's own] prosecution activity [was] too attenuated to plausibly infer … pre-suit

knowledge." *Id.*[2] (collecting cases); *see also Helios Streaming, LLC v. Vudu, Inc.*, No. CV 19-1792-CFC-SRF, 2020 WL 2332045, at *3 (D. Del. May 11, 2020), *report and recommendation adopted*, No. CV 19-1792-CFC/SRF, 2020 WL 3167641 (D. Del. June 15, 2020) ("Courts have held that a patent application does not provide notice of the resulting patent for indirect infringement.") (collecting cases); *Vasudevan Software, Inc. v. TIBCO Software Inc.*, No. C 11-06638 RS, 2012 WL 1831543, at *5-7 (N.D. Cal. May 18, 2012) (finding the accused infringer's knowledge of the pending patent application that led to the asserted patent and knowledge of other patents in the same family were insufficient to show actual knowledge of the asserted patent) (collecting cases).

Thus, StreamScale's allegations concerning purported knowledge of patent applications leading to the Continuation Patents are insufficient.  StreamScale's indirect infringement claims as to the Continuation Patents should be dismissed on this basis alone.

ii.    StreamScale Has Not Alleged Any Knowledge Of Infringement Or Any Specific Intent To Induce Infringement Of Any Asserted Patent

"To state a claim for induced infringement, a complaint must plead facts plausibly showing that the accused infringer 'specifically intended another party to infringe the patent and knew that the other party's acts constituted infringement.'" *Inhale, Inc v. Gravitron, LLC*, No. 1-18-CV-762-LY, 2018 WL 7324886, at *3 (W.D. Tex. Dec. 10, 2018) (quoting *Lifetime Indus. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1376-77 (Fed. Cir. 2017)).  StreamScale's Complaint fails to satisfy either of these elements essential to stating a claim for induced infringement.  StreamScale's inducement claims against Intel for all six patents should therefore be dismissed.

*First*, setting aside StreamScale's failure to plead knowledge of the asserted patents,

---

[2] Internal quotation marks, citations, and alterations omitted, and emphasis added throughout unless otherwise noted.

StreamScale pleads ***no facts*** that would plausibly show that Intel knew or should have known that its supposed opensource distribution of ISA-L induced infringement by others.   Indeed, StreamScale's allegation that "Intel (1) sells, distributes, manufactures, maintains, and provides instructions for ISA-L, and (2) therefore induced infringement through ISA-L's implementation in Cloudera, ADP, Experian, and Wargaming's allegedly infringing products" (Compl. ¶¶ 100 ('8-296 Patent), 115 ('374 Patent), 129 ('759 Patent), 143 ('358 Patent), 157 ('259 Patent), 171 ('10-296 Patent)) mirrors the threadbare allegations found deficient in *Affinity Labs.*   There, the Court found insufficient plaintiff's allegation that "Toyota encouraged and is encouraging its customers to infringe … by marketing and selling its automobiles with sound systems that are able to pair with portable electronic device[s]."  2014 WL 2892285, at *7.

Beyond these threadbare statements, StreamScale relies on conclusory allegations that merely parrot the claim elements, which is also legally insufficient.  *See, e.g.*, *Iron Oak Techs., LLC v. Dell, Inc.*, No. 1:17-CV-999-RP, 2018 WL 1631396, at *2 (W.D. Tex. Apr. 4, 2018) ("Iron Oak's conclusory allegation that '[t]he components provided by [Dell] are not staple articles of commerce suitable for substantial non-fringing use,' . . . is no more than a 'threadbare recital' of one of the elements of a contributory infringement claim."); *Nobelbiz, Inc. v. Insidesales.com, Inc.*, No. 6:13-CV-360-MHS, 2014 WL 12378804, at *3 (E.D. Tex. Oct. 14, 2014) (dismissing a contributory infringement claim where "there is no factual allegation as to the possible non-infringing use of InsideSales's LocalPresence™ Service other than the bare conclusion that it 'is not suitable for substantial noninfringing use.'").  In short, the "generalized allegations that [Intel] induced others to infringe the Asserted Patents through its marketing and sales tactics are … insufficient."  *Affinity Labs*, 2014 WL 2892285, at *7.

***Second***, StreamScale pleads no facts that plausibly show a specific intent to induce

infringement.  "Specific intent" is a "demanding" standard that requires more than unsubstantiated and generalized allegations of induced infringement via "marketing and sales tactics."  *Id.*  "[T]he patentee must show that the accused inducer ***took an affirmative act*** to encourage infringement with the knowledge that the induced acts constitute patent infringement."  *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 904 (Fed. Cir. 2014).  Missing from StreamScale's Complaint are any allegations concerning an affirmative act undertaken by Intel with knowledge that the act would supposedly induce infringement.

