# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| STREAMSCALE, INC., <br><br> Plaintiff, <br><br> v. <br><br> CLOUDERA, INC., <br><br> Defendant. | Civil Action No. 6:21-cv-00198 ADA |

**DEFENDANT'S RULE 50(a) MOTION FOR JUDGMENT AS A MATTER OF LAW AT THE CLOSE OF STREAMSCALE INC.'S CASE-IN-CHIEF**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................. 1

II. LEGAL STANDARD............................................................................................................ 2

III. CLOUDERA IS ENTITLED TO JUDGMENT OF NONINFRINGEMENT FOR THE ALLEGED MAKING OR SELLING OF THE ACCUSED CDH SOFTWARE..................... 2

    A. Cloudera Does Not Make, Sell, or Otherwise Provide Hardware to Its Customers, and Therefore Does Not Directly Infringe by "Making" or "Selling" ...................................... 2

        1. The '759 and '259 Patents ........................................................................................... 2

        2. The '296 Patent ............................................................................................................ 4

    B. StreamScale Has Failed to Prove Cloudera Has Made or Sold a "non-transitory storage medium" Storing the Computer Instructions, and Has Therefore Failed to Establish Infringement of the '8-296 Patent by "Making" or "Selling"............................................ 7

    C. Cloudera's Software, As Provided to Customers, Is Not "Configured to" Perform Error Correction ...................................................................................................................... 8

    D. StreamScale Failed to Prove Cloudera Directly Infringed Through Use, i.e., Internal Testing........................................................................................................................... 12

IV. CLOUDERA IS ENTITLED TO JUDGMENT OF NO DAMAGES FROM USE/INTERNAL TESTING ................................................................................................ 13

V. CLOUDERA IS ENTITLED TO JUDGMENT ON THE DOCTRINE OF EQUIVALENTS ................................................................................................................... 15

VI. CONCLUSION.................................................................................................................... 15

I.      INTRODUCTION

Pursuant to Fed. R. Civ. P. 50(a), Defendant Cloudera, Inc. ("Cloudera") moves for judgment as a matter of law of noninfringement and damages.

Plaintiff StreamScale, Inc.'s ("StreamScale") suit is premised on Cloudera's alleged ***direct*** infringement of the asserted claims by way of Cloudera's supposed making, using, and selling to its customers the accused CDH software.[1] However, StreamScale failed, in its case-in-chief, to present sufficient evidence to support a jury verdict of infringement for making, selling, or using. StreamScale's evidence is lacking because (a) it failed to demonstrate that Cloudera makes or sells to its customers the hardware required by the claims, and (b) it failed to present substantial evidence that the accused software, as provided by Cloudera to customers, is "configured to" perform the error correction functionality required by the claims. No reasonable jury could rule for StreamScale on infringement for Cloudera's alleged making or selling the accused CDH software. Regarding "use," StreamScale also failed to present substantial evidence that any purported internal testing by Cloudera met all elements of any asserted claim.

In any event, StreamScale also failed to present substantial evidence of internal testing by Cloudera tied to any claim of damages. With respect to damages, to the extent infringement is premised on Cloudera's internal testing (i.e., Cloudera's limited "use"), StreamScale has failed to present legally sufficient evidence of damages. Damages based on testing must be tied to the purported internal use, but StreamScale's damages case is premised entirely on ***sales***. Thus, judgement of no damages as a matter of law is warranted.

Finally, to the extent there are any claims remaining whatsoever, judgment as a matter of

---

[1] StreamScale has not advanced at trial any theory or evidence concerning infringement for offering to sell and/or importing into the United States the accused CDH software. However, even if they had, such theories would fail for the reasons set forth below.

1

law should be granted on the doctrine of equivalents because StreamScale made no effort whatsoever to put forth such evidence in their case-in-chief.

## II. LEGAL STANDARD

"Judgment as a matter of law is proper if a party has been fully heard on an issue during a jury trial and a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a); *Williams v. Manitowoc Cranes, LLC*, 898 F.3d 607, 614 (5th Cir. 2018). The Court should grant Cloudera's motion unless there is "substantial evidence" in support of each essential element of StreamScale's claims. *Am. Home Assurance Co. v. United Space Alliance*, 378 F.3d 482, 487 (5th Cir. 2004). "Substantial evidence requires more than a mere scintilla . . . and [the court] must review the record as a whole, taking into consideration evidence that both justifies and detracts from the jury's decision." *Cordis Corp. v. Boston Scientific Corp.*, 658 F.3d 1347, 1357 (Fed. Cir. 2011). Conclusory testimony is not substantial evidence. *See MobileMedia Ideas LLC v. Apple Inc.*, 780 F.3d 1159, 1172 (Fed. Cir. 2015).

## III. CLOUDERA IS ENTITLED TO JUDGMENT OF NONINFRINGEMENT FOR THE ALLEGED MAKING OR SELLING OF THE ACCUSED CDH SOFTWARE

StreamScale has pled and alleged only direct infringement by Cloudera—it has not pled induced or contributory infringement. Dkt. 67 at ¶¶112, 115, 134, 137, 154, 157, 194, 197, 214, 217. Thus, StreamScale must present substantial evidence that Cloudera itself directly infringes the asserted claims. It has not as it relates to StreamScale's claim that Cloudera infringes by making, selling, or using the accused CDH software.

### A. Cloudera Does Not Make, Sell, or Otherwise Provide Hardware to Its Customers, and Therefore Does Not Directly Infringe by "Making" or "Selling"

#### 1. The '759 and '259 Patents

The asserted claims of the '759 and '259 Patents recite "A system" that includes both

software and hardware components. Specifically, the asserted claims of these two patents include the following hardware:

| Independent Claim | Hardware Components |
|---|---|
| '759 claim 1 | <ul><li>"processing core"</li><li>"one or more non-volatile storage media for storing the computer instructions and the data"</li><li>"an input/output (I/O) controller"</li></ul> |
| '259 claim 12 | <ul><li>"at least one processor"</li><li>"at least one system drive comprising at least one non-volatile storage medium"</li><li>"a plurality of data drives"</li><li>"more than two check drives"</li><li>"at least one first input/output (I/O) controller"</li><li>"at least one second input/output (I/O) controller"</li></ul> |

StreamScale has provided ***no evidence*** that Cloudera makes, sells, or otherwise provides its customers with any of these hardware components. Indeed, StreamScale's expert, Dr. Conte, admitted that Cloudera does not. *See, e.g.*, Rough Day 1 Tr. Transcript at 189:20-25 ("Q. And you understand, sir, that Cloudera does not make any hardware; is that right? A. That's true."); 190:4-6 (Dr. Conte agreeing Cloudera does not sell any "computers"); 195:15-20 (Dr. Conte agreeing that Cloudera does not make or sell "processors"); 197:23-198:8 (Dr. Conte agreeing that Cloudera does not make or sell "input/output controllers"); 198:21-199:2 (same regarding "processing cores"); *see also, id. e.g.*, 200:6-201:8.

Cloudera only provides software for download. *See, e.g.*, *id*. at 190:7-13 ("Q. Do you have an understanding of how Cloudera's customers install the CDH software on their computers? A. Yes. Q. Okay. Do you understand that those customers download the software through a website onto their computers? A. Yes."); *id.* 192:17-193:2. Accordingly, Cloudera's software sales—the only accused sales—do not infringe as a matter of law, because through its sales, Cloudera is not

3

making or selling the *complete* system. *See Centillion Data Sys., LLC v. Qwest Comm'ns*, 631 F.3d 1279, 1284-86 & n.3, 1290 (Fed. Cir. 2011); *see also Synchronoss Technologies, Inc. v. Dropbox, Inc.*, 987 F.3d 1358, 1368-69 (Fed. Cir. 2021) ("Because Dropbox does not provide its customers with any hardware in conjunction with its accused software, Dropbox does not make, sell, or offer for sale the complete invention," and also does not "use" the system, per *Centillion*); *Acceleration Bay LLC v. 2K Sports, Inc.*, 15 F.4th 1069, 1077-78 (Fed. Cir. 2021) (defendant did not directly infringe plaintiffs' claims to a virtual network by selling software, because "the customer, not [the defendant], completes the system by providing the [hardware component] and installing the client software").

### 2.     The '296 Patent

While the asserted claims of the '296 Patent (claims 34 and 35) are recited in a different form than the asserted claims of the '759 and '259 Patents, the assert claims of the '8-296 Patent are in fact no different. Claims 34 and 35 of the '296 Patent still recite a "system" that includes hardware components and software functionality, and the hardware components are initially recited in a lengthy preamble. Asserted claims 34-35 and recently dropped claim 36 are reproduced below, with emphasis added:

> 34. A non-transitory computer-readable storage medium containing a computer program comprising a plurality of computer instructions for performing accelerated error-correcting code (ECC) processing on a computing system *comprising a processing core for accessing instructions and data from a main memory*, the computer instructions being configured to implement an erasure coding system when executed on the computing system by performing the steps of:
> arranging original data as a data matrix in *the main memory*;
> arranging first factors as an encoding matrix in the main memory, the first factors being for encoding the original data into check data, the check data being arranged as a check matrix in the main memory; and
> generating the check data using a parallel multiplier for concurrently multiplying multiple data entries of a matrix by a single factor, the generating of the check data comprising ordering operations through the data matrix and the encoding matrix using the parallel multiplier.

4

    35. The storage medium of claim 34, wherein the generating of the check data comprises accessing each entry of the data matrix from ***the main memory*** at most once.

    36. The storage medium of claim 34, wherein:
    ***the processing core*** comprises a plurality of processing cores; and
    the computer instructions are further configured to perform the step of scheduling the generating of the check data by:
        dividing the data matrix into a plurality of data matrices·
        dividing the check matrix into a plurality of check matrices; and
        assigning corresponding ones of the data matrices and the check matrices to the processing cores to concurrently generate portions of the check data corresponding to the check matrices from respective ones of the data matrices.

The question is whether the hardware components of independent claim 34—the "processing core" and the "main memory"—are limitations of the claim. Under clear precedent, they are.

"In general, a preamble limits the invention if it recites essential structure or steps, or if it is necessary to give life, meaning, and vitality to the claim." *Catalina Mktg. Int'l v. Coolsavings.com*, 289 F.3d 801, 808 (Fed. Cir. 2002) (cleaned up). "Conversely, a preamble is not limiting where a patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention." *Id.* In assessing whether preamble structure is limiting, courts often focus on whether the preamble is used for antecedent basis because "it indicates a reliance on both the preamble and claim body to define the claimed invention." *Id.*; *Eaton Corp. v. Rockwell Int'l Corp.*, 323 F.3d 1332, 1339 (Fed. Cir. 2003) ("When limitations in the body of the claim rely upon and derive antecedent basis from the preamble, then the preamble may act as a necessary component of the claimed invention."); *Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1376 (Fed. Cir. 2005) (where preamble recited "a processor system" with "at least one central processing unit" and "at least one mass storage subsystem," then referenced "*said* processor systems" in the method steps, preamble was limiting).

Here, asserted claims 34 and 35 and recently dropped claim 36 rely on the preamble for

5

antecedent basis for both the "processing core" and "main memory." Claim 34 identifies "a main memory" in the preamble, and both claims 34 and 35 reference "*the* main memory" in the body. If the main memory of claim 34's preamble is not a limitation, then neither claim 34 nor claim 35 make sense. *C.f. Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950-51 (Fed. Cir. 2006) (in claim directed to an "emergency cuff" portion of a dental implant, the "cooperating abutment" structure recited in the preamble limited the claim, because otherwise "the requirement that the cooperating abutment have 'a frusto-spherical basal surface portion' would have no meaning if the claim were limited to the structure of the emergence cuff"). The same is true for the processing core. *Id.* Claim 34 identifies "a processing core" in the preamble, and dependent claim 36 recites, in the body, "wherein *the* processing core comprises a plurality of processing cores." If the processing core of claim 34's preamble is not limitation, then the language of claim 36 makes no sense. *Id.*

The asserted claims of the '296 Patent, therefore, are in fact no different from the asserted claims of the other asserted patents because they also require a system. Moving the hardware limitations from the body into the preamble does not make them disappear when the body continues to rely on them for antecedent basis. The main memory and processing core remain "essential structure" for performing the invention. *Catalina Mktg.*, 289 F.3d at 808. *C.f. SIMO Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*, 983 F.3d 1367, 1375-76 (Fed. Cir. 2021) (finding claim which recited hardware components in a "preamble," but then software functionality in a "body," required the recited hardware components); *Microprocessor Enhancement Corp. v. Texas Instruments Inc.*, 520 F.3d 1367, 1374-75 (Fed. Cir. 2008) (finding preamble limiting where preamble embedded structural limitations as a preamble-within-a-preamble).

Thus, because Cloudera only makes and sells software, Cloudera does not infringe as a

matter of law, because Cloudera is not making or selling the **complete** system. *See Centillion*, 631 F.3d at 1284-86 & n.3, 1290; *see also Synchronoss Techs.*, 987 F.3d at 1368-69; *Acceleration Bay*, 15 F.4th at 1077-78; *see also* Rough Day 1 Tr. Transcript at 189:20-25 ("Q. And you understand, sir, that Cloudera does not make any hardware; is that right? A. That's true."); 190:4-6 (Cloudera does not sell "computers"); 195:15-20 (Cloudera does not make or sell "processors"); 197:23-198:8 (Cloudera does not make or sell "input/output controllers"); 198:21-199:2 (same regarding "processing cores"); *see also, id. e.g.*, 190:7-13 (Cloudera customers obtain and install CDH software via download); 192:17-193:2; 200:6-201:8.

  **B.** **StreamScale Has Failed to Prove Cloudera Has Made or Sold a "non-transitory storage medium" Storing the Computer Instructions, and Has Therefore Failed to Establish Infringement of the '8-296 Patent by "Making" or "Selling"**

Even if the Court determines that claim 34 of the '8-296 Patent does not require a "processing core" or "main memory," StreamScale has still failed to demonstrate direct infringement of the '296 patent through Cloudera's "making" or "selling" its CDH software. The asserted claims of the '296 patent are Beauregard claims, and therefore require "A non-transitory storage medium" storing the software. *See CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1373 (Fed. Cir. 2011) ("A Beauregard claim—named after *In re Beauregard*, 53 F.3d 1583 (Fed.Cir.1995)—is a claim to a computer readable medium (e.g., a disk, hard drive, or other data storage device) containing program instructions for a computer to perform a particular process."). Beauregard claims do not cover software alone—they only cover "a non-transitory storage medium" that stores the complete software. *See Finjan, Inc. v. Qualys Inc.*, No. 4:18-cv-07229-YGR, 2020 U.S. Dist. LEXIS 228385, at *3 (N.D. Cal. Dec. 4, 2020) ("Computer medium claims are not infringed by computer code that is written in the United States—they are infringed by *media* that stores infringing code.").

7

Customer downloads of the CDH *software*, therefore, are not "sales" of a covered product, and *are not acts of infringement by Cloudera*. *See East Coast Sheet Metal Fabricating Corp. v. Autodesk, Inc.*, No. 12-CV-517-LM, 2015 WL 226084, at *18 (D.N.H. Jan. 15, 2015), *amended in part*, No. 12-CV-517-LM, 2015 WL 925614 (D.N.H. Mar. 3, 2015), and *aff'd*, 645 F. App'x 992 (Fed. Cir. 2016) ("no reasonable jury could find that Autodesk infringed EastCoast's patents by selling its accused products in the form of downloads, because *a download does not meet the claim limitation of instructions on a computer-readable medium*.") (emphasis added).

In its case-in-chief, StreamScale failed to present any evidence of direct infringement of claims 34-35 because Dr. Conte admitted that Cloudera's customers only download the CDH software from Cloudera, do not receive a physical medium from Cloudera, and that Cloudera's customers do not execute CDH from a Cloudera computer. Rough Day 1 Tr. Transcript at 190:7-13 (Cloudera customers obtain and install CDH software via download), 192:24-193:2 (same), 192:17-23 (Cloudera does not sell to its customer any server from which CDH is downloaded and customers do not receive or take physical control of Cloudera's servers from which CDH is downloaded), 200:25-201:8 (CDH is executed on the customers' computers and customers are not executing the software from Cloudera's computers). As StreamScale can only point to downloading of CDH from an online location, its direct infringement theory for claims 34 and 35 of the '296 Patent fails because "a download does not meet the claim limitation of instructions on a computer-readable medium." *East Coast Sheet Metal*, 2015 WL 226084 at *18.

**C.    Cloudera's Software, As Provided to Customers, Is Not "Configured to" Perform Error Correction**

The asserted claims of the '296 Patent require "the computer instructions being *configured to* implement an erasure coding system when executed on the computing system." Similarly, the asserted claim of the '759 Patent requires that the system components "are *configured to*

8

implement an [] erasure [de]coding system," and the asserted claim of the '259 Patent recites a structure that is "adapted to" "implement" an erasure coding system.

StreamScale has alleged that CDH infringes when it performs the erasure coding functionality using Intel's ISA-L library. The evidence at trial has demonstrated, however, that the CDH software, *as provided to customers by Cloudera*, is not configured to perform erasure coding steps when executed. Rather, CDH is configured by default to perform replication, and the accused erasure coding functionality is disabled by default in CDH. *See* Rough Day 1 Tr. Transcript at 203:2-204:1 (Dr. Conte admitting that he previously testified truthfully when stating that CDH uses replication by default "and, therefore, by default, erasure coding is disabled"); PXT-444 at 2 ("HDFS by default replicates each block three time"), 22 (same).

Thus, if anyone directly infringes, it is the *customer* who chooses and configures the software to perform erasure coding, but *StreamScale* has *not* pled or alleged indirect infringement by Cloudera. *See* Dkt. 67 at ¶¶112, 115, 134, 137, 154, 157, 194, 197, 214, 217 (only pleading direct infringement).

In summary judgment briefing, StreamScale argued that the accused software is "configured to" perform erasure coding "when executed," because the erasure coding functionality is embedded within the software. *See* Dkt. 235 at 8, 16-17 ("The Asserted Claims are drawn to capabilities and not actual operation. They describe capabilities of the computer instructions 'when executed' on a processor, or the implementation of accelerated erasure coding when the computer instructions are 'executing' on a processor/processing core."). StreamScale suggested that this case is akin to cases like *Fantasy Sports Props. v. Sportsline.com, Inc.*, 287 F.3d 1108 (Fed. Cir. 2002) and *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197 (Fed. Cir. 2010), where a user could select among multiple options, one of which was infringing. *Id.*

9

However, Dr. Conte argued at trial that "configured to" merely means "capable of," *see* Rough Day 1 Tr. Transcript at 204:20-24, 205:24-206:9, and Dr. Conte admitted that CDH's default replication configuration is ***mutually exclusive from*** its optional erasure coding configuration:

> Q. You understand, sir, that with respect to a given directory of files, a customer using CDH software can only use it to either perform replication to store those files or erasure coding, right?
> A. I believe that's correct.
> Q. A customer can't perform replication and erasure coding on the same directory of files?
> A. I believe that's correct.
> Q. It's one or the other?
> A. A or B.

*Id.* at 206:14-23. Fatally, Dr. Conte testified that despite replication and erasure coding being mutually exclusive, CDH is somehow configured to implement both. *Id*. at 205:24-206:13. This is logically impossible under by Dr. Conte's own admission of mutual exclusivity.

Furthermore, in the cases StreamScale relied on at the summary judgment stage, ***the claims did not recite that the software was "configured to" perform the required functions***. The Federal Circuit and courts in the Fifth Circuit have consistently held that a claim element reciting a structure "configured to" perform a function is infringed only if the accused structure is ***actually set to perform the function***, as opposed to merely capable of performing the function.

> As instructed in *Typhoon* and *Nazomi*, a structural claim element that is defined by the function it performs—rather than a function it might be modified or programmed to perform—must be in a state capable of performing the function. … Accordingly, the Court rejects that the plain and ordinary meaning of the "adapted to [perform functions]" or "configured to [perform functions]" claim language encompasses structure that is merely capable of performing the functions in the abstract. Under their plain and ordinary meanings, ***these terms require structure that is in a state to perform the functions (i.e., structure that is "configured to" or "adapted to" perform the functions) and does not encompass structure that may be modified to perform that function but is not in that modified state***.

*Huawei Techs. Co. v. Verizon Commc'ns, Inc.*, No. 2:20-CV-00030-JRG, 2021 WL 150442, *18-

20 (E.D. Tex. Jan. 15, 2021) (citing *Typhoon Touch Techs. v. Dell, Inc.*, 659 F.3d 1376 (Fed. Cir. 2011) and *Nazomi Communs., Inc. v. Nokia Corp.*, 739 F.3d 1339 (Fed. Cir. 2014)) (emphasis added; some citations omitted); *Wapp Tech Limited P'ship v. Seatle Spinco, Inc.*, No. 4:18-CV-469, 2020 WL 1983087, *20 (E.D. Tex. 2020) (construing "configured to" to mean "actually programed to"); *Nevro Corp. v. Bos. Sci. Corp.*, 955 F.3d 35, 42 (Fed. Cir. 2020) (construing "configured to" to mean "programmed to"); *Salazar v. HTC Corp.*, No. 216CV01096JRGRSP, 2018 WL 4242416, *2 (E.D. Tex. May 1, 2018) ("Citing testimony of Roy Griffin, Salazar's infringement expert, Defendant contends Salazar has evidence the accused devices are ***capable*** of being so configured, which is insufficient to meet the limitation. According to Defendant, the claims require ***actual*** configuration, which does not happen until a user connects the phones to third-party servers and downloads command codes for a particular external device. … the Court construes 'configured to' to require some particularized arrangement of the memory device for a specific purpose. The Court therefore rejects Salazar's position that a mere capability of storing, or capability of being configured to store, is sufficient."); *Nevro Corp.*, 955 F.3d at 40 ("The asserted claims contemplate that 'configured to' requires programming the signal generator (i.e., setting parameters) to generate the claimed signals.").

Showing that a structure is merely "capable of" performing a function, which is all that StreamScale has alleged, is legally insufficient to satisfy "configured to" claim language. "[T]he Court of Appeals for the Federal Circuit has noted ***that the phrase 'configured to' has a narrower meaning than merely 'capable of' or 'suitable for***.'" *Wapp*, 2020 WL 1983087, *20 (collecting cases) (emphasis added); *see also TQ Delta, LLC v.* CommScope *Holding Co., Inc.*, No. 2:21-CV-309-JRG, 2022 WL 2071073, *8 (E.D. Tex. June 8, 2022) (same); *Sipco, LLC v. Abb, Inc.*, No. 6:11-cv-0048, 2021 WL 3112302, *12 (E.D. Tex. July 30, 2012) (noting that construing

"configured to" perform a function as "may be configured [to]" perform a function "would eliminate any meaningful limits to the claims").

In this case, the Court did *not* construe "configured to" to have a special meaning, instead affording the language its plain and ordinary meaning. At trial, StreamScale has failed to present substantial evidence that the software, *as provided to customers by Cloudera*, meets the limitation, and judgment as a matter of law is therefore warranted.

### D. StreamScale Failed to Prove Cloudera Directly Infringed Through Use, i.e., Internal Testing

In its Summary Judgment opposition and at the Pretrial Conference, StreamScale raised a new argument—that Cloudera internally tested the accused error correction functionality, using its own hardware, and therefore directly infringed the claims. *See* Dkt. 235 at 20; Dkt. 298 at 112-13. StreamScale had not alleged internal testing infringement previously, had not covered the issue in its expert's reports, and presented no damages theory based on testing during discovery. This late "testing" argument was a tacit admission that Cloudera's sales to customers do not infringe.

In its case-in-chief at trial, StreamScale failed to prove its new "testing" infringement theory. StreamScale presented incomplete evidence of testing for some, but not all asserted claim limitations, thereby failing to show infringement by testing for any asserted claim. *see* Rough Day 1 Tr. Transcript at 209:15-211:12 (Dr. Conte conceding that he only cites to PXT-196 for evidence of alleged testing, which was not cited in every element of his analysis). Accordingly, the Court should grant judgment as a matter of law that StreamScale has failed to prove infringement through testing. *See, e.g., Acceleration Bay LLC v. Activision Blizzard, Inc.*, 324 F. Supp. 3d 470, 483-84 (D. Del. 2018) (non-specific allegations of direct "testing" by accused infringer insufficient to avoid summary judgment of no direct infringement); *Ricoh Co., Ltd. v. Quanta Computer Inc.*, 550 F.3d 1325, 1335-36 (Fed. Cir. 2008) (affirming district court summary judgment of no direct

infringement, where district court found that the plaintiff had "failed to adduce any specific evidence that [defendant] tested any of the products accused of infringing…or that it tested them in a way that would constitute infringement.").

## IV. CLOUDERA IS ENTITLED TO JUDGMENT OF NO DAMAGES FROM USE/INTERNAL TESTING

Even were the Court to find that StreamScale has made out a sufficient infringement-by-use/internal testing case, which it has not, StreamScale is only entitled damages "for the economic harm ***caused by*** infringement of the claimed invention." *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010) (emphasis added).

As shown above, judgment as a matter of law should be granted as to StreamScale's allegations of making or selling the accused CDH software, and there has been no evidence, argument, or theory concerning offering to sell or importing into the U.S. the accused CDH software. All that remains of StreamScale's direct infringement allegations are that Cloudera infringes through internal testing.

But, to the extent StreamScale claims direct infringement based on internal testing, "damages for such infringement are limited and must be tied to the internal use." *Sapphire Crossing LLC v. Abbyy USA Software House, Inc.*, 2020 WL 6318716, *2 n.3 (N.D. Cal. 2020) (citing *Packet Intelligence LLC v. NetScout Sys., Inc.*, 965 F.3d 1299, 1314-15 (Fed. Cir. 2020) and *De La Vega v. Microsoft Corp.*, No. W-19-CV-00612-ADA, 2020 WL 3528411, at *5 n.7 (W.D. Tex. Feb. 11, 2020) (Albright, J.) ("damages [for testing only] would be limited to the timeframe of infringement, i.e., testing, which are likely to be minimal")); *see also Vocalife LLC v. Amazon.com, Inc.*, No. 2:19-CV-00123-JRG, 2020 WL 5815950 (E.D. Tex. Sept. 30, 2020) ("Since testing was the only pre-suit direct infringement theory proffered by Plaintiff, any pre-suit damages from direct infringement must consequently to be tied to such testing."). However,

StreamScale's damages theories are premised upon *sales of* the accused products and *none* were tied to internal testing. *See, e.g.*, Realtime Day 2 Tr. Transcript at 38:17-22 ("Q. Did you quantify *the use* in terms of dollars? A. I did. So this next slide shows *Cloudera's sales* of accused products on the right that's the $1.5 billion including infringing *sales* of approximately $1.2 billion and convoyed *sales* that I discussed of approximately $315 million."). Because no reasonable jury could find for StreamScale that its purported damages based on sales are tied to Cloudera's internal testing, Cloudera is entitled to judgment as a matter of law of no damages.

Here, StreamScale's damages expert, Mr. Weinstein, made no analysis of the economic harm of the alleged internal testing of the accused erasure coding by Cloudera. Instead, Mr. Weinstein applied a purported reasonable royalty rate to revenue from *sales* of the accused products to calculate the reasonable royalty damages. *Id.* But "sales" are different from Cloudera's internal "use," and Mr. Weinstein made no effort to tie the claimed damages base (sales) to Cloudera's internal testing (use). Courts have consistently rejected such damages theory as unreliable. *See Infernal Tech. LLC v. Activision Blizzard Inc.*, No. 3:18-CV-01397-M, 2021 WL 4391250, *12-13 (N.D. Tex. Sept. 16, 2021), *aff'd*, No. 2021-2349, 2023 WL 370602 (Fed. Cir. Jan. 24, 2023) (where the patentee's damages expert based a damages award on all sales of the accused computer game product, and the patentee limited its infringement theory to direct infringement based on the accused infringer's internal testing, striking the patentee's damages expert's opinion since it failed to show a nexus between the alleged infringement from internal testing and the sale of the accused products, noting that the patentee failed to "identify any connection between the internal use … and sales" and that "evidence [that] establishes that testing … is generally important to … development does not establish that testing affects sales"); *Cirba Inc. v. VMware, Inc.*, 2023 WL 3151853, *4–*6 (D. Del. 2023) (same); *Interwoven, Inc. v. Vertical*

14

*Comput. Sys.*, No. CV 10-04645 RS, 2014 WL 490996, at *4 (N.D. Cal. Feb. 3, 2014) (where the plaintiff's "case for infringement" was limited to the defendant's "own use of the asserted … system claims," finding the plaintiff failed to provide a reasonable, non-speculative basis for damages calculation when the plaintiff "provides no causal connection between any alleged [damages] and [the defendant's] own use"); *cf. Carnegie Mellon University. v. Marvell Technology Group, Ltd.*, 890 F. Supp. 2d 602, 610 (W.D. Pa. 2012), *aff'd in part, rev'd in part, vacated in part*, 807 F.3d 1283 (Fed. Cir. 2015) (finding sales of a product an appropriate measure of damages resulting from internal use based largely on the defendant's concession that its "infringing use is the but-for cause of [its] sales"). The complete lack of analysis and evidence to connect the damages based on sales with Cloudera's internal testing is fatal to Mr. Weinstein's damages analysis, and judgment as a matter of law of no damages is warranted. *See Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l, Inc.*, 246 F.3d 1336, 1358 (Fed. Cir. 2001) (affirming JMOL on damages theory where expert's methodology was unreliable).

## V.   CLOUDERA IS ENTITLED TO JUDGMENT ON THE DOCTRINE OF EQUIVALENTS

To the extent there are any claims remaining whatsoever, judgment as a matter of law should be granted on the doctrine of equivalents because StreamScale made no effort whatsoever to put forth such evidence in their case-in-chief concerning doctrine of the elements.

## VI.   CONCLUSION

For the reasons provided above, the Court should enter judgment as a matter of law in favor of Defendant Cloudera.

15

Dated: October 11, 2023

Respectfully submitted,

By: ___/s/ Christopher Kao___
Christopher Kao (*admitted*)
  christopher.kao@pillsburylaw.com
Brock S. Weber (*admitted*)
  brock.weber@pillsburylaw.com
**Pillsbury Winthrop Shaw Pittman LLP**
4 Embarcadero Center, 22nd Floor
San Francisco, CA  94111
Telephone:  415.983.1000
Facsimile:   415.983.1200

Steven P. Tepera (TX Bar No. 24053510)
  Steven.tepera@pillsburylaw.com
Benjamin L. Bernell (TX Bar No. 24059451)
  ben.bernell@pillsburylaw.com
**Pillsbury Winthrop Shaw Pittman LLP**
401 Congress Avenue, Suite 1700
Austin, TX  78701-3797
Telephone: 512.580.9600
Facsimile:  512.580.9601

Audrey Lo (*pro hac vice*)
  audrey.lo@pillsburylaw.com
**Pillsbury Winthrop Shaw Pittman LLP**
2550 Hanover Street
Palo Alto, CA  94304
Telephone: 650.233.4500

*Counsel for Defendant Cloudera, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's CM/ECF filing system and/or electronic mail on October 11, 2023.

___/s/ Christopher Kao___

16