**IN THE UNITED STATED DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| STREAMSCALE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 6:21-cv-00198-ADA |
| | ) | |
| vs. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| CLOUDERA, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFF STREAMSCALE INC.'S RULE 50(a) MOTION FOR JUDGMENT AS A MATTER OF LAW

11269127

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION .................................................................................................1

II. LEGAL STANDARD ..........................................................................................1

III. ARGUMENT ......................................................................................................1

    A.  StreamScale Is Entitled to JMOL On The Issue Of Infringement ...............1

        1.  A Reasonable Jury Could Only Conclude That Cloudera Directly
Infringes Claim 1 Of The '759 Patent and Claim 12 Of The '259
Patent By Making and Using The Accused Products....................................2

        2.  A Reasonable Jury Could Only Conclude That Cloudera Directly
Infringes Claims 34 and 35 Of The '296 Patent By Making, Using,
Offering For Sale And Selling The Accused Products...................................5

    B.  StreamScale Is Entitled To JMOL On The Issue Of Invalidity.....................9

        1.  StreamScale Is Entitled To JMOL Of Validity Because Cloudera
Failed To Address Motivation To Combine or Expectation of
Success ........................................................................................................9

        2.  No Reasonable Jury Could Find That The Asserted Prior Art
Contains All Elements Of The Claims At Issue ..........................................13

        3.  Cloudera Failed to Address or Rebut the Evidence of Objective
Indicia of Nonobviousness..........................................................................14

    C.  StreamScale Is Entitled To JMOL On The Issue Of Damages...................16

        1.  StreamScale is Entitled to JMOL on the Amount of Infringing
Sales............................................................................................................16

        2.  StreamScale is Entitled to JMOL on Damages ...........................................17

IV. CONCLUSION .................................................................................................17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Labs. v. Andrx Pharm., Inc.,*
    452 F.3d 1331 (Fed.Cir.2006) ................................................................................................. 10

*Apple Inc. v. Samsung Elecs. Co.,*
    839 F.3d 1034 (Fed. Cir. 2016) .............................................................................................. 14

*Axonics, Inc. v. Medtronic, Inc.,*
    73 F.4th 950 (Fed. Cir. 2023) ................................................................................................. 12

*Centillion Data Sys., LLC v. Qwest Communications Int'l, Inc.,*
    631 F.3d 1279 (Fed. Cir. 2011) ................................................................................................ 3

*Centrak, Inc. v. Sonitor Techs., Inc.,*
    915 F.3d 1360 (Fed. Cir. 2019) ................................................................................................ 5

*EMC Corp. v. Zerto, Inc.,*
    No. CV 12-956(GMS), 2016 WL 1291757 (D. Del. Mar. 31, 2016) ...................................... 7

*Fantasy Sports Props. v. Sportsline.com, Inc.,*
    287 F.3d 1108 (Fed. Cir. 2002) ................................................................................................ 8

*Finjan, Inc. v. Secure Computing Corp.,*
    626 F.3d 1197 (Fed. Cir. 2010) ................................................................................................ 8

*InTouch Techs., Inc. v. VGO Commc'ns, Inc.,*
    751 F.3d 1327 (Fed. Cir. 2014) .............................................................................................. 16

*In re Kahn,*
    441 F.3d at 986 ....................................................................................................................... 10

*Lexmark Intern, Inc. v. Impression Products, Inc.,*
    816 F.3d at 732 ......................................................................................................................... 4

*MeadWestVaco Corp. v. Rexam Beauty & Closures, Inc.,*
    731 F.3d 1258 (Fed. Cir. 2013) .............................................................................................. 12

*Ortho Pharm. Corp. v. Smith,*
    959 F.2d 936 (Fed.Cir.1992) .................................................................................................. 12

*PAR Pharm., Inc. v. TWI Pharms., Inc.,*
    773 F.3d 1186 (Fed. Cir. 2014) .............................................................................................. 13

*Personal Web Techs., Inc. v. Apple, Inc.,*
    848 F.3d 987 (Fed. Cir. 2017) ................................................................................................ 13

*Reeves v. Sanderson Plumbing Prods., Inc.,*
    530 U.S. 133 (2000) ........................................................................................................... 1

*Rockwell Int'l Corp. v. United States,*
    147 F.3d 1358 (Fed. Cir. 1998) ....................................................................................... 10

*Sanofi-Synthelabo v. Apotex, Inc.,*
    550 F.3d 1075 (Fed. Cir. 2008) ....................................................................................... 10

*Star Sci., Inc. v. R.J. Reynolds Tobacco Co.,*
    655 F.3d 1364 (Fed. Cir. 2011) ....................................................................................... 16

*In re Stepan Co.,*
    868 F.3d 1342 (Fed. Cir. 2017) ....................................................................................... 13

*Stratoflex, Inc. v. Aeroquip Corp.,*
    713 F.2d 1530 (Fed. Cir. 1983) ....................................................................................... 14

*VirnetX Inc. v. Apple Inc.,*
    792 F. App'x 796 (Fed. Cir. 2019) .................................................................................... 8

*Wireless Protocol Innovations, Inc. v. TCT Mobile, Inc.,*
    771 F. App'x 1012 (Fed. Cir. 2019) ................................................................................. 13

**Statutes**

35 U.S.C. § 271(a) ...................................................................................................................... 1, 4

35 U.S.C. § 271(e) .......................................................................................................................... 4

35 U.S.C. § 282 ............................................................................................................................. 12

35 U.S.C. § 284 ............................................................................................................................. 17

**Rules**

Fed. R. Civ. P. 50(a) ................................................................................................................... 1, 9

## I.    INTRODUCTION

Plaintiff StreamScale respectfully moves under Federal Rule of Civil Procedure 50(a) for judgment as a matter of law ("JMOL") in its favor.  StreamScale brings this motion because "a reasonable jury would not have a legally sufficient evidentiary basis" to return a verdict in favor of Defendant Cloudera, Inc. ("Cloudera") on StreamScale's claim of infringement, as well as Cloudera's invalidity defenses. Fed. R. Civ. P. 50(a)(1).  StreamScale moves for JMOL on all asserted claims, theories and defenses that were presented at trial by either party or that are otherwise moveable under Rule 50(a)(1).

## II.    LEGAL STANDARD

JMOL is appropriate "[i]f a party has been fully heard on an issue . . . and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." *Id.* In making this determination, "the court should review all of the evidence in the record," not merely the evidence favorable to the non-moving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

## III.    ARGUMENT

### A.    StreamScale Is Entitled to JMOL On The Issue Of Infringement

StreamScale respectfully moves for JMOL that Cloudera infringes Claim 1 of the '759 Patent, Claim 12 of the '259 Patent and Claims 34 and 35 of the '296 Patent ("the Asserted Claims").  Because a reasonable jury could find only in favor of StreamScale and could not find in favor of Cloudera, the Court should grant StreamScale JMOL under Rule 50(a).  StreamScale established at trial that Cloudera directly and literally infringes the Asserted Claims by making, using, selling, and/or offering for sale in the United States, the accused CDH software products ("the Accused Products").  35 U.S.C. § 271(a).

StreamScale presented extensive evidence of infringement in its case-in-chief.  This included

testimony from StreamScale's expert Professor Thomas Conte; Michael Anderson, the inventor of the Asserted Patents and CEO of StreamScale; Art Hasan, the prosecutor of the Asserted Patents; Karthik Krishnamoorthy, Wei-Chu Chuang and Arpit Agarwal, Cloudera employees who worked on the Accused Cloudera Products; Greg Tucker, an Intel engineer; and numerous Cloudera technical documents, including source code. PTX1, PTX3, PTX4, PTX176, PTX195, PTX196, PTX386, PTX437, PTX444, PTX2264, PTX2280, PTX2286, PTX2291, PTX2304.

Dr. Conte reviewed Cloudera's source code, technical documentation, and testimony from Cloudera engineers and presented his detailed expert opinions and conclusions showing that each and every claim element of the asserted claims is present in the accused products. 10/10/23 Trial Tr. (Conte) at 113:14-218:4. StreamScale also cross-examined Cloudera's expert Dr. Ramchandran regarding his opinions. 10/12/23 Trial Tr. (Ramchandran) at 729:19-745:4. The evidence presented establishes that no reasonable jury could find that the Cloudera does not literally infringe every limitation of the Asserted Claims by making, using, offering for sale and/or selling the Accused Products.

Cloudera's non-infringement defenses and counterclaims presented at trial lack support and are insufficient to allow a reasonable jury to find for Cloudera. Cloudera did not contest most elements of the Asserted Claims. Instead, Cloudera's non-infringement arguments are legally flawed and cannot sustain a verdict in Cloudera's favor.

1.  **A Reasonable Jury Could Only Conclude That Cloudera Directly Infringes Claim 1 Of The '759 Patent and Claim 12 Of The '259 Patent By Making and Using The Accused Products.**

<u>Cloudera Uses the Accused Products</u>**.** Dr. Conte presented detailed evidence that, among other things, Cloudera's testing setup for the Accused Products satisfies each element of Claim 1 of the '759 Patent at Trial Transcript 168:1-182:11, as well as each element of Claim 12 of the '259 Patent at Trial Transcript 147:1-167:13. Cloudera's own witnesses, including Mr. Chuang and Mr.

Krishnamoorthy, admitted Cloudera tests the erasure code functionality for every release, and that during this testing Cloudera executes the infringing erasure code instructions. Trial Tr. at 224:22-225:3 (Chuang); 229:19-233:13 (Krishnamoorthy Depo.); 447:14-448:3 (Krishnamoorthy), 466:12-467:13 (Krishnamoorthy), 472:24-477:3 (Krishnamoorthy). Cloudera did not present any evidence that its use of the Accused Products during testing fails to meet any of the limitations of these patents. Cloudera's own non-infringement expert **admitted** that the code infringes when tested. Trial Tr. 740:6-9 (Ramchadran) ("Q. And you didn't tell the ladies and gentlemen of the jury that when it tests erasure coding, it doesn't infringe, correct? A. No. Q. And in fact, as part of the validation process, Cloudera must test erasure coding, correct? A. Yes"), 734:10-14 (Ramchadran) ("Q. Sir, you don't dispute fact that when the user decides to use the functions that are in the software, that every single one of the limitations of every single one of the asserted claims is met, correct? A. Yes. That's correct."). This is a dispositive admission that, combined with the affirmative proof discussed above that each element of the claims is present, renders JMOL appropriate.

Further, Cloudera uses the system because it controls and benefits from it. The Federal Circuit holds that infringement via use does not require the infringer "exercise physical or direct control over each individual element of the system." *Centillion Data Sys., LLC v. Qwest Communications Int'l, Inc.*, 631 F.3d 1279, 1284 (Fed. Cir. 2011). Rather, even if components of the system are in the physical possession of others (such as a customers), there is still "use" of the system where a party "put[s] the invention into service, i.e., control[s] the system as a whole and obtain[s] benefit from it." *Id.* Here, Dr. Conte testified that Cloudera controls and benefits from the complete system: "Cloudera makes that choice [about whether the computer instructions are configured to implement the erasure coding system]. That's what they do when they compile and assemble the software." Trial Tr. 138:9-16 (Conte); 131:18-25, 133:16-20 (Conte) ("zeros and ones" set by Cloudera in code cannot be changed by customer).

Cloudera does not dispute any of this. It merely argues that its **sales** of the Accused Products are not infringing because it does not make or sell hardware. This is irrelevant, as using a patented invention is just as much infringement as making and selling the patented invention. 35 U.S.C. § 271(a); *Lexmark*, 816 F.3d at 732, *rev'd and remanded* 581 U.S. 360 (2017) (citing *Global-Tech*, 563 U.S. at 760); *Roche*, 733 F.2d at 861, *superseded-in-part by statute*, 35 U.S.C. § 271(e); *see Carnegie Mellon*, 807 F.3d at 1306. Further, both Dr. Conte and Cloudera witnesses testified that this "use" is necessary to be able to sell the accused products.  *See, e,g.*, Trial Transcript 132:21-133:10 (Conte) ("Q. Why is it so important for Cloudera to test the products before they sell them?  A. Could you imagine selling something you didn't test?"); Trial Tr. 229:19-21 (Krishnamoorthy) ("Q. Does Cloudera test the erasure coding capability and functionality of its own products?  A. Yes.  We have to test it.").

Cloudera Makes the Accused Products. In addition to infringement via testing, Dr. Conte presented detailed evidence that, among other things, Cloudera makes the Accused Products by acting as final assembler of each element of the claimed systems. Trial Tr. at 168:1-182:11; 147:1-167:13. For example, Dr. Conte testified that Cloudera "makes, tests, and sells CDH" and that it "compile[s] and assemble[s] the software," and controls how it is configured. *See, e,g.*, Trial Tr. 127:14-18, 138:9-16; 212:18-23 ("Q. So when you were talking about the complete Cloudera system that you testified establishes each and every element of each asserted claim, who is it who assembles together all of those components to make the system? A. Cloudera does.").

Cloudera's witnesses admitted that Cloudera makes the Accused Products. Trial Tr. 472:18-473:4 (Krishnamoorthy) (e.g. "Q. And then Cloudera, they make that CDH software, correct? A. Correct. It is -- as I explained to the counsel's questions, it's about bundling and packaging all the different source code components with Cloudera manager."), 474:20-475:4 (e.g. "Q. Okay. So to sort of summarize, Cloudera builds CDH, correct? A. Correct. Q. Cloudera tests CDH, correct? A. Correct. Q. And Cloudera builds tests and validates the accused erasure coding functionality within it,

correct? A. We test all of the functions in CDH. So. erasure coding is one of the functions too.").

Cloudera argues it does not "make" the system because it does not manufacture hardware devices. But this is irrelevant. It is black letter Federal Circuit law that "a final assembler can be liable for making an infringing combination . . . even if it does not make each individual component element." *Centrak, Inc. v. Sonitor Techs., Inc.*, 915 F.3d 1360, 1372 (Fed. Cir. 2019).

> 2. **A Reasonable Jury Could Only Conclude That Cloudera Directly Infringes Claims 34 and 35 Of The '296 Patent By Making, Using, Offering For Sale And Selling The Accused Products.**

Dr. Conte presented detailed evidence that Cloudera infringes Claims 34 and 35 of the '296 Patent by making, using, offering for sale, and selling the Accused Products. 10/10/23 Trial Tr. (Conte) at 130:2-146:15. Cloudera does not dispute that (as discussed above) it assembles the software for the Accused Products and tests that software, and that the Accused Product performs each of the functions recited in these claims when the accelerated erasure code is executed. The evidence discussed above in Section III.A.1. regarding making and testing the software applies equally to the '296 Patent, and is incorporated herein by reference. Further Cloudera's counsel expressly conceded to the Court that there is no dispute the Accused Product performs each of the functions recited in these claims when the accelerated erasure code is executed: "we're not arguing about how the accused products work. Both sides agree, we have code that performs the algorithm of the claim." Trial Tr., Day 3 Realtime, 6:25-7:4.

While Cloudera's concession of infringement is dispositive, Cloudera previously argued that its sales of the Accused Products are not infringing because (1) the software it sells is purportedly not on a "computer-readable medium," and (2) the software it sells is allegedly not "configured to" perform the recited functions. Neither argument is sufficient to survive JMOL.

> (a) **A Reasonable Jury Could Only Conclude That the Accused Products Are On A "Computer-Readable Medium".**

First, Cloudera's argument that the Accused Products are not on a "computer-readable

medium" because customers download the software from Cloudera's servers lacks merit. As Dr. Conte testified, customers pay Cloudera for the right to access Cloudera's servers to obtain the Accused Products, which are stored on a "computer-readable medium" on those servers. 10/10/23 Trial Tr. (Conte) at 175:3-5 ("The customer gets access to a drive on Cloudera's servers when they download the software to their own drive."); *id.* at 190:5-190:11; 191:22-14 ("So the way it works is when you go to download CDH, you're accessing actually a server, and in that server Cloudera has stored their software on a nontransitory computer readable medium. And so then you're paying for access to that, and then you download it from there.").

Dr. Conte further testified that the software stored on the computer-readable medium is configured to perform each of the recited functions when it is executed. 10/10/23 Trial Tr. (Conte) at 133:25-146:15.  This was not disputed by Cloudera. Indeed, as discussed above, its counsel expressly conceded it. Cloudera's expert likewise conceded it. Trial Tr. 734:10-14 (Ramchadran) ("Q. Sir, you don't dispute fact that when the user decides to use the functions that are in the software, that every single one of the limitations of every single one of the asserted claims is met, correct? A. Yes. That's correct."), 737:6-21 ("It's in the CDH product that's sold to the customer. The code -- accelerated erasure coding is in the product sold to the customer? A. That's fair. Q. And it gives users the ability to perform accelerated erasure coding if they choose to do so, correct? A. Correct. Q. And, in fact, the accelerated erasure coding -- the ability to do accelerated erasure codingis part of the software inside CDH, correct? A. Correct. Q. And, in fact, CDH was designed by Cloudera. It wasn't an accident. It was designed to give users the capability of using erasure coding, correct? A. Correct.").

Cloudera's argument that its sales of the Accused Product cannot constitute infringement of a "computer-readable medium" claim because its customers "download" the software from its website has been rejected by other courts. For example, in *EMC Corp. v. Zerto, Inc.*, No. CV 12-956(GMS), 2016 WL 1291757, at *12 (D. Del. Mar. 31, 2016), aff'd, 691 F. App'x 623 (Fed. Cir. 2017), the court

upheld a jury's finding of direct infringement of a computer-readable medium claim based on the fact that—just as here—the defendant sold the infringing software by making it available for its customers to download from its website.

**(b)    Cloudera's "Configured To" Argument Is Legally Incorrect.**

Claims 34–36 of the '296 Patent are storage medium claims that describe specific computer instructions. As described in the claims, those "computer instructions are configured to implement an erasure coding system ***when executed*** on the computing system by performing" the claimed steps. PTX1 at 7:44–46 (emphasis added), 33:11–29 (same). As Dr. Conte testified, the plain and ordinary meaning of "configured to" in the context of the claim is that the "instructions are written" to perform erasure coding when they are executed. 10/10/23 Trial Tr. at 204:14-19 (Conte) ("Q. Now, with respect to the claim term that we've looked at today, "configured to," what is the plain and ordinary meaning to you of that term? A. Well, instructions configured to, when executed, perform erasure coding means those are how the instructions are written."). Cloudera's own witnesses confirmed that this is what it means to be "configured." 10/10/23 Trial Tr. at 221:14-16 (Chuang) ("Q. What do you mean by configuration?  A. What do I mean by configuration?  It's a property in software.").

StreamScale presented substantial and unrebutted evidence that the Accused Products contain code that is written in a manner such that it will perform erasure coding when it is executed. 10/10/23 Trial Tr. at 131:11-132:20 (Conte) (testimony concerning configuration . . . "Q. Now, once the computer instructions have been written and those zeros and ones have been set, does the configuration of zeros and ones ever change? A. No.  It does not.  Q. So in the CDH product, does it actually go out to the customer with all those zeros and ones already set? A. Yes.  It does.  All this is contained in CDH . . .  Q. Now, when the user does that, when they go in and they configure a policy or a setting or even set up some different hardware, can that ever change the underlying software configuration? A. No.  The instructions stay the same."). Cloudera does not dispute the code

will infringe when executed. Trial Tr., Day 3 Realtime, 6:25-7:4 (Cloudera Counsel ("we're not arguing about how the accused products work. Both sides agree, we have code that performs the algorithm of the claim."); Trial Tr. 734:10-14 (Ramchadran) ("Q. Sir, you don't dispute fact that when the user decides to use the functions that are in the software, that every single one of the limitations of every single one of the asserted claims is met, correct? A. Yes. That's correct"), 734:21-24 ("Q. And the accelerated erasure coding functionality is present in the CDH code, correct? A. Yes. The erasure coding functionality is present in the CDH code.").

Cloudera's nevertheless argues that it does not infringe because the erasure code feature is not enabled by "default" and must instead be enabled by the customer after purchase. Cloudera's argument is directly contrary to Federal Circuit law. *E.g.*, *Fantasy Sports Props. v. Sportsline.com, Inc.*, 287 F.3d 1108, 1118 (Fed. Cir. 2002); *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1205 (Fed. Cir. 2010); *VirnetX Inc. v. Apple Inc.*, 792 F. App'x 796, 808 (Fed. Cir. 2019). Indeed, the infringing code here is "'already present' in Defendants' accused products when sold." (*Finjan*, 626 F.3d at 1205) and Cloudera (when it tests) and its customers (when they use) need only "activat[e] means that are **already present in the underlying software**" for it to perform the infringing functions. *Fantasy Sports*, 287 F.3d at 1118. Further, Cloudera's own expert admitted the requirement of a "default" appears nowhere in the claim and was not in his report. Trial Tr. 738:20-739:6 (Ramchadran) ("Q. First off, does the word "default" occur in any of the claims or default setting occur in any of the claims? No. It does not appear in any of the claims. Correct? A. Correct. Q. And, in fact, there's nowhere in your report that you told the opinion you gave today that configured means default. You didn't say that in the report you prepared in this case, correct? A. Correct. I didn't say configured is default.").

### (c)    Cloudera's "Configured To" Argument Is Legally Incorrect.

Even if Cloudera's non-infringement arguments as to the sales of the Accused Product were

credited, Cloudera has not presented any evidence to rebut the fact that it directly infringes Claims 34 and 35 of the '296 Patent when it makes and uses the Accused Product during testing.

**B.      StreamScale Is Entitled To JMOL On The Issue Of Invalidity**

No reasonable jury could find that Cloudera has established, by clear and convincing evidence, that any of the Asserted Claims are invalid.  StreamScale moves for JMOL on all invalidity theories presented at trial by Cloudera or that are otherwise movable under Rule 50(a).

Cloudera did not present any evidence or argument at trial that the Asserted Patents are anticipated by any prior art references.  Cloudera presented two separate alleged obviousness grounds at trial: (1) an obviousness combination based on the Macy and Plank references, and (2) a single-reference obviousness combination based on the Macy reference.  StreamScale is entitled to JMOL on obviousness because no reasonable jury could conclude that Cloudera established obviousness based on either ground.

**1.      StreamScale Is Entitled To JMOL Of Validity Because Cloudera Failed To Address Motivation To Combine or Expectation of Success**

Even if Cloudera had established that all elements of the asserted claims are disclosed by the Macy or Plank references, StreamScale is entitled to JMOL on the issue of validity because Cloudera failed to present proper evidence of motivation to combine.

As an initial matter, Cloudera's expert failed to address the alleged obviousness of the asserted claims as a whole and instead merely addressed the alleged obviousness of particular limitations. *See, e.g.,* Trial Tr. at 511:22-5:12:6 ("[Q.] And, Dr. Long, what's your opinion regarding the validity of ***this language***?  A. My opinion is that it is obvious in view of Macy."); 512:12-15 ("And, Dr. Long, what is your opinion regarding the validity of this language?  A. Again, my opinion is that it's obvious in view of Macy."); 514:1-3 (same); 519:22-25 (same); 520:10-17 (same); 523:6-7 (same); 523:23-524:7 (same); 527:13-23 (same); 530:4-13 (same); 533:1-14 (same); 539:21-540:2 (same); 542:5-14 (same); 543:21-544:1 (same); 545:3-13 (same); 546:13-18 (same); 549:5-12 (same); 550:10-19 (same);

551:18-23 (same); 552:11-17 (same); 554:12-22 (same); 556:1-3 (same); 556:17-20 (same); 558:1-8 (same); 559:8-15 (same); 560:11-15 (same); 561:5-6 (same); 561:22-562:7 (same); 562:18-563:3 (same); 563:22-564:4 (same); Trial Transcript at 580:7-581:12 (opining that "language" of claims 12[h] and 12[i] is "obvious in view of the Intel-Macy patent"); *id.* 581:14-23 (same), 582:4-14 (same); 583:9-584:11 (same); 585:7-20 (same); 23:6-23:14 (same); 586:1-18 (same), 588:1-16 (same), 589:24-590:11, 591:6-18, 592:2-10, 593:6-17. This type of analysis is legally improper, as the Federal Circuit has recognized that "[t]he determination of obviousness is made with respect to the subject matter as a whole, not separate pieces of the claim." *Sanofi-Synthelabo v. Apotex, Inc.*, 550 F.3d 1075, 1086 (Fed. Cir. 2008); *see also Rockwell Int'l Corp. v. United States*, 147 F.3d 1358, 1364 (Fed. Cir. 1998) ("In determining obviousness, the invention must be considered as a whole without the benefit of hindsight, and the claims must be considered in their entirety."). Because Cloudera failed to present a proper obviousness analysis regarding "the subject matter as whole," the Court should grant StreamScale JMOL.

As to the alleged combination of the Macy and Plank references, Cloudera's obviousness argument is legally inadequate for the independent reason that it has not presented adequate evidence regarding any expectation of success. The Federal Circuit has held that "a party alleging invalidity due to obviousness must articulate the reasons one of ordinary skill in the art would have been motivated to select the references and to combine them to render the claimed invention obvious." *Abbott Labs. v. Andrx Pharm., Inc.,* 452 F.3d 1331, 1336 (Fed.Cir.2006) (citing *In re Kahn,* 441 F.3d at 986). Cloudera's own expert acknowledged that in order for a claim to be rendered obvious, a POSITA must be motivated to combine "every single limitation" in the "exact way a person of skill would do so with an expectation of success." 10/12/23 Rough Trial Tr. at 45:16-20. He acknowledged, however, that he did not provide any testimony of a "reasonable expectation of success." *Id.* at 64:18-21 ("At any point in time yesterday or today on your direct examination, did you ever discuss using the phrase

'reasonable expectation of success'? A. I don't think I ever used that phrase.  Q.  Okay.  And that's one of the required standards to find a patent obvious, correct?  Correct.").

As to Claims 34 and 35 of the '296 Patent, Cloudera's expert provided testimony regarding an alleged motivation to combine Macy and Plank as to specific claim elements, but failed to provide any testimony as to any alleged motivation to combine the two references in a way that the claimed invention does.  *See, e.g.*, 518:19-519:16 (testifying that a POSITA would be motivated to combine Macy and Plank as to the element of "configured to implement an erasure coding system"); 522:11-22 (identifying disclosure from Plank related to element of "arranging original data as a data matrix in the main memory" but failing to identifying any motivation to combine); 525:2-25 (identifying disclosure from Plank related to "encoding matrix in main memory" but failing to identify motivation to combine);  532:16-22 (providing conclusory testimony that claim 34 would have been "obvious in that combination" of Macy and Plank without identifying any motivation to combine or evidence of a reasonable expectation of success); 535:5-12 (providing conclusory testimony that the "Macy and Plank combination renders obvious Claim 35," but failing to address motivation to combine as to whole claim).

As to Claim 1 of the '759 Patent and Claim 12 of the '259 Patent, Cloudera's expert did not provide any analysis or opinions regarding motivation to combine whatsoever. *See, e.g.* Trial Tr. 546:1-11 (testifying that Plank discloses "Elements 1[e], 1[f], and 1[g]" of '759 Patent but failing to address motivation to combine); *id.* at 552:1-5 (offering the conclusory opinion that Claim 1 of '759 Patent would be "obvious in view of combination of Macy and Plank" without addressing motivation to combine); 55:4-18 (testifying that Plank reference relates to "system adapted to use accelerate error-correcting code processing to improve the storage and retrieval of digital data distributed across a plurality of drives" of Claim 12 of the '259 Patent but failing to address motivation to combine); 554:19-55:20 (same as to another element of Claim 12 of '259 Patent); 557:10-25 (same); 558:17-559:5

(same); 559:13-23 (same); 560:7-23 (same); 561:9-20 (same); 561:23-562:17 (same); 562:18-563:21 (same); 563:23-564:13 (same). "Obviousness, like other grounds of invalidity, must be analyzed on a claim-by-claim basis." *MeadWestVaco Corp. v. Rexam Beauty & Closures, Inc.*, 731 F.3d 1258, 1264 (Fed. Cir. 2013); *Ortho Pharm. Corp. v. Smith,* 959 F.2d 936, 942 (Fed.Cir.1992) (concluding that all grounds of invalidity must be evaluated against individual claims, as required by the plain language of 35 U.S.C. § 282); *Axonics, Inc. v. Medtronic, Inc.*, 73 F.4th 950, 957 (Fed. Cir. 2023) ("When an obviousness challenge asserts a combination of identified prior art, the motivation-to-combine portion of the inquiry is 'whether 'a skilled artisan would have been motivated to combine the teachings of the prior art references to achieve *the claimed invention*.'"")

Cloudera also failed to present sufficient evidence to establish obviousness based on its second theory—that the claims are obvious in view of the Macy reference alone. The Macy reference describes two separate embodiments—one that uses a PMODMUL parallel multiplier and one that uses a PSHUFB multiplier. *Compare, e.g.*, DX-63 at Fig. 6 (relating to the PMODMUL embodiment), *and id.* at 12:3-56 (same), *with id.* at Figs. 8A-8C (relating to the PSHUFB embodiment), *and id.* at 13:37-22 (same). Indeed, the Macy reference expressly describes the two embodiments "alternatively," *id.* at [57] (Abstract), 4:23-27, 14:36-39, and specifically describes "how to select between the two" embodiments. *Id.* at 6:40-43, 22:62-64. Cloudera's expert relied on disclosures regarding the PMODMUL embodiment for some elements (see, e.g., 10/11/23 Trial Tr. 515:3-10 (pointing to disclosures concerning the PMODMUL embodiment for the element of "instructions configured to implement an erasure coding system" for Claim 34 of the '296 Patent), but relied on disclosures regarding the PSHUFB embodiment for other elements (*see, e.g.*, 10/11/23 Trial Tr. 526:1-529:21 (pointing to the PSHUFB embodiment of the element "generating the check data using a parallel multiplier for concurrently multiplying multiple data entries of a matrix by a single factor" for Claim 34 of the '296 Patent). *See also* Trial Tr. at 563:22-565:22 (pointing to disclosures of both PMODMUL

and PSHUFB for element 12[g] of '259 Patent); Trial Tr. at 586:9-23 (relying on PSHUFB embodiment for element [l] of claim 12 of the '259 Patent); 589:6-12 (same for element 12[m] of '259 Patent).  Despite mixing-and-matching from different embodiments, Dr. Long failed to provide any analysis or opinions regarding any alleged motivation to combine these two distinct embodiments from the Macy reference.  This renders his analysis legally insufficient.  *In re Stepan Co.*, 868 F.3d 1342, 1346 n.1 (Fed. Cir. 2017) ("combining multiple embodiments from a single reference" requires the same proof of "motivation to make the combination and a reasonable expectation that such a combination would be successful, otherwise a skilled artisan would not arrive at the claimed combination").  As such, no reasonable jury could conclude that the Asserted Patents are obvious in view of the Macy reference.

Further, as to all the theories, USAA's expert Dr. Conte testified there was no motivation to combine and expectation of success, including because the Macy patent is about packet communication networks, not accelerated erasure coding.  Trial Tr. 854:5-876:14 (Conte).

> 2.  **No Reasonable Jury Could Find That The Asserted Prior Art Contains All Elements Of The Claims At Issue**

To establish obviousness, the asserted prior art must contain "all of the elements of the … claims at issue." *Personal Web Techs., Inc. v. Apple, Inc.*, 848 F.3d 987, 991 (Fed. Cir. 2017); *see also PAR Pharm., Inc. v. TWI Pharms., Inc.*, 773 F.3d 1186, 1194 (Fed. Cir. 2014) (obviousness requires proof that "all claimed limitations are disclosed in the prior art"); *Wireless Protocol Innovations, Inc. v. TCT Mobile, Inc.*, 771 F. App'x 1012, 1013 (Fed. Cir. 2019) ("we reverse . . . on the first obviousness ground because the combination of asserted prior-art references does not disclose every element of the challenged claims").  Cloudera failed to establish that each of the elements of the asserted claims is disclosed by Macy or Plank.  For example, no reasonable jury could conclude that these references disclose the following limitations:

- For all Asserted Claims - Macy does not disclose the limitation "accelerated error-correcting code (ECC) processing." Trial Tr. 854:5-860:24 (Conte).

- Claim 12[d] of '259 Patent – "more than two check drives." Trial Tr. at 561:5-8 ("Q. And does Macy disclose that?  A. It's obvious in view of Macy.  Macy, I'd have to go back and look.  I don't know if it uses the word 'drive' or not.").

- Claims 12 of the '259 Patent – Plank does not disclose "SIMD instructions." Trial Tr. 870:19-871:12. (Conte).

- Claim 1 of the '759 Patent – Macy and Plank do not disclose the limitations "input output (I/O) controller" "I/O controller." Trial Tr. 871:13-873:4.

Because Cloudera failed to introduce sufficient evidence for a reasonable jury to conclude that these elements are present in Macy or Plank, StreamScale is entitled to JMOL on the issue of validity.

### 3. Cloudera Failed to Address or Rebut the Evidence of Objective Indicia of Nonobviousness

The Federal Circuit has recognized that "[e]vidence of secondary considerations 'may often be the most probative and cogent evidence [of nonobviousness] in the record." *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1538 (Fed. Cir. 1983). Thus, "[a] determination of whether a patent claim is invalid as obvious under § 103 requires consideration of all [of these] factors, and it is error to reach a conclusion of obviousness until all those factors are considered." *Apple Inc. v. Samsung Elecs. Co.*, 839 F.3d 1034, 1048 (Fed. Cir. 2016). "Objective indicia of nonobviousness must be considered in every case where present." *Id.*

Here, there is significant evidence that secondary considerations of non-obviousness exist.  For example, StreamScale presented extensive evidence of industry praise.  For example, Mr. Hasan testified that "the inventions were important to the industry because there was a lot of interest in it" as evidence by the fact that many large companies accessed and downloaded the Asserted Patents

from StreamScale's website after it issued.  10/10/23 Trial Tr. at 67:16-70:9 (Hasan) (testifying about log of companies that downloaded StreamScale's patents); PTX-210.  Cloudera itself likewise praised the invention's effectiveness in reducing storage and increasing speed. *See, e.g.*, PTX-444 (Cloudera document stating "Erasure coding can reduce the storage overhead of HDFS by approximately 50 percent compared to replication. There's that halves the number of check drives you need."); PTX-437; PTX-196 (speed benefits of accelerated erasure coding); Trial Tr. 458:25-461:10 (Krishnamoorthy) ("erasure coding" is "an important feature" and "requires significantly less storage space but with redundancy and availability that's roughly similar to triple replication").  As another example, when Mr. Anderson shared his invention and the performance results of it with Jim Plank, a leading expert in the filed, he responded "Dang – those are impressive numbers: (PTX-176) and stated "I think your results are very good, and novel" (PTX-266). In addition, StreamScale presented evidence of unexpected results.  See 10/10/23 Trial Tr. at 309:9-12 (Plank) ("Q. At the time of your FAST13 presentation, the conventional wisdom in the field was to avoid Reed Solomon codes for erasure coding, correct?  A. Probably, yes.").

StreamScale also presented evidence regarding commercial success of the invention.  For example, Dr. Conte testified that Cloudera would not have been able to achieve such high sales numbers without including accelerated erasure coding in its software.  10/10/23 Trial Tr. at 217:4-12 ("Q. From a technical perspective and what you know of the industry, would Cloudera be able to make this volume of sales of CDH to companies like Apple or these huge financial institutions if they didn't include an ability for those companies to use accelerated erasure coding? A. No.  They would not.  Those companies would again been – have to go back to building three data centers."); *see also id.* 214:8-216:12 (Conte identifying companies who use erasure coding and why it was important); PTX-2264; Tr. 357:18-25 (Weinstein) (Intel paid $741 million to participate with Cloudera); Trial Tr. 361:19-364:5 (discussing Cloudera sales of over $1.2 billion and profits of over $800 million in

infringing sales). As a further example, StreamScale's expert Dr. Conte testified to the extensive evidence of objective indicia. Trial Tr. 873:5-876:13.

Despite the existence of these secondary considerations of non-obviousness, Cloudera's validity expert Dr. Long failed to address them at all. Trial Tr. 488:06-566:06; 579:09-596:01; 635:04-643:25 (no discussion of secondary considerations of non-obviousness during direct or redirect testimony). Because Cloudera has the burden to establish invalidity by clear and convincing evidence, and because consideration of secondary considerations of non-obviousness is a necessary component of an obviousness analysis, StreamScale is entitled to JMOL on the issue of invalidity. *See InTouch Techs., Inc. v. VGO Commc'ns, Inc.*, 751 F.3d 1327, 1332, 1352-53 (Fed. Cir. 2014) (reversing a district court's denial of a patentee's motion for JMOL as to validity because of the defendant's "failure to persuasively rebut [the patentee's] evidence of nonobviousness," which included commercial success, industry praise, and licenses); *Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*, 655 F.3d 1364, 1367, 1376 (Fed. Cir. 2011) (reversing the district court's denial of a patent licensee's motion for JMOL on validity, citing the "many secondary considerations that support nonobviousness" in the record).

### C.     StreamScale Is Entitled To JMOL On The Issue Of Damages

#### 1.     StreamScale is Entitled to JMOL on the Amount of Infringing Sales

StreamScale is also entitled to JMOL on the amount of Cloudera's infringing sales. Mr. Weinstein testified, based on Cloudera's sales records, that Cloudera's sales of the Accused Products are $1,184,571,821 and the number of infringing node licenses is 644,022. Trial Tr. 343:9-21, 361:19-362:3, 644:5-12 (Weinstein); PTX-450, DX-116, PTX-1884, PTX-2180, PTX-193, PTX-2421, PTX-2281. Cloudera's counsel confirmed it does not dispute these figures. Trial Tr. 847:10-12. Therefore, the Court should grant JMOL and instruct the jury as to the amount of infringing sales at issue for purposes of the jury's assessment of damages.

2.      **StreamScale is Entitled to JMOL on Damages**

StreamScale is entitled to judgment as a matter of law on past damages of not less than $113,991,717 and interest and costs as fixed by the Court per 35 U.S.C. § 284.

StreamScale has proven as a matter of law that it is owed damages for Cloudera's infringement of the patents-in-suit.  Plaintiffs' damages expert Mr. Weinstein testified in this case that he calculated a reasonable royalty based on records of StreamScale and Cloudera, sworn testimony of representatives and witnesses from both parties, and relevant industry and economic information. Based on all of this evidence, Mr. Weinstein testified that a reasonable royalty would be not less than $113,991,717. *See, e.g.*, Trial Transcript 343:1-384:9; PTX-2264, PTX-446, PTX-444, PTX-196, PTX-450, DX-116, PTX-1884, PTX-2180, PTX-193, PTX-2421, PTX-2281.

In contrast, Cloudera's expert Mr. Martinez based his damages analysis not on Cloudera's infringement of the Asserted Patents, but only on Cloudera's customers' alleged use of the Asserted Patents. Trial Tr. 791:3-801:17. This violates the Patent Act, which provides that "[u]pon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C. § 284. Further, Mr. Martinez suggested that "use" under section 284 does not include sales, which is incorrect as a matter of law. Because Cloudera presented no damages evidence that complies with the legal standard, judgment as a matter of law should be granted on damages in StreamScale's favor.

**IV.     CONCLUSION**

For the foregoing reasons, StreamScale respectfully requests that the Court grant Cloudera JMOL on all issues addressed herein and on all claims, theories, and defenses that were presented at trial by either party or that are otherwise movable under Rule 50(a).

Dated: October 12, 2023                    Respectfully submitted,

                                           */s/ Jamie H. McDole*
                                           Jamie H. McDole
                                              State Bar No. 24082049
                                           Phillip B. Philbin
                                              State Bar No. 15909020
                                           Michael D. Karson
                                              State Bar No. 24090198
                                           David W. Higer
                                              State Bar No. 24127850
                                           Matthew K. Joeckel
                                              State Bar No. 24110052
                                           Grant Tucker
                                              State Bar No. 24121422
                                           WINSTEAD PC
                                           2728 N. Harwood Street, Suite 500
                                           Dallas, Texas 75201
                                           Tel.: 214.745.5400
                                           Fax: 214.745.5390
                                           Email: jmcdole@winstead.com
                                                    pphilbin@winstead.com
                                                    mkarson@winstead.com
                                                    dhiger@winstead.com
                                                    mjoeckel@winstead.com
                                                    gtucker@winstead.com

                                           Jason G. Sheasby (*pro hac vice*)
                                           IRELL & MANELLA LLP
                                           1800 Avenue of the Stars, Suite 900
                                           Los Angeles, CA 90067
                                           Tel.: 310.277.1010
                                           Fax: 310.203.7199
                                           Email: jsheasby@irell.com

                                           Lisa Glasser (*pro hac vice*)
                                           IRELL & MANELLA LLP
                                           840 Newport Center Drive, Suite 400
                                           Newport Beach, CA 92660
                                           Tel.: 949.760.0991
                                           Fax: 949.760.5200
                                           Email: lglasser@irell.com

                                           Max Ciccarelli
                                              State Bar No. 00787242
                                           CICCARELLI LAW FIRM LLC
                                           100 N. 6th Street, Suite 502
                                           Waco, Texas 76701
                                           Tel.: 214.444.8869
                                           Email: Max@CiccarelliLawFirm.com

                                           *Attorneys for Plaintiff StreamScale, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that, on October 12, 2023, I served the foregoing document via electronic mail to the following counsel:

Brock S. Weber
brock.weber@pillsburylaw.com
Christopher Kao
christopher.kao@pillsburylaw.com
John J. Steger
john.steger@pillsburylaw.com
Surui Qu
surui.qu@pillsburylaw.com
Pillsbury Winthrop Shaw Pittman LLP
4 Embarcadero Center, 22nd Floor
San Francisco, CA 94111

Steven P. Tepera
steven.tepera@pillsburylaw.com
Benjamin L. Bernell
ben.bernell@pillsburylaw.com
Christopher L. Drymalla
chris.drymalla@pillsburylaw.com
Pillsbury Winthrop Shaw Pittman LLP
401 Congress Avenue, Suite 1700
Austin, TX 78701

Audrey Lo
audrey.lo@pillsburylaw.com
Pillsbury Winthrop Shaw Pittman LLP
2550 Hanover Street
Palo Alto, CA 94304

Jeffrey E. Faucette
jeff@skaggsfaucette.com
Skaggs Faucette LLP
Four Embarcadero Center, Suite 1400
San Francisco, CA 94111

Darryl J. Adams
dadams@sgbfirm.com
Slayden Grubert Beard PLLC
401 Congress Avenue, Suite 1650
Austin, TX 78701

*Counsel for Defendant Cloudera, Inc.*

*/s/ Jamie H. McDole*
Jamie H. McDole