# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| STREAMSCALE, INC.,<br><br>        Plaintiff,<br><br>v.<br><br>CLOUDERA, INC.,<br><br>        Defendant. | Civil Action No. 6:21-cv-00198 ADA |

## DEFENDANT'S RULE 50(a) MOTION FOR JUDGMENT AS A MATTER OF LAW AT THE CLOSE OF EVIDENCE

**Table of Contents**

I.   INTRODUCTION ............................................................................................................. 1

II.  LEGAL STANDARD..................................................................................................... 1

III. CLOUDERA IS ENTITLED TO JUDGMENT OF INVALIDITY......................................... 1

IV. THE EVIDENCE AT TRIAL CANNOT SUPPORT A DAMAGES VERDICT ................... 4

   A. Cloudera Is Entitled To JMOL Of No Damages Because No Reasonable Juror Could Award Damages Based On Mr. Weinstein's Damages Scenario One............................... 5

   B. Cloudera Is Entitled To JMOL Of No Damages Because No Reasonable Juror Could Award Damages Based On Mr. Weinstein's Damages Scenario Two. .............................. 9

V.  CONCLUSION............................................................................................................. 10

I.     **INTRODUCTION**

Pursuant to Fed. R. Civ. P. 50(a), Defendant Cloudera, Inc. ("Cloudera") moves for judgment as a matter of law that (1) the asserted claims are invalid as obvious and (2) Plaintiff StreamScale, Inc. ("StreamScale") failed to adduce evidence to support a damages verdict. Based on the evidence presented at trial, no reasonable juror could find in StreamScale's favor, and thus Cloudera is entitled to judgment as a matter of law.

Cloudera further incorporates by reference its previously filed Rule 50(a) Motion for Judgment as a Matter of Law, Dkt. 325, as though fully set forth herein.

II.    **LEGAL STANDARD**

"Judgment as a matter of law is proper if a party has been fully heard on an issue during a jury trial and a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a); *Williams v. Manitowoc Cranes, LLC*, 898 F.3d 607, 614 (5th Cir. 2018). The Court should grant Cloudera's motion unless there is "substantial evidence" in support of each essential element of StreamScale's claims. *See Am. Home Assurance Co. v. United Space Alliance*, 378 F.3d 482, 487 (5th Cir. 2004). "Substantial evidence requires more than a mere scintilla . . . and [the court] must review the record as a whole, taking into consideration evidence that both justifies and detracts from the jury's decision." *Cordis Corp. v. Boston Scientific Corp.*, 658 F.3d 1347, 1357 (Fed. Cir. 2011). Conclusory testimony is not substantial evidence. *See MobileMedia Ideas LLC v. Apple Inc.*, 780 F.3d 1159, 1172 (Fed. Cir. 2015).

III.   **CLOUDERA IS ENTITLED TO JUDGMENT OF INVALIDITY**

Given the evidence presented at trial, a reasonable jury could only conclude that the asserted claims are invalid in view of the prior art.

Evidence at trial established that the asserted claims are rendered obvious in light of U.S. Patent No. 7,343,389 ("Macy," DX-63) alone and/or in combination with the Plank reference

(DX64 and DX-65). The "obviousness inquiry [under 35 U.S.C. § 103] assesses 'the differences between the subject matter sought to be patented and the prior art' to ascertain whether 'the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.'" *Senju Pharm. Co. v. Lupin Ltd.*, 780 F.3d 1337, 1341 (Fed. Cir. 2015).

The application for Macy was filed May 2, 2002, and it issued on March 11, 2008. DX-63. It is undisputed that Macy is prior art to the asserted patents. Macy was not cited during prosecution of the asserted patents. Rough Day 1 Trial Tr. at 91:11-19; Rough Day 2 Trial Tr. at 509:10-22. Dr. Long testified at trial that Macy would have rendered the asserted claims obvious to a person of ordinary skill in the art alone and/or in combination with Plank.

**Claims 34 and 35 of the '296 Patent.** Dr. Long established by clear and convincing evidence that Claims 34 and 35 of the '296 Patent are obvious in view of Macy alone. Rough Day 2 Trial Tr. at 511:11-535:12; Rough Day 3 Trial Tr. at 25:10-26:11. Dr. Long also established that these claims would have been obvious in view of the Macy-Plank combination. *Id*.

Plank is a publication from 1997 titled, "A Tutorial on Reed-Solomon Coding for Fault-Tolerance in RAID-like Systems," that the asserted patents admit is prior art. Rough Day 2 Trial Tr. at 516:11-517:1; DX-64; *see, e.g.*, PTX-1 ('296 Patent) at 3:10-17 (discussing Plank as prior art). The Plank reference includes a 2005 publication that corrects a technical aspect of the 1997 paper. Rough Day 2 Trial Tr. at 517:2-24; DX-65. The asserted patents also recognize that the 2005 correction is prior art and should be considered with the Plank reference. *See, e.g.*, PTX-1 ('296 Patent) at 3:10-17.

**Claim 1 of the '759 Patent.** Dr. Long also established by clear and convincing evidence that Claim 1 of the '759 Patent is obvious in view of Macy alone. Rough Day 2 Trial Tr. at 535:13-

2

552:5; Rough Day 3 Trial Tr. at 26:27:5. Dr. Long also established that these claims would have been obvious in view of the Macy-Plank combination. *Id*.

**Claim 12 of the '259 Patent**. Dr. Long further established by clear and convincing evidence that the final asserted claim, Claim 12 of the '759 Patent, is obvious in view of Macy alone. Rough Day 2 Trial Tr. at 552:7-566:1; Rough Day 3 Trial Tr. at 11:20-25:28, 27:7-14. Dr. Long also established that these claims would have been obvious in view of the Macy-Plank combination. *Id*.

In response, Dr. Conte failed to present sufficient evidence of non-obviousness for a single asserted claim. Instead, Dr. Conte just focused on what was shown on demonstrative slides, ignoring the substance of Dr. Long's testimony.

Furthermore, his opinion that a person of ordinary skill in the art would not have combined Macy with Plank is legally deficient.

As an initial matter, Dr. Long's testimony that the Macy Patent would have rendered the asserted claims obvious on its own does not require any motivation to combine. In rebuttal, Dr. Conte did not testify in any fashion that Dr. Long's opinion relied on combining disparate embodiments of Macy that would require some type of motivation to combine. Rough Day 3 Trial Tr. at 854:5-876:14. In fact, Dr. Long's opinion did not rely on combining disparate elements of Macy, so no particular evidence of motivation to combine was required as a matter of law.

Regarding the Macy-Intel combination, Dr. Long provided detailed reasons why a person of ordinary skill in the art would have combined those references. Rough Day 2 Trial Tr. at 518:23-519:17; Rough Day 3 Trial Tr. at 642:9-643:8. In response, Dr. Conte claimed that a person of ordinary skill in the art would not have made the combination because Macy is allegedly directed to communications while Plank concerns data storage and those are "different field[s]." *See, e.g.*,

3

Rough Day 2 Trial Tr. at 860:25-861:8.  However, this testimony contradicts the asserted patents themselves, which, right up front, discuss that erasure coding "is a type of error-correcting code (ECC) useful for **_forward error-correction_** in applications like a redundant array of independent disks (RAID) **_or high-speed communications systems_**."  PTX-1 at 1:11-14 (emphasis added). Macy discloses that its parallel multiplication techniques are "extremely beneficial within forward error control" and discusses an application in high-speed communications and RAID.  DX-63 at 21:62-22:3, 12:14-21.  Plank discusses erasure coding in data storage such as RAID.  DX-64 at 5. This is the same correlation / combination that the asserted patents concede is entirely compatible in the discussion of the known prior art.  PTX-1 at 1:11-14.

Dr. Conte's opinion regarding a lack of motivation to combine Macy and Plank is contrary to the evidence and StreamScale's own patents.  It therefore lacks sufficient evidence.

Lastly, Dr. Conte's purported evidence of secondary considerations of non-obvious fail as a matter of law because this evidence lacked any discernible nexus to the claimed invention; instead, the evidence concerned alleged praise of performance numbers, which is not claimed in the asserted patents.  *Fox Factory, Inc. v. SRAM, LLC*, 944 F.3d 1366, 1373 (Fed. Cir. 2019) ("In order . . . to accord substantial weight to secondary considerations," "there must be a 'legally and factually sufficient connection'"—i.e., a nexus—"between the evidence and the patented invention."); *Boston Scientific SciMed Inc. v. Iancu*, 811 F. App'x 618 (Fed. Cir. 2020) (rejecting evidence of industry praise that addressed unpatented features).

## IV.   THE EVIDENCE AT TRIAL CANNOT SUPPORT A DAMAGES VERDICT

StreamScale bears the burden of proving the amount of reasonable royalty damages. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009) ("The burden of proving damages falls on the patentee.").  Cloudera is entitled to judgment of no damages under Rule 50(a) because StreamScale presented two erroneous damages theories that no reasonable jury would

have a proper basis to rely on to award damages in any amount.

### A. Cloudera Is Entitled To JMOL Of No Damages Because No Reasonable Juror Could Award Damages Based On Mr. Weinstein's Damages Scenario One.

Under StreamScale's first damages theory, in the hypothetical negotiation, Cloudera would consider a proposed, but unaccepted, licensing offer from StreamScale to Facebook in 2018 to determine the reasonable royalty. Rough Day 2 Trial Tr. at 369:3-20, 395:17-396:14 (Mr. Weinstein admitting that he considered pricing of a non-patented product in determining a royalty rate, but that he only "rel[ies] on the Facebook offer" in his Scenario 1 damages theory) StreamScale's expert, Mr. Weinstein, testified that the rejected offer to Facebook he relied on was to license StreamScale's patents for $100 per hard disk drive. *Id*. at 396:1-6. Equating a "hard disk drive" in the context of the rejected Facebook offer with a "hard disk drive" in the context of his damages calculations concerning Cloudera, Weinstein reasons that because the accused [Cloudera] CDH nodes need a minimum of four hard disk drives to store the data associated with a CDH instance, the parties would consider an adjusted royalty rate of $400 per accused CDH node in the hypothetical negotiation. Id. at 374:7-376:2. Starting with the "adjusted royalty rate" of $400 per accused CDH node, Weinstein adjusts the reasonable royalty rate down 52.9% to $188 per accused CDH node to account for Cloudera's routine discounts to customers, and further down 6% to account for Cloudera's alleged return on invested capital, to arrive at a final "reasonable royalty rate" of $177 per node. *Id*. at 376:3-16. With only the number of drives varying, every royalty rate per node that Weinstein calculates in scenario one is based on the "price per drive" of $100 derived from the rejected Facebook offer. *Id*. at 376:3-25.

Mr. Weinstein's damages methodology suffers from many fatal flaws. Each of these flaws warrants granting JMOL in Cloudera's favor on damages.

**First**, Mr. Weinstein's damage theory rests on a rejected offer that no reasonable jury could

5

find that Cloudera would have used, or even considered, to determine a royalty rate. Rough Day 2 Trial Tr. at 369:3-20, 395:17-396:14 (Mr. Weinstein admitting that he considered pricing of a non-patented product in determining a royalty rate, but that he only "rel[ies] on the Facebook offer" in his Scenario 1 damages theory). In almost every circumstance, an unaccepted offer "is an improper starting point" for a damages calculation. *MiiCs & Partners, Inc. v. Funai Elec. Co., Ltd.*, No. 14-804, 2017 WL 6268072, at *4 (D. Del. Dec. 7, 2017) (citing *Whitserve, LLC v. Comput. Packages, Inc.*, 694 F.3d 10, 29-30 (Fed. Cir. 2012)); *Whitserve*, 694 F.3d at 29-30 (reversing damages award and holding that an expert's royalty rate calculation was speculative because it relied on an unaccepted license and was thus "based on fiction"). A "*proposed*, but unaccepted, license" lacks evidentiary value because "patentees could artificially inflate the royalty rate by making outrageous offers." *Id.* That is the situation here.

Unaccepted offers are especially unreliable where they lack other "indicia of reliability and commercial value." *MLC Intel. Prop., LLC v. Micron Tech., Inc.*, No. 14-cv-03657-SI, 2019 WL 2716512, at *13-14 (N.D. Cal. June 28, 2019) (collecting cases). Indicia of reliability and commercial value include circumstances where (1) the rejected offer was consistent with the commercial value and profitability of the patent and the extensive remaining life of the patent at the time of infringement; or (2) the unaccepted offer was made to the defendant after a lengthy contractual relationship between the parties, and good faith negotiations to replace their long-standing agreement with the rejected licensing agreement were unsuccessful. *Id*. However, Mr. Weinstein provided no analysis of why the rejected offer bears indicia of reliability and commercial value.

In fact, Mr. Weinstein testified that he had limited understanding of the details of the offer and the negotiations, if any. Rough Day 2 Trial Tr. at 396:15-398:14. Mr. Weinstein conceded

that his entire understanding of the rejected Facebook offer was based on his review of the deposition of Bryan Richardson—an independent contractor whom StreamScale holds out as its "Chief Legal Officer" and who served as StreamScale's corporate representative on licensing issues—who testified that he was not personally involved and effectively had no personal knowledge of the details of the rejected offer. *Id*.

Mr. Weinstein further conceded that a rejected offer "does not establish a market rate" and that "[it] doesn't reflect what someone would be willing to pay for the license." *Id*. at 398:8-14.

To the extent Mr. Weinstein referenced a supposed "rule of thumb" StreamScale allegedly had for selling software that did not reflect the claimed invention, such reference does nothing to save his scenario one royalty calculation. Mr. Weinstein admitted that StreamScale's prior sales were for technology that did not reflect the claimed invention, and such sales were for software, not bare patent licenses. StreamScale's "rule of thumb" thus does nothing to support Mr. Weinstein's royalty calculation. More importantly, Mr. Weinstein admitted that his scenario one royalty calculation was actually based on the rejected Facebook offer. *See, e.g.*, Rough Day 2 Trial Tr. at 369:3-20, 395:17-396:14.

Because no reasonable jury could accept Mr. Weinstein's unfounded scenario one analysis based on a highly speculative and unreliable rejected offer, the details of which he knew nothing about, JMOL of no damages should be entered. *See Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1357 (Fed. Cir. 2012) ("The patentee bears the burden of proving damages."); *Whitserve*, 694 F.3d at 29-30; *MLC*, 2019 WL 2716512, at *13-15; *MiiCs*, 2017 WL 6268072, at *4.

**Second**, it is well established that the "[u]se of actual past licenses and negotiations to inform the hypothetical negotiation" requires that "the prior licenses or settlements need to be

7

'sufficiently comparable' for evidentiary purposes and any differences in circumstances must be soundly accounted for." *Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC*, 927 F.3d 1292, 1299 (Fed. Cir. 2019); *see VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1330 (Fed. Cir. 2014) ("We have held that in attempting to establish a reasonable royalty, the 'licenses relied on by the patentee in proving damages [must be] sufficiently comparable to the hypothetical license at issue in suit.'" (quoting *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009))).

Here, however, the rejected offer was not comparable to the present dispute For instance, Mr. Weinstein conflated "drives" in the context of the rejected offer to Facebook with "drives" in his damages calculations concerning Cloudera without any reliable or supported basis for doing so (because he could not, due to his lack of understanding of the details of the rejected offer). Rough Day 2 Trial Tr. at 396:15-398:14. Furthermore, Mr. Weinstein's attempt to tie his theory based on the rejected Facebook offer to StreamScale's purported previous software sales fails as a matter of law. Rough Day 2 Trial Tr. at 369:3-20, 395:17-396:14 (Mr. Weinstein stating that he considered pricing of a previous StreamScale product in determining a royalty rate, but that he only "rel[ies] on the Facebook offer" in his Scenario 1 damages theory). Mr. Weinstein admitted that the previous product did not embody any of the asserted claims. *Id*. at 400:21-401:14 (admitting that "that software did not include the functionality covered in Mr. Anderson's patents").

Therefore, because StreamScale has the burden to establish that the rejected offer to Facebook was sufficiently comparable to the hypothetical negotiation (which it did not meet), and because Mr. Weinstein's damages calculations in scenario one relied only on this offer, as well as inapposite sales of previous, non-patented software, JMOL of no damages should be entered. *See Lucent Techs.*, 580 F.3d at 1329, 1332, 1340 (reversing denial of JMOL in part because damages expert relied on noncomparable licenses); *see also Omega Patents, LLC v. CalAmp Corp.*, 13 F.4th

1361, 1377, 1380-81 (Fed. Cir. 2021) ("The patentee has the burden of proving damages, … and where licenses are at issue, that includes the burden to prove that the licenses were sufficiently comparable …."); *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 77-78 (Fed. Cir. 2012) (ordering new damages trial where noncomparable agreements were erroneously admitted).

> **B.     Cloudera Is Entitled To JMOL Of No Damages Because No Reasonable Juror Could Award Damages Based On Mr. Weinstein's Damages Scenario Two.**

As an alternative, Mr. Weinstein relied on a damages theory that started with the alleged incremental profit earned as between CDH versions without erasure coding and CDH versions with erasure coding. But the trial record conclusively shows that no reasonable jury could accept this methodology as reliable.

**First**, to arrive at a purported price increase of the CDH products of 39.5% per node (between non-accused CDH 5 and accused CDH 6), Mr. Weinstein selected and compared a total of four customer quotes, two prior to 2018 and two after 2018. Rough Day 2 Trial Tr. at 401:18-402:16. Mr. Weinstein simply assumed that the four quotes are representative of the price of CDH versions without erasure coding and CDH versions with erasure coding, without any basis and contrary to the trial evidence. *See id*. He also conceded that if the facts showed that there was no price increase between CDH versions without erasure coding and CDH versions with erasure coding, "then [his] analysis would be called into question"). This is exactly what the only evidence on the issue shows—there was not a price increase between versions of CDH without erasure coding and versions of CDH that had erasure coding as an optional, disabled feature. Rough Day 3 Trial Tr. 184:6-14.

Despite these flaws, Mr. Weinstein relied solely on these four quotes to extrapolate a perceived increase in list price to all CDH customers and across all accused CDH product codes, during the entire damages period. Because Mr. Weinstein's damages calculation depended on this

9

flawed methodology, no reasonable jury may rely on it in awarding damages. *See Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l, Inc.*, 246 F.3d 1336, 1358 (Fed. Cir. 2001) (affirming JMOL on damages theory where expert's methodology was unreliable).

**Second**, Mr. Weinstein's conclusion of an incremental profit between CDH versions without erasure coding and CDH versions with erasure coding is contrary to the evidence which shows that CDH customers who had CDH versions without erasure coding can upgrade to a version with erasure coding at no additional cost. Rough Day 3 Trial Tr. 183:3-6.

**Third**, Mr. Weinstein admitted that he relied entirely on the opinion of StreamScale's technical expert, Dr. Conte, in apportioning damages. Rough Day 2 Trial Tr. at 408:11-409:3. But Dr. Conte's technical apportionment analysis is insufficient on multiple grounds and cannot support any damages award. Dr. Conte assigned an arbitrary value to the features added to the CDH products and attributed 50% of the value of all added features to erasure coding. Dr. Conte did not provide any objective methodology or other basis for the valuation. However, Dr. Ramchandran confirmed that the added features include multiple critical features that are each at least as important as erasure coding and Dr. Conte did not dispute this. *See, e.g.*, Rough Day 3 Trial Tr. at 719:10-728:12. As such, Dr. Conte's technical apportionment analysis is unreliable and unsupported and contrary to the record evidence.

## V. CONCLUSION

For the reasons provided above, the Court should enter judgment as a matter of law in favor of Defendant Cloudera.

Dated:  October 13, 2023          Respectfully submitted,

By:   */s/ Christopher Kao*
Christopher Kao (*admitted*)
  christopher.kao@pillsburylaw.com
Brock S. Weber (*admitted*)
  brock.weber@pillsburylaw.com
**Pillsbury Winthrop Shaw Pittman LLP**
4 Embarcadero Center, 22nd Floor
San Francisco, CA  94111
Telephone:  415.983.1000
Facsimile:  415.983.1200

Steven P. Tepera (TX Bar No. 24053510)
  Steven.tepera@pillsburylaw.com
Benjamin L. Bernell (TX Bar No. 24059451)
  ben.bernell@pillsburylaw.com
**Pillsbury Winthrop Shaw Pittman LLP**
401 Congress Avenue, Suite 1700
Austin, TX  78701-3797
Telephone: 512.580.9600
Facsimile:  512.580.9601

Audrey Lo (*pro hac vice*)
  audrey.lo@pillsburylaw.com
**Pillsbury Winthrop Shaw Pittman LLP**
2550 Hanover Street
Palo Alto, CA  94304
Telephone: 650.233.4500

*Counsel for Defendant Cloudera, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's CM/ECF filing system and/or electronic mail on October 13, 2023.

*/s/ Christopher Kao*

4877-1786-9188