**FILED**

October 13, 2023
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____Jennifer Clark_____
DEPUTY

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| STREAMSCALE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 6:21-cv-00198-ADA |
| | ) | |
| CLOUDERA, INC., | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |

## FINAL JURY INSTRUCTIONS

## TABLE OF CONTENTS

Jury Instruction No. 1: Jury Charge .................................................................................... 1

Jury Instruction No. 2: Evidence ........................................................................................ 3

Jury Instruction No. 3: Witnesses ...................................................................................... 5

Jury Instruction No. 4: Deposition Testimony .................................................................... 6

Jury Instruction No. 5: Expert Testimony ........................................................................... 7

Jury Instruction No. 6: Stipulations of Fact ....................................................................... 8

Jury Instruction No. 7: Limiting Instruction ...................................................................... 9

Jury Instruction No. 8: No Inference from Filing Suit or Defending Suit ........................ 10

Jury Instruction No. 9: Bias—Corporate Parties Involved .............................................. 11

Jury Instruction No. 10: Charts, Summaries, and Demonstrative Exhibits ...................... 12

Jury Instruction No. 11: Burden of Proof ......................................................................... 13

Jury Instruction No. 12: Preponderance of the Evidence ................................................. 14

Jury Instruction No. 13: Clear and Convincing Evidence ................................................ 15

Jury Instruction No. 14: Summary of Contentions ........................................................... 16

Jury Instruction No. 15: Patent Claims ............................................................................ 17

Jury Instruction No. 16: Level of Ordinary Skill ............................................................. 19

Jury Instruction No. 17: Independent and Dependent Claims .......................................... 20

Jury Instruction No. 18: Infringement Generally ............................................................. 21

Jury Instruction No. 19: Direct Infringement—Knowledge of the Patent and Infringement are Immaterial ....................................................................................................................... 23

Jury Instruction No. 20: Direct Infringement ................................................................... 24

Jury Instruction No. 21: Invalidity Generally .................................................................. 25

Jury Instruction No. 22: Prior Art .................................................................................... 26

Jury Instruction No. 23: Obviousness ............................................................................... 27

Jury Instruction No. 24: Damages Overview .................................................................... 30

i

Jury Instruction No. 25: Reasonable Royalty—Definition ............................................................. 31

Jury Instruction No. 26: Reasonable Royalty—Factors to be Considered .................................... 32

Jury Instruction No. 27: Reasonable Royalty—Availability of Acceptable, Non-Infringing
Substitutes ..................................................................................................................................... 35

Jury Instruction No. 28: Reasonable Royalty—Timing ................................................................ 36

Jury Instruction No. 29: Apportionment ....................................................................................... 37

Jury Instruction No. 30: Duty to Deliberate ................................................................................. 38

Jury Instruction No. 31: Social Media Instruction ........................................................................ 40

**Jury Instruction No. 1: Jury Charge**

<u>MEMBERS OF THE JURY:</u>

It is my duty and responsibility to instruct you on the law you are to apply in this case. The law contained in these instructions is the only law you may follow. It is your duty to follow what I instruct you the law is, regardless of any opinion that you might have as to what the law ought to be.

Each of you is going to have your own printed copy of these final jury instructions that I am giving you now, so there is really no need for you to take notes unless you want to.

If I have given you the impression during the trial that I favor either party, you must disregard that impression. If I have given you the impression during the trial that I have an opinion about the facts of this case, you must disregard that impression. You are the sole judges of the facts of this case. Other than my instructions to you on the law, you should disregard anything I may have said or done during the trial in arriving at your verdict.

You should consider all of the instructions about the law as a whole and regard each instruction in light of the others, without isolating a particular statement or paragraph.

The testimony of the witnesses and other exhibits introduced by the parties constitute the evidence. The statements of counsel are not evidence; they are only arguments. It is important for you to distinguish between the arguments of counsel and the evidence on which those arguments rest. What the lawyers say or do is not evidence. You may, however, consider their arguments in light of the evidence that has been admitted and determine whether the evidence admitted in this trial supports the arguments. You must determine the facts from all the testimony that you have heard and the other evidence submitted. You are the judges of the facts, but in finding those facts, you must apply the law as I instruct you.

You are required by law to decide the case in a fair, impartial. and unbiased manner, based entirely on the law and on the evidence presented to you in the courtroom. You may not be influenced by passion, prejudice, or sympathy you might have for StreamScale or Cloudera in arriving at your verdict.

After the remainder of these instructions, you will hear closing arguments from the attorneys. Statements and arguments of the attorneys, I remind you, are not evidence, and they are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

A verdict form has been prepared for you. You are to take this verdict form with you to the jury room; and when you have reached a unanimous decision or agreement as to the verdict, you are to have your foreperson fill in the blanks in the verdict form, date it, and sign it. Answer each question in the verdict form from the facts as you find them to be. Do not decide who you think should win the case and then answer the questions to reach that result. Again, your answers and your verdict must be unanimous.

**Jury Instruction No. 2: Evidence**

The evidence you are to consider consists of the testimony of the witnesses here at trial or at a deposition that has been presented to you, the documents and exhibits that I admitted into evidence, and any facts the lawyers agreed or stipulated to. You are to apply any fair inferences and reasonable conclusions you can draw from the facts and circumstances that you believe have been proven. Nothing else is evidence.

As a reminder, here are some examples of what is not evidence. The fact that StreamScale filed a lawsuit is not evidence that it is entitled to a judgment in its favor. The act of making a claim in a lawsuit, by itself, does not in any way tend to establish that claim and is not evidence. Likewise, the fact that Cloudera has raised arguments against the claims asserted is not evidence that Cloudera is entitled to a judgment in its favor. The act of making defensive arguments, by itself, does not in any way tend to establish that such arguments have merit and is not evidence.

The statements, arguments, and questions by the attorneys are not evidence. Objections to questions are not evidence.

During the trial I may not have let you hear the answers to some of the questions the lawyers asked. I may also have ruled that you could not see some of the exhibits that the lawyers wanted you to see. Further, sometimes I may have ordered you to disregard things that you saw or heard or struck things from the record. You must follow my rulings and completely ignore all of these things. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Generally speaking, there are two types of evidence. One is direct evidence, such as testimony of an eyewitness. The other is indirect or circumstantial evidence. Circumstantial evidence is evidence that proves a fact from which you can logically conclude another fact exists.

As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from all the evidence that you hear in this case, whether, direct, circumstantial. or any combination.

As Judge Gilliland instructed you before the trial began, in judging the facts, you must consider all the evidence, both direct and circumstantial. That does not mean you have to believe all of the evidence. It is entirely up to you to give the evidence you received in this case whatever weight you individually believe it deserves. It will be up to you to decide which witnesses to believe, which witnesses not to believe, the weight you give any testimony you hear, and how much of any witness's testimony you choose to accept or reject.

You should never be influenced by my ruling on any objection. If I sustained an objection, then just pretend the question was never asked. If there was an answer given, ignore it. If I overruled the objection, act like the objection was never made. If I gave you instructions that some item of evidence was received for a limited purpose, you must follow my instruction and consider it only for that limited purpose and for no other. If I gave any limiting instruction during trial, you must follow it. Any testimony I tell you to exclude or disregard is not evidence and may not be considered.

You must not conduct any independent research or investigation. You must make your decision based only on the evidence here, and nothing else.

**Jury Instruction No. 3: Witnesses**

You alone are to determine the questions of credibility or truthfulness of the witnesses. In weighing the testimony of the witnesses, you may consider the witness's manner and demeanor on the witness stand or in presented deposition videos, any feelings or interest in the case, or any prejudice or bias about the case, that he or she may have, and the consistency or inconsistency of his or her testimony considered in the light of the circumstances. Has the witness been contradicted by other credible evidence? Has he or she made statements at other times and places contrary to those made here on the witness stand? You must give the testimony of each witness the credibility that you think it deserves.

You are not to decide this case by counting the number of witnesses who have testified on the opposing sides. Witness testimony is weighed; witnesses are not counted. The test is not the relative number of witnesses, but the relative convincing force of the evidence. The testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses testified to the contrary, if after considering all of the other evidence, you believe that witness.

In determining the weight to give to the testimony of a witness, consider whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony given by that witness at trial.

A simple mistake by a witness does not necessarily mean that the witness did not tell the truth as he or she remembers it. People may forget some things or remember other things inaccurately. If a witness made a misstatement, consider whether that misstatement was an intentional falsehood or simply an innocent mistake. The significance of that may depend on whether it has to do with an important fact or with only a less important detail. That being said, it is exclusively in your province to believe every word that any witness says, or to disregard anything they say or do, because you all are the exclusive judges of the facts in this case.

**Jury Instruction No. 4: Deposition Testimony**

Certain testimony has been presented to you through a deposition. A deposition is the sworn, recorded answers to questions a witness was asked in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness's testimony may be presented, under oath, in the form of a deposition. Sometime before this trial, attorneys representing the parties in this case questioned this witness under oath. A court reporter was present and recorded the testimony. The recorded video of depositions has been shown to you. You should weigh and consider deposition testimony in the same way as if the witness had been present and had testified from the witness stand in court.

**Jury Instruction No. 5: Expert Testimony**

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business. This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness.

Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case. You are not required to accept the opinion of any expert, rather, you are free to accept or reject the testimony of experts, just as with any other witness.

**Jury Instruction No. 6: Stipulations of Fact**

A "stipulation'" is an agreement. When there is no dispute about certain facts, the parties may agree or "stipulate" to those facts. You must accept any stipulated facts introduced into evidence during this trial, and you must treat that stipulated fact as if it has been proven here in court.

**Jury Instruction No. 7: Limiting Instruction**

When testimony or an exhibit is admitted for a limited purpose, you may consider that testimony or exhibit only for the specific limited purpose for which it was admitted.

**Jury Instruction No. 8: No Inference from Filing Suit or Defending Suit**

The fact that StreamScale filed a lawsuit or that Cloudera raised defenses is not evidence that either is entitled to a judgment. Anyone may make a claim, file a lawsuit, or raise a defense. The act of making a claim or raising a defense in a lawsuit, by itself, does not in any way tend to establish that claim or defense and is not evidence.

**Jury Instruction No. 9: Bias—Corporate Parties Involved**

Both StreamScale and Cloudera are corporations. A corporation and all other persons are equal before the law and must be treated as equals in a court of justice. Do not let bias, prejudice, or sympathy play any part in your deliberations.

**Jury Instruction No. 10: Charts, Summaries, and Demonstrative Exhibits**

You should determine the facts in this case solely from the properly admitted evidence.

Certain charts and summaries have been shown to you solely to help explain or summarize the facts disclosed by the books, records, and other documents that are in evidence. These charts and summaries are not evidence or proof of any facts unless I specifically admitted a chart or summary into evidence as an exhibit.

Similarly, certain "demonstrative" exhibits shown to you, such as PowerPoint presentations, posters, or models, are illustrations of the evidence, but are not themselves evidence. Any such demonstrative exhibit is merely a party's description, picture, or model that is used to describe or demonstrate other evidence that has been properly admitted into evidence during this trial. If your recollection of the admitted evidence differs from a demonstrative exhibit, rely on your recollection.

You should consider charts, summaries, or demonstrative evidence if they assist you in understanding the evidence that has been properly admitted during trial; but your decision on the facts of this case should rest solely on the properly admitted evidence itself.

**Jury Instruction No. 11: Burden of Proof**

In any legal action, facts must be proven by a required amount of evidence known as the "burden of proof." This case involves two different burdens of proof, "preponderance of the evidence" and "clear and convincing evidence." I will provide additional instructions regarding each of these burdens of proof.

**Jury Instruction No. 12: Preponderance of the Evidence**

The burden of proof applicable to StreamScale's claims in this case is known as the preponderance of evidence. StreamScale has the burden of proving patent infringement and damages from any infringement by a preponderance of the evidence.

A preponderance of the evidence means evidence that persuades you that a claim is more probably true than not true. Sometimes this is talked about as being the greater weight and degree of credible testimony.

**Jury Instruction No. 13: Clear and Convincing Evidence**

Cloudera has the burden of proving patent invalidity by clear and convincing evidence. Because patents issued by the United States Patent and Trademark Office are presumed valid, Cloudera has the burden of proving patent invalidity by clear and convincing evidence.

Clear and convincing evidence is evidence that produces in your mind a firm belief or conviction as to the truth of the matter sought to be established. It is evidence so clear, direct, weighty and convincing as to enable you to come to a clear conviction without hesitancy.

The "clear and convincing evidence" standard is different from what you may have heard about in criminal proceedings, where a fact must be proven beyond a reasonable doubt. On a scale of the various standards of proof, as you move from preponderance of the evidence, where proof need be only sufficient to tip the scales in favor of the party proving the fact, to at the other end, beyond a reasonable doubt, where the fact must be proven to a very high degree of certainty, you can think of clear and convincing evidence as being between these two standards.

**Jury Instruction No. 14: Summary of Contentions**

As Judge Gilliland did at the start of the case, I will give you a summary of each side's contentions in this case. I will then provide you with detailed instructions on what each side must prove to win on each of its contentions.

StreamScale seeks money damages from Cloudera for allegedly infringing the '296, '759, and '259 patents by making, using, importing, selling, and offering for sale products in the United States that contain accelerated erasure coding. Specifically, StreamScale contends that Cloudera's CDH 6.0 and later software infringes claims 34–35 of the '296 patent, claim 1 of the '759 patent, and claim 12 of the '259 patent. These are known as the "Asserted Claims."

Cloudera denies that it has infringed the Asserted Claims. Cloudera also argues that the Asserted Claims are invalid. StreamScale denies that the Asserted Claims are invalid.

Your job will be to decide, on a claim-by-claim basis, whether StreamScale has met its burden to prove that Cloudera has infringed each Asserted Claim, and whether Cloudera has met its burden to show that each Asserted Claim is invalid. If you decide that any one or more Asserted Claim has been infringed and is not invalid, you will then need to decide the amount of damages to be awarded to StreamScale to compensate it for the infringement.

**Jury Instruction No. 15: Patent Claims**

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims."

The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. Each claim is effectively treated as if it were its own separate patent, and each claim may cover more or less than any other claim. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the patent's coverage. Therefore, what a patent covers depends, in turn, on what each of its claims covers.

To know what a claim covers, a claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. The requirements of a claim are often referred to as "claim elements" or "claim limitations." The coverage of a patent is assessed claim-by-claim. When a thing (such as a product) meets all of the requirements of a claim, the claim is said to "cover" that product, and that product is said to "fall" within the scope of that claim. In other words, a claim covers a product where each of the claim elements or limitations is present in that product. If a product is missing even one limitation of a claim, the product is not covered by that claim, and it therefore does not infringe that claim.

You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid. The first step is to understand the meaning of the words used in the patent claim.

The law says that it is my role to define the terms of the claims and it is your role to apply my definitions of the terms I have construed to the issues that you are asked to decide in this case. Therefore, as I explained to you at the start of the case, I have determined the meaning of certain claim terms and I have provided to you my definitions of certain claim terms. You must accept my

definitions of these words in the claims as being correct. It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and validity. You should not take my definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide. These issues are yours to decide.

The beginning portion of a claim, also known as the preamble, often uses the word "comprising." The word "comprising," when used in the preamble, means "including but not limited to" or "containing but not limited to." When "comprising" is used in the preamble of a claim, if you decide that an accused product includes all of the requirements of that claim, the claim is infringed. This is true even if the accused product contains additional elements. For example, a claim to "a table comprising a tabletop, legs, and glue" would cover a table that includes a tabletop, legs, and glue, even if the table also includes wheels on the table's legs.

The use of the terms "a" or "an" in a claim is a term of art, which has a special meaning in the context of a patent claim. When used in a claim, the terms "a" or "an" mean "one or more."

For any words in the claim for which I have not provided you with a definition, you should apply the plain and ordinary meaning of those terms as understood by a person of ordinary skill in the art, which is to say, in the field of technology of the patent at the time of the invention.

My claim constructions are as follows:

| Claim Term | Construction |
|---|---|
| "main memory" | Plain-and-ordinary meaning wherein the plain-and-ordinary meaning is "the memory between the last-level cache and non-volatile storage medium (e.g., HDD, etc.)." |
| "thread" / "threads" | Plain-and-ordinary meaning |

**Jury Instruction No. 16: Level of Ordinary Skill**

In deciding what the level of ordinary skill in the field of invention is, you should consider all the evidence introduced at trial, including but not limited to: (1) the educational level of the inventor; (2) the type of problems encountered in the art; (3) prior art solutions to those problems; (4) the rapidity with which innovations are made; (5) the sophistication of the technology; and (6) the education level of active workers in the field.

**Jury Instruction No. 17: Independent and Dependent Claims**

This case involves two types of patent claims: independent claims and dependent claims.

An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers. A product that meets all of the requirements of the independent claim is covered by that independent claim. In this case, claim 34 of the '296 patent, claim 1 of the '759 patent, and claim 12 of the '259 patent are independent claims.

The remainder of the Asserted Claims are "dependent claims." A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements. In this way, the claim "depends" on another claim. A dependent claim incorporates all of the requirements of the claim(s) to which it refers. The dependent claim then adds its own additional requirements.

To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim(s) to which it refers. A product that meets all of the requirements of both the dependent claim and the claim(s) to which it refers is covered by that dependent claim.

**Jury Instruction No. 18: Infringement Generally**

I will now instruct you how to decide whether StreamScale has proven by a preponderance of the evidence that Cloudera has infringed any of the Asserted Claims.

Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but no infringement as to another. If, as here, a patent owner asserts multiple patent claims against the same product, then you must compare each claim separately against the product to determine whether the product infringes that individual patent claim.

A patent owner has the right to prevent others from making, using, selling or offering to sell the invention covered by the patent claims in the United States during the life of the patent. If any person makes, uses, sells or offers to sell within the United States or imports into the United States what is covered by the patent claims without the patent owner's permission, that person is said to infringe the patent.

In reaching your decision on infringement, keep in mind that only the claims of a patent can be infringed. You must compare the Asserted Claims, as I have defined each of them, to the accused product, and determine whether there is infringement. You should not compare the accused product with any specific example set out in the patent or with the prior art in reaching your decision on the issue of infringement. The only correct comparison is with the language of a claim itself, as I have explained its meaning to you. You must reach your decision as to each assertion of infringement based on my instructions about the meaning and scope of the claims, the legal requirements for infringement, and the evidence presented to you by the parties.

You must determine, separately for each Asserted Claim, whether or not there is infringement. For dependent claims, if you find that a claim to which a dependent claim refers is not infringed, there cannot be infringement of that dependent claim. On the other hand, if you find that an independent claim has been infringed, you must still decide, separately, whether the

accused product meets the additional requirement(s) of any claims that depend from the independent claim to determine whether those dependent claims also have been infringed. That is because a dependent claim includes all the requirements of any of the claims to which it refers plus the additional requirement(s) of its own. If any requirement of a dependent claim is not met, or if any requirement of a claim from which the dependent claim depends is not met, then the accused product does not infringe that dependent claim.

**Jury Instruction No. 19: Direct Infringement—Knowledge of the Patent and Infringement are Immaterial**

In this case, StreamScale asserts that Cloudera has directly infringed the Asserted Patents. You must compare the accused product with each and every one of the requirements of a claim to determine whether all of the requirements of that claim are met. A party can directly infringe a patent without knowing of the patent or without knowing that what the party is doing is patent infringement. There is no intent element to direct infringement.

**Jury Instruction No. 20: Direct Infringement**

In order to prove direct infringement, StreamScale must prove by a preponderance of the evidence, i.e., that it is more likely than not, that Cloudera made, used, sold, or offered for sale within the United States, or imported into the United States, a product that meets all of the requirements of a claim and did so without the permission of StreamScale. You must compare the product with each and every one of the requirements of a claim to determine whether all of the requirements of that claim are met.

A claim element is present if it exists in an Accused Product as it is described in the claim language. If an Accused Product omits any requirement recited in one of the asserted claims, then that product does not infringe that claim.

You must determine, separately for each asserted claim, whether or not there is infringement. For dependent claims, if you find that a claim to which a dependent claim refers is not infringed, there cannot be infringement of that dependent claim. On the other hand, if you find that an independent claim has been infringed, you must still decide, separately, whether the product or process meets the additional requirement(s) of any claims that depend from the independent claim to determine whether those dependent claims have also been infringed. A dependent claim includes all the requirements of any of the claims to which it refers plus additional requirement(s) of its own.

**Jury Instruction No. 21: Invalidity Generally**

I will now instruct you on the rules you must follow in determining whether Cloudera has proven the affirmative defense of patent invalidity.

A patent is presumed to be valid. In other words, it is presumed the United States Patent and Trademark Office properly granted the patent. But that presumption of validity can be overcome if clear and convincing evidence is presented in court that proves any claim of a patent is invalid. As with infringement, invalidity is assessed on a claim-by-claim basis.

I will now instruct you on the invalidity issues you should consider.

**Jury Instruction No. 22: Prior Art**

In order for someone to be entitled to a patent, the claimed invention must actually be not obvious over what came before, which is referred to as the "prior art." Prior art is considered in determining whether the asserted claims of the Asserted Patents are obvious.

Prior art may include items that were publicly known or that have been used or offered for sale, or references, such as publications or patents, that disclose the claimed invention or elements of the claimed invention.

Cloudera contends that the following is prior art to the Asserted Patents:

- U.S. Patent No. 7,343,389, titled "Apparatus and Method for SIMD Modular Multiplication," which was filed May 2, 2002 and issued on March 11, 2008 and which lists Macy as the lead inventor (referred to as "Macy"); and

- The paper titled "A Tutorial on Reed-Solomon Coding for Fault-Tolerance in RAID-like Systems" authored by Professor James Plank in September 1997 (referred to as "Plank").

**Jury Instruction No. 23: Obviousness**

Even though an invention may not have been identically disclosed or described in a single prior art reference before the priority date of the claimed invention, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent at the time of the priority date of the claimed invention.

Cloudera may establish that an Asserted Claim is invalid by proving, by clear and convincing evidence, that the claimed invention would have been obvious to persons having ordinary skill in the art at the time the invention was made. Specifically, Cloudera contends that the combination of various references renders obvious the Asserted Claims.

In determining whether a claimed invention is obvious, you must consider (1) the level of ordinary skill in the field of the Asserted Patents that someone would have had at the time of the priority date of the claimed invention, (2) the scope and content of the prior art, (3) any differences between the prior art and the claimed invention, and, (4) any so-called objective evidence or secondary considerations of non-obviousness, which I will describe shortly. Do not use hindsight; consider only what was known at the time of the invention.

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building blocks of prior art.

In considering whether a claimed invention is obvious, you should consider whether, at the time as of the priority date of the claimed invention, there was a reason that would have prompted a person having ordinary skill in the field of the invention to combine the known elements in the prior art in a way the claimed invention does, taking into account such factors as:

(1) whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s);

(2) whether the claimed invention provides an obvious solution to a known problem in the relevant field;

(3) whether the prior art teaches or suggests the desirability of combining elements claimed in the invention;

(4) whether the prior art teaches away from combining elements in the claimed invention; and

(5) whether it would have been obvious to try the combinations of elements, such as when there is a design incentive or market pressure to solve a problem and there are a finite number of identified, predictable solutions.

To find it rendered the claimed invention obvious, you must find that the prior art provided a reasonable expectation of success. Obvious to try is not sufficient in unpredictable technologies. It is improper to combine separate references unless Cloudera proves motivation to combine and expectation of success.

In determining whether the claimed invention is obvious, you should take into account any objective evidence (sometimes called "secondary considerations") that may shed light on whether or not the claimed invention is obvious, such as:

a. Whether the claimed invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure advertising or similar activities).

b. Whether the claimed invention satisfied a long-felt need;

c. Whether others had tried and failed to make the claimed invention;

d. Whether others invented the claimed invention at roughly the same time;

e. Whether others copied the claimed invention;

f. Whether there were changes or related technologies or market needs contemporaneous with the claimed invention;

g. Whether the claimed invention achieved unexpected results;

h. Whether others in the field praised the claimed invention;

i. Whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the claimed invention;

j. Whether others sought or obtained rights to the patent from the patent holder; and

k. Whether the inventor proceeded contrary to accepted wisdom in the field.

You should consider these factors along with all the other evidence in the case in deciding whether Cloudera has proven that the Asserted Claims would have been obvious.

In determining whether the claimed invention was obvious, consider each claim separately, but understand that if a dependent claim is obvious, then the claims from which it depends are necessarily obvious as well.

**Jury Instruction No. 24: Damages Overview**

If you find that Cloudera infringed an Asserted Claim, and that the claim is not invalid, you must determine the amount of damages to be awarded to StreamScale for the infringement.

I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case, on any issue. If you find that Cloudera has not infringed any valid claim of an Asserted Patent, then StreamScale is not entitled to any damages.

If you find that StreamScale is entitled to damages, the amount of damages must be adequate to compensate StreamScale for the infringement. Damages are not meant to punish an infringer.

StreamScale has the burden to establish the amount of its damages by a preponderance of the evidence. While StreamScale is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty. You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

In this case, StreamScale seeks a reasonable royalty. A reasonable royalty is defined as the money amount StreamScale and Cloudera would have agreed upon as a fee for use of the invention at the time just prior to when infringement began. You must be careful to ensure that award is no more and no less than the value of the patented invention.

The number of patents that StreamScale holds is not relevant to damages. You may award the same amount of damages if one patent is infringed as if three patents are infringed.

I will give more detailed instructions regarding damages shortly. Note, however, that StreamScale is entitled to recover no less than a reasonable royalty.

**Jury Instruction No. 25: Reasonable Royalty—Definition**

A royalty is a payment made to a patent holder in exchange for the right to make, use, offer to sell, sell, or import the claimed invention. A reasonable royalty is the amount of royalty payment that a patent holder and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time just prior to when the infringement first began.

In considering this hypothetical negotiation, you should focus on what the expectations of StreamScale and Cloudera would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed the patents were valid and infringed and that both parties were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred. Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation just prior to the first infringement.

**Jury Instruction No. 26: Reasonable Royalty—Factors to be Considered**

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are:

(1) The value that the claimed invention contributes to the accused product.

(2) The value that factors other than the claimed invention contributes to the accused product.

(3) Comparable license agreements or other transactions, such as those covering the use of the claimed invention or similar technology.

The so-called "*Georgia-Pacific*" factors, which can be considered to inform the hypothetical negotiation, include the following:

(1) The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

(2) The rates paid by the licensee for the use of other patents comparable to the patents-in-suit.

(3) The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

(4) The licensor's established policy and marketing program to maintain its patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

(5) The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(6) The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of its non-patented items, and the extent of such derivative or convoyed sales.

(7) The duration of the patent and the term of the license.

(8) The established profitability of the product made under the patents, its commercial success, and its current popularity.

(9) The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(10) The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

(11) The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

(12) The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

(13) The portion of the realizable profits that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

(14) The opinion and testimony of qualified experts.

(15) The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able

to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive, and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty the alleged infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.

**Jury Instruction No. 27: Reasonable Royalty—Availability of Acceptable, Non-Infringing Substitutes**

In determining a reasonable royalty, you may also consider evidence concerning the availability and cost of acceptable non-infringing substitutes to the patented invention. An acceptable substitute must be a product that does not infringe the patent.

**Jury Instruction No. 28: Reasonable Royalty—Timing**

Damages are not based on a hindsight evaluation of what happened, but on what the parties to the hypothetical license negotiations would have agreed upon. Nevertheless, evidence relevant to the negotiation is not necessarily limited to facts that occurred on or before the date of the hypothetical negotiation. You may also consider information the parties would have foreseen or estimated during the hypothetical negotiation, which may under certain circumstances include evidence of Cloudera's usage after infringement started, license agreements entered into by the parties shortly after the date of the hypothetical negotiation, profits earned by the infringer, and the availability of acceptable, non-infringing alternatives.

**Jury Instruction No. 29: Apportionment**

A product may have more than one component or feature, and some of those components and features may be covered by the Asserted Claims, while other components and features may not. Any amount of damages must be based on the value attributable to the patented invention, as distinct from unclaimed features of the accused product or other factors such as marketing or advertising or Cloudera's size or market position.

A royalty compensating StreamScale for damages must reflect only the value attributable to the infringing features of the product, and no more. The process of separating the value of the allegedly infringing features from the value of all other features is called apportionment.

When the accused infringing products have both patented and unpatented features, your award must be apportioned so that it is based only on the value of the patented features, and no more.

**Jury Instruction No. 30: Duty to Deliberate**

You are about to hear closing arguments of the parties, after which it will be your duty to deliberate and to consult with one another in an effort to reach a verdict. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to reexamine your own opinions and change your mind if you are convinced that you were wrong. But do not give up on your honest beliefs because the other jurors think differently, or just to finish the case.

Remember at all times, you are the judges of the facts. You have been allowed to take notes during this trial. Any notes that you took during this trial are only aids to memory. If your memory differs from your notes, you should rely on your memory and not on the notes. The notes are not evidence. If you did not take notes, rely on your independent recollection of the evidence and do not be unduly influenced by the notes of other jurors. Notes are not entitled to greater weight than the recollection or impression of each juror about the testimony.

When you go into the jury room to deliberate, you may take with you a copy of this charge, the exhibits that I have admitted into evidence, and your notes. You must select a jury foreperson to guide you in your deliberations and to speak for you here in the courtroom.

Your verdict must be unanimous. After you have reached a unanimous verdict, your jury foreperson must fill out the answers to the written questions on the verdict form and sign and date it. Answer each question in the verdict form from the facts as you find them. Do not decide who you think should win and then answer the questions to reach that result. After you have concluded your service and I have discharged the jury, you are not required to talk with anyone about the case.

If you need to communicate with me during your deliberations, the jury foreperson should write the inquiry and give it to the court security officer. After consulting with the attorneys, I will

respond either in writing or by meeting with you in the courtroom. Keep in mind, however, that you must never disclose to anyone, not even to me, your numerical division on any question.

**Jury Instruction No. 31: Social Media Instruction**

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as the telephone, a cell phone, smartphone, tablet or computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog social media platform or website such as Facebook, LinkedIn, YouTube, Snapchat, WhatsApp, Instagram, Threads, TikTok, Twitter or any other way to communicate. You may not communicate to anyone any information about this case or to conduct any research about this case until this case is over and I accept your verdict.

In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can only discuss the case in the jury room with your fellow jurors during deliberations.