*Affinity Labs* is again instructive because StreamScale's allegations are nearly identical in form and content to the allegations the Court dismissed in that case:

| **Plaintiff's Complaint in *Affinity Labs*** | **StreamScale's Complaint** |
|---|---|
| "Toyota infringes one or more claims of [the asserted patents] directly and indirectly, literally and under the doctrine of equivalents, and by inducement and contributory infringement by (1) manufacture, use, marketing of, sale, offer for sale, and/or importation of Toyota automobiles with sound systems, including at least, for example, the Toyota Tundra; and (2) using Toyota automobiles with sound systems, including at least, for example, the Toyota Tundra, as part of the audio system and methods claimed in [the asserted patents]." | "Intel's affirmative acts of selling and/or distributing ISA-L (or portions thereof), causing ISA-L (or portions thereof) to be manufactured and distributed, providing instructive materials and information concerning operation and use of ISA-L (or portions thereof), and providing maintenance/service for such products or services, induced Cloudera, ADP, Experian, and Wargaming to infringe at least Claim 1 of the [Asserted Patents] … through the implementation of ISA-L in the Cloudera, ADP, Experian, and Wargaming Infringing Products and Services." |
| 2014 WL 2892285, at *1. | Compl. ¶¶ 100 ('8-296), 115 ('374), 129 ('759), 143 ('358), 157 ('259), 171 ('10-296). |

As in *Affinity Labs*, StreamScale's Complaint warrants dismissal because "such unsubstantiated assertions do not adequately support the more demanding specific intent requirement."  2014 WL 2892285, at * 7; *see also Affinity Labs of Texas, LLC v. Blackberry Ltd.*, Civ. No. W:13-CV-362, 2014 WL 12551207, at *5 (W.D. Tex. Apr. 30, 2014) ("Allegations that [defendant] 'encouraged

and is encouraging' its customers to infringe … 'by marketing and selling' its devices … do not adequately support the more demanding specific intent requirement.").

Because StreamScale has failed to adequately plead the essential elements of induced infringement, its inducement claims for all six patents should be dismissed.

**B.    StreamScale's Willful Infringement Claims Should Be Dismissed**

As with its induced infringement claims, StreamScale's willful infringement claims are grounded in facially insufficient allegations.  To state a claim for willful infringement, a patentee must allege facts showing that, at the time suit was filed, the accused infringer "(1) knew of the patent-in-suit; (2) after acquiring that knowledge, it infringed the patent; and (3) in doing so, it knew, or should have known, that its conduct amounted to infringement of the patent." *Parity Networks, LLC v. Cisco Systems, Inc.*, Civ. No. 19-00207-209-ADA, 2019 WL 3940952, at *3 (W.D. Tex. July 26, 2019) (Albright, J.).  As this Court has recognized, willfulness must be pleaded with "sufficient articulation of the relevant facts." *Id.*; *see also Meetrix*, 2018 WL 8261315, at *3 (granting motion to dismiss because the plaintiff's "willfulness claim wholly lacks such factual allegations").  StreamScale's willful infringement claims fail with respect to all three of these requirements and warrant dismissal.

***First***, as discussed above (*supra*, Section IV.A.i), StreamScale has alleged no facts that plausibly show Intel had pre-suit knowledge of the Continuation Patents.  Consistent with this District's prior rulings under similar circumstances, this is fatal to StreamScale's willfulness claims for the Continuation Patents.  *See Inhale, Inc*, 2018 WL 7324886, at *3 (W.D. Tex. Dec. 10, 2018) (granting a motion to dismiss where plaintiff's allegations of defendant's knowledge were "'legal conclusion[s] couched as ... factual allegation[s]' that the court need not accept as true.") (quoting *Twombly*, 550 U.S. at 555); *see also Frac Shack Inc. v. AFD Petroleum (Texas) Inc.*, No. 7:19-CV-00026-DC, 2019 WL 3818049, at *5 (W.D. Tex. June 13, 2019) (Albright, J.)

11

("Ordinarily the Court would dismiss an allegation of willfulness without prejudice absent a specific allegation of pre-suit knowledge of the asserted patents.")*.*

**Second**, as discussed above (*supra*, Section IV.A), StreamScale's Complaint fails to state a claim for induced infringement of any of the asserted patents by Intel.  Absent a properly pleaded claim for infringement, a claim for willful infringement cannot stand.

**Third**, StreamScale has not shown that Intel "acted despite a risk of infringement that was either known or so obvious that it should have been known." *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1371 (Fed. Cir. 2017).  As discussed above (*supra*, IV.A.ii), the Complaint is devoid of any factual allegations plausibly supporting a reasonable inference that Intel should have known it was supposedly inducing infringement of any asserted patent and chose to proceed regardless because StreamScale pleads **no facts** showing that Intel knew or should have known that third-party use of ISA-L infringed.

**Finally**, enhanced damages under 35 U.S.C. § 284 "are not to be meted out in a typical infringement case, but are instead designed as a 'punitive' or 'vindictive' sanction for egregious infringement behavior," namely, conduct that is "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate."  *Halo*, 136 S. Ct. at 1932.  But StreamScale makes no allegations that plausibly show Intel has engaged in egregious conduct.  As discussed above (*supra* II.B), the only factual allegations StreamScale makes are that it notified Intel of the '8-296 Patent and that Intel distributed ISA-L.  This falls far short of alleging egregious conduct; indeed, it amounts to nothing more than a generic—and deficient—description of a "garden-variety" patent case where claims for enhanced damages based on willful infringement are routinely dismissed.  *See, e.g.*, *Meetrix*, 2018 WL 8261315, at *3 (dismissing willful infringement claim based on mere conclusory statements and finding that "the complaint does not

12

allege any facts raising a plausible inference of the egregious behavior required under *Halo*"); *M & C Innovations, LLC v. Igloo Prods. Corp.*, Civ. A. No. 17-2372, 2018 WL 4620713, at *5 (S.D. Tex. July 31, 2018) (dismissing willful infringement claim as the patent claims were "garden-variety").

Because StreamScale fails to adequately allege any of the requisite elements necessary to state a claim for enhanced damages based on willful infringement, its claims against Intel should be dismissed.

## V.    CONCLUSION

Intel respectfully submits that all of StreamScale's claims against Intel be dismissed.

Dated: May 10, 2021                    Respectfully submitted,


*/s/ Brian C. Nash*
Brian C. Nash
TX Bar No. 24051103
Austin M. Schnell
TX Bar No. 24095985
PILLSBURY WINTHROP SHAW PITTMAN LLP
401 Congress Avenue, Suite 1700
Austin, TX  78701-3797
Tel: (512) 580-9629
brian.nash@pillsburylaw.com
austin.schnell@pillsburylaw.com

Sonal N. Mehta (*Pro Hac Vice forthcoming*)
    California State Bar No. 222086
Jennifer J. John (*Pro Hac Vice forthcoming*)
    California State Bar No. 331716
    Massachusetts State Bar No. 694749
WILMER CUTLER PICKERING HALE
& DORR LLP
2600 El Camino Real
Suite 400
Palo Alto, CA 94306
Tel: (650) 858-6000
Email: Sonal.Mehta@wilmerhale.com
Email: Jennifer.John@wilmerhale.com

Amanda L. Major (*Pro Hac Vice
forthcoming*)
    DC Bar No. 495968
    New York Bar No. 4304507
WILMER CUTLER PICKERING HALE
& DORR LLP
1875 Pennsylvania Avenue
Washington, DC 20006
Tel: (202) 663-6000
Email: Amanda.Major@wilmerhale.com

Joseph T. Gooch (*Pro Hac Vice forthcoming*)
    California State Bar No. 294282
WILMER CUTLER PICKERING HALE
& DORR LLP
One Front Street, Suite 3500
San Francisco, CA 94111

14

Tel: (628) 235-1002
Email: Taylor.Gooch@wilmerhale.com

Vikram P. Iyer (*Pro Hac Vice forthcoming*)
   California State Bar No. 318324
WILMER CUTLER PICKERING HALE
& DORR LLP
350 South Grand Avenue, Suite 2400
Los Angeles, California 90071
Tel: (213) 443-5300
Email: Vikram.Iyer@wilmerhale.com

Annaleigh E. Curtis (*Pro Hac Vice
forthcoming*)
   Massachusetts State Bar No. 696165
WILMER CUTLER PICKERING HALE
& DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000
Email: Annaleigh.Curtis@wilmerhale.com

*Attorneys for Intel Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on May 10, 2021, all counsel of record who are deemed to have consented to electronic service are being served with a copy of the foregoing document via the Court's CM/ECF system in accordance with Local Rule CV-5.

*/s/ Brian C. Nash*

Brian C. Nash

16