**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| STREAMSCALE, INC., | Civil Action No. 6:21-cv-00198 ADA |
| Plaintiff, | |
| v. | |
| CLOUDERA, INC., | |
| Defendant. | |

**DEFENDANT'S RULE 50(B) MOTION FOR JUDGMENT AS A MATTER OF LAW**

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...................................................................................................... 1

II. LEGAL STANDARD ............................................................................................... 1

III. CLOUDERA IS ENTITLED TO A JUDGMENT OF NON-INFRINGEMENT. ............. 1

    A.  StreamScale Failed To Prove That The Accused Products Have The Hardware Or Computer Readable Medium Elements That The Claims Plainly Require ...................................................................................... 3

    1.  The Accused CDH Software Does Not Have Multiple Hardware Elements As Required By The '759 and '259 Patents ............................................ 3

    2.  The Accused CDH Software Does Not Have Multiple Hardware Elements As Required By The '296 Patent. ................................................ 4

    3.  The Accused CDH Software, When Provided To Customers, Is Not Stored In A "Non-Transitory Storage Medium" As Required By the '296 Patent. ................. 6

    B.  Properly Construed, The Accused Products, As Provided to Customers, | Are Not "Configured to" Perform Error Correction. ................................. 7

    C.  There Is No Evidence Of Infringement By "Offering To Sell" Or "Importing". .......................................................................................... 9

    D.  There Is No Evidence Of Infringement By "Using" Because StreamScale Failed To Make Any Comparisons Of Specific Testing Configurations To All Elements Of Any One Of The Asserted Claims. ............................... 10

    E.  There Is No Evidence Of Infringement By "Using" Because Cloudera Does Not Control Or Direct The Making Or Use Of The Asserted Claims By Customers. ............................................................................................ 11

    F.  Cloudera Is Entitled To Judgment On The Doctrine Of Equivalents. ................. 12

IV. CLOUDERA IS ENTITLED TO JUDGMENT OF INVALIDITY ............................... 12

V.  CLOUDERA IS ENTITLED TO JUDGMENT OF NO DAMAGES. ........................... 15

    A.  Cloudera Is Entitled To Judgment Of No Damages Because No Reasonable Juror Could Award Damages Based On Mr. Weinstein's Damages Analysis. .... 15

    B.  Cloudera Is Entitled To Judgment Of No Damages Because No Reasonable Juror Could Award Damages Based On Mr. Weinstein's Alternative Model...... 16

4861-9301-4418

C.    StreamScale Failed to Offer Evidence To Support Damages Based On Any Purported Internal Use. .................................................................................. 17

VI.    CONCLUSION .................................................................................................... 20

4861-9301-4418

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acceleration Bay LLC v. 2K Sports*,
   15 F.4th 1069 (Fed. Cir. 2021) ................................................................................ 4

*Acceleration Bay LLC v. Activision Blizzard, Inc.*,
   324 F. Supp. 3d 470 (D. Del. 2018) ................................................................ 4, 10, 11

*AOS Holding Company v. Bradford White Corporation*,
   2021 WL 5411103 (D. Del. Mar. 31, 2021) .......................................................... 20

*Bicon, Inc. v. Straumann Co.*,
   441 F.3d 945 (Fed. Cir. 2006) .................................................................................. 4

*Boston Scientific SciMed Inc. v. Iancu*,
   811 F. App'x 618 (Fed. Cir. 2020) .......................................................................... 15

*Catalina Mktg. Int'l v. Coolsavings.com*,
   289 F.3d 801 (Fed. Cir. 2002) ............................................................................... 4, 5

*Centillion Data Sys., LLC v. Qwest Comm'ns*,
   631 F.3d 1279 (Fed. Cir. 2011) ..................................................................... 4, 11, 12

*Cirba Inc. v. VMware, Inc.*,
   2023 WL 3151853 (D. Del. Apr. 18, 2023) ............................................................ 20

*Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l, Inc.*,
   246 F.3d 1336 (Fed. Cir. 2001) .............................................................................. 17

*CyberSource Corp. v. Retail Decisions, Inc.*,
   654 F.3d 1366 (Fed. Cir. 2011) ................................................................................ 6

*De La Vega v. Microsoft Corp.*,
   No. W-19-CV-00612-ADA, 2020 WL 3528411 (W.D. Tex. Feb. 11, 2020) .......................... 18

*East Coast Sheet Metal Fabricating Corp. v. Autodesk, Inc.*,
   No. 12-CV-517-LM, 2015 WL 226084 (D.N.H. Jan. 15, 2015), *amended in part*,
   No. 12-CV-517-LM, 2015 WL 925614 (D.N.H. Mar. 3, 2015), and *aff'd*,
   645 F. App'x 992 (Fed. Cir. 2016) ........................................................................ 6, 7

*Eaton Corp. v. Rockwell Int'l Corp.*,
   323 F.3d 1332 (Fed. Cir. 2003) .............................................................................. 4, 5

*Finjan, Inc. v. Qualys Inc.*,
   No. 4:18-cv-07229-YGR, 2020 U.S. Dist. LEXIS 228385 (N.D. Cal. Dec. 4, 2020) ............... 6

4861-9301-4418

*Huawei Techs. Co. v. Verizon Commc'ns, Inc.*,
  No. 2:20-CV-00030-JRG, 2021 WL 150442 (E.D. Tex. Jan. 15, 2021) ................................... 8

*Infernal Tech. LLC v. Activision Blizzard Inc.*,
  No. 3:18-CV-01397-M, 2021 WL 4391250 (N.D. Tex. Sept. 16, 2021), *aff'd*,
  No. 2021-2349, 2023 WL 370602 (Fed. Cir. Jan. 24, 2023)................................................... 19

*Interwoven, Inc. v. Vertical Comput. Sys.*,
  No. CV 10-04645 RS, 2014 WL 490996 (N.D. Cal. Feb. 3, 2014)......................................... 20

*Microprocessor Enhancement Corp. v. Texas Instruments Inc.*,
  520 F.3d 1367 (Fed. Cir. 2008)................................................................................................. 5

*Mirror Worlds, LLC v. Apple Inc.*,
  784 F. Supp. 2d 703 (E.D. Tex. 2011), *aff'd* 692 F.3d 1351 (Fed. Cir. 2012) ......................... 1

*Nazomi Communs., Inc. v. Nokia Corp.*,
  739 F.3d 1339 (Fed. Cir. 2014)................................................................................................. 8

*Nevro Corp. v. Bos. Sci. Corp.*,
  955 F.3d 35 (Fed. Cir. 2020).................................................................................................... 8

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
  521 F.3d 1351 (Fed. Cir. 2008)................................................................................................. 8

*Olaf Sööt Design, LLC v. Daktronics, Inc.*,
  839 F. App'x 505 (Fed. Cir. 2021) ........................................................................................... 8

*OneBeacon Ins. Co. v. T. Wade Welch & Assocs.*,
  841 F.3d 669 (5th Cir. 2016) ................................................................................................... 1

*Packet Intelligence LLC v. NetScout Sys., Inc.*,
  965 F.3d 1299 (Fed. Cir. 2020)............................................................................................... 18

*ResQNet.com, Inc. v. Lansa, Inc.*,
  594 F.3d 860 (Fed. Cir. 2010)................................................................................................. 17

*Retractable Techs., Inc. v. Becton Dickinson & Co.*,
  842 F.3d 883 (5th Cir. 2016) ................................................................................................... 1

*Ricoh Co., Ltd. v. Quanta Computer Inc.*,
  550 F.3d 1325 (Fed. Cir. 2008).......................................................................................... 10, 11

*Salazar v. HTC Corp.*, No. 216CV01096JRGRSP, 2018 WL 4242416 (E.D. Tex. May 1, 2018) 8

*Sapphire Crossing LLC v. Abbyy USA Software House, Inc.*,
  2020 WL 6318716 (N.D. Cal. 2020) ....................................................................................... 18

4861-9301-4418

*Seachange Int'l, Inc. v. C-COR, Inc.*,
 413 F.3d 1361 (Fed. Cir. 2005)..............................................................................4, 5

*Senju Pharm. Co. v. Lupin Ltd.*,
 780 F.3d 1337 (Fed. Cir. 2015).................................................................................12

*SIMO Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*,
 983 F.3d 1367 (Fed. Cir. 2021)....................................................................................5

*Synchronoss Technologies, Inc. v. Dropbox, Inc.*,
 987 F.3d 1358 (Fed. Cir. 2021)....................................................................................4

*TecSec, Inc. v. Adobe Inc.*,
 978 F.3d 1278 (Fed. Cir. 2020)..................................................................18, 19, 20

*Tex. Instruments Inc. v. Cypress Semiconductor Corp.*,
 90 F.3d 1558 (Fed. Cir. 1996)......................................................................................1

*Typhoon Touch Techs. v. Dell, Inc.*,
 659 F.3d 1376 (Fed. Cir. 2011)....................................................................................8

*Uniloc USA, Inc. v. Microsoft Corp.*,
 632 F.3d 1292 (Fed. Cir. 2011)..................................................................................17

*Vocalife LLC v. Amazon.com, Inc.*,
 No. 2:19-CV-00123-JRG, 2020 WL 5815950 (E.D. Tex. Sept. 30, 2020) .............18

*Wapp Tech Limited P'ship v. Seatle Spinco, Inc.*,
 No. 4:18-CV-469, 2020 WL 1983087 (E.D. Tex. 2020)............................................8

*Whitserve, LLC v. Comput. Packages, Inc.*,
 694 F.3d 10 (Fed. Cir. 2012)......................................................................................16

## <u>Rules</u>

Fed. R. Civ. P. 50(b) ......................................................................................................1

4861-9301-4418

## I.      INTRODUCTION

Following a four-day trial, a jury found that Cloudera directly infringed Claims 34 and 35 of U.S. Patent No. 8,683,296 ("the '296 Patent"), Claim 1 of U.S. Patent No. 9,385,759 ("the '759 Patent"), and Claim 12 of U.S. Patent No. 10,291,259 ("the '259 Patent") (together, the "Asserted Claims"), and that Cloudera had not met its burden to prove those claims invalid, and awarded StreamScale damages of $240,000,000. Dkt. No. 340. As explained below, however, the jury's verdicts on infringement and validity, as well as the amount of damages it awarded, were contrary to the law and not supported by substantial evidence. Therefore, pursuant to Fed. R. Civ. P. 50(b), Cloudera requests that the Court enter judgment as a matter of law ("JMOL") of non-infringement, invalidity and no damages. *See Mirror Worlds, LLC v. Apple Inc.*, 784 F. Supp. 2d 703, 710 (E.D. Tex. 2011) (JMOL "appropriate when 'a reasonable jury would not have a legally sufficient evidentiary basis to find for the [non-moving] party on that issue'"), *aff'd* 692 F.3d 1351 (Fed. Cir. 2012); *Retractable Techs., Inc. v. Becton Dickinson & Co.*, 842 F.3d 883, 891 (5th Cir. 2016).[1]

## II.     LEGAL STANDARD

"Judgment as a matter of law against a party is appropriate when 'a party has been fully heard on an issue' 'and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.'" *Tex. Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1563 (Fed. Cir. 1996). Rule 50 warrants judgment when "the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion." *OneBeacon Ins. Co. v. T. Wade Welch & Assocs.*, 841 F.3d 669, 675 (5th Cir. 2016).

## III.    CLOUDERA IS ENTITLED TO A JUDGMENT OF NON-INFRINGEMENT.

StreamScale pleaded only direct infringement by Cloudera—not induced or contributory

---

[1] Cloudera is concurrently filing a Motion for a New Trial under Rule 59 ("Rule 59 Motion").

infringement, and the Final Judgment found only direct infringement. Dkt. 67 at ¶¶112, 115, 134, 137, 154, 157, 194, 197, 214, 217; Dkt. 349. Thus, StreamScale was required to prove that Cloudera <u>itself</u> directly infringes the Asserted Claims. But based on the trial record, StreamScale failed to present evidence that Cloudera infringes any Asserted Claim by making, selling, offering for sale, or using the accused CDH software.

All of the Asserted Claims require specific configurations of software <u>and</u> hardware elements. However, Cloudera does not "make," "sell," or "offer to sell" an infringing system for at least two independent reasons. **First**, the Asserted Claims of the system patents require both software and hardware, or software on a computer readable medium in the case of the '296 Patent. Cloudera <u>undisputedly</u> does not make, sell, or offer to sell hardware. Cloudera also distributes its software via download, *i.e.*, Cloudera does not make, sell or offer to sell any non-transitory computer readable medium like a disc, as required by the '296 Patent. **<u>Second</u>**, the required configuration recited in the Asserted Claims can exist only after the customer has installed the software and changed the default configuration set by Cloudera—the accused CDH software, when provided to customers, is not configured to perform the claimed erasure coding.

Recognizing these fatal flaws in its case, StreamScale presented a new theory at trial that Cloudera internally <u>used</u> the CDH software on its own hardware for testing. As an initial matter, this new theory was not disclosed in the operative Complaint (Dkt. 67), StreamScale's Infringement Contentions, or StreamScale's expert report on infringement, and should not have been presented to the jury and cannot form a basis for the verdict, as Cloudera objected at the Pre-Trial Conference (Dkt. 298 at 103:13-105:8) and at trial (Trial Tr. at 111:7-16). In any event, StreamScale's purported testing evidence shows, at most, that some internal testing was performed. <u>StreamScale made no effort to show how configurations used for internal testing satisfied all</u>

elements of any Asserted Claim. Thus, StreamScale's direct infringement theory that Cloudera is

liable for "using" the claimed invention through internal testing or making is also legally deficient.

### A. StreamScale Failed To Prove That The Accused Products Have The Hardware Or Computer Readable Medium Elements That The Claims Plainly Require.

#### 1. The Accused CDH Software Does Not Have Multiple Hardware Elements As Required By The '759 and '259 Patents.

The Asserted Claims of the '759 and '259 Patents recite a "system" with software and

hardware components. Specifically, these Asserted Claims require the following hardware:

| Independent Claim | Hardware Components |
|---|---|
| '759 Patent, Claim 1 | • "processing core"<br>• "one or more non-volatile storage media for storing the computer instructions and the data"<br>• "an input/output (I/O) controller" |
| '259 Patent, Claim 12 | • "at least one processor"<br>• "at least one system drive comprising at least one non-volatile storage medium"<br>• "a plurality of data drives"<br>• "more than two check drives"<br>• "at least one first input/output (I/O) controller"<br>• "at least one second input/output (I/O) controller" |

StreamScale introduced no evidence that Cloudera makes, sells, offers for sale, or

otherwise provides its customers with any of these hardware components. Indeed, StreamScale's

expert, Dr. Conte, admitted that Cloudera does not. *See, e.g.*, Trial Tr. at 189:24-190:1 [Conte]

("Q. And you understand, sir, that Cloudera does not make any hardware; is that right? A. That's

true."); 190:5-7 (Dr. Conte agreeing Cloudera does not sell any "computers"); 195:17-22 (Dr.

Conte agreeing that Cloudera does not make or sell "processors"); 197:25-198:10 (Dr. Conte

agreeing that Cloudera does not make or sell "input/output controllers"); 198:23-199:4 (same

regarding "processing cores"); *see also id., e.g.*, 200:9-201:11. Cloudera only provides software

for download, and StreamScale conceded this fact. *See, e.g.*, *id.* at 190:8-14; 192:18-193:3 [Conte].

Accordingly, under well-established and controlling precedent, Cloudera's CDH software sales—the only accused sales—do not infringe as a matter of law, because through its sales, Cloudera is not making, selling, or offering to sell the <u>complete</u>, claimed system. *See Centillion Data Sys., LLC v. Qwest Comm'ns*, 631 F.3d 1279, 1284-86 & n.3, 1290 (Fed. Cir. 2011); *see also Synchronoss Technologies, Inc. v. Dropbox, Inc.*, 987 F.3d 1358, 1368-69 (Fed. Cir. 2021) ("Because Dropbox does not provide its customers with any hardware in conjunction with its accused software, Dropbox does not make, sell, or offer for sale the complete invention," nor "use" it, per *Centillion*); *Acceleration Bay LLC v. 2K Sports*, 15 F.4th 1069, 1077-78 (Fed. Cir. 2021) (defendant did not directly infringe claims to virtual network by selling software—"the customer, not [the defendant], completes the system by providing [hardware] and installing" the software).

### 2. The Accused CDH Software Does Not Have Multiple Hardware Elements As Required By The '296 Patent.

While the Asserted Claims of the '296 Patent (Claims 34 and 35) are recited in a different form than the Asserted Claims of the '759 and '259 Patents, they are in fact no different in substance. The question is whether the hardware components of independent Claim 34—the "processing core" and the "main memory" recited in the lengthy preamble—are limitations of the claims. Under clear precedent, they are. "In general, a preamble limits the invention if it recites essential structure or steps, or if it is necessary to give life, meaning, and vitality to the claim." *Catalina Mktg. Int'l v. Coolsavings.com*, 289 F.3d 801, 808 (Fed. Cir. 2002) (cleaned up). In assessing whether a preamble structure is limiting, courts often focus on whether the preamble is used for antecedent basis because "it indicates a reliance on both the preamble and claim body to define the claimed invention." *Id.*; *see also Eaton Corp. v. Rockwell Int'l Corp.*, 323 F.3d 1332, 1339 (Fed. Cir. 2003); *Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1376 (Fed. Cir. 2005); *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950-51 (Fed. Cir. 2006).

Here, asserted Claims 34 and 35, as well as Claim 36—which StreamScale only dropped immediately before trial—rely on the preamble for antecedent basis for both the "processing core" and "main memory." Claim 34 identifies "a main memory" in the preamble, and both Claims 34 and 35 reference "the main memory" in the body. If the main memory of Claim 34's preamble is not a limitation, then neither Claim 34 nor Claim 35 make sense. The same is true for the processing core. Claim 34 identifies "a processing core" in the preamble, and dependent Claim 36 recites, in the body, "wherein the processing core comprises a plurality of processing cores." Because the preamble of Claim 34 clearly provides essential structure for the claimed inventions, including by providing the antecedent basis for numerous structural elements, it is limiting. *See, e.g., Eaton Corp.*, 323 F.3d at 1339 ("When limitations in the body of the claim rely upon and derive antecedent basis from the preamble, then the preamble may act as a necessary component of the claimed invention."); *Seachange*, 413 F.3d at 1376 (where preamble recited "a processor system" with "at least one central processing unit" and "at least one mass storage subsystem," then referenced "*said* processor systems", preamble was limiting).

The Asserted Claims of the '296 Patent, therefore, are in fact no different from the Asserted Claims of the other asserted patents. Moving the hardware limitations from the body into the preamble in Claim 34 of the '296 Patent does not make them disappear when the body continues to rely on them for antecedent basis. The main memory and processing core remain "essential structure" for the invention. *Catalina Mktg.*, 289 F.3d at 808. *Cf. SIMO Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*, 983 F.3d 1367, 1375-76 (Fed. Cir. 2021) (holding claim which recited hardware components in a "preamble," but then software functionality in a "body," required the recited hardware components); *Microprocessor Enhancement Corp. v. Texas Instruments Inc.*, 520 F.3d 1367, 1374-75 (Fed. Cir. 2008) (holding preamble limiting where

preamble embedded structural limitations as a preamble-within-a-preamble).

   3.    **The Accused CDH Software, When Provided To Customers, Is Not Stored In A "Non-Transitory Storage Medium" As Required By the '296 Patent.**

Even if the Court determines that the Asserted Claims of the '296 Patent do not require a "processing core" or "main memory," StreamScale has still failed to demonstrate direct infringement of those claims through Cloudera's "making" or "selling" its CDH software. The Asserted Claims of the '296 Patent are Beauregard claims, and therefore require a "non-transitory storage medium" storing the software and from which computer program instructions are readable. *See CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1373 (Fed. Cir. 2011) (a Beauregard claim "is a claim to a computer readable medium (*e.g.*, a disk, hard drive, or other data storage device) containing program instructions for a computer to perform a particular process."). Beauregard claims do not cover the software itself—they cover "a non-transitory storage medium" that stores the complete software and from which computer program instructions are readable. *See Finjan, Inc. v. Qualys Inc.*, No. 4:18-cv-07229-YGR, 2020 U.S. Dist. LEXIS 228385, at *3 (N.D. Cal. Dec. 4, 2020) ("Computer medium claims are not infringed by computer code that is written in the United States—they are infringed by *media* that stores infringing code.").

StreamScale failed to introduce any evidence of direct infringement of Claims 34-35 of the '296 Patent. Customer downloads of the CDH software are not "sales" of a covered product, and are not acts of infringement by Cloudera. *See East Coast Sheet Metal Fabricating Corp. v. Autodesk, Inc.*, No. 12-CV-517-LM, 2015 WL 226084, at *18 (D.N.H. Jan. 15, 2015), *amended in part*, No. 12-CV-517-LM, 2015 WL 925614 (D.N.H. Mar. 3, 2015), and *aff'd*, 645 F. App'x 992 (Fed. Cir. 2016) ("no reasonable jury could find that Autodesk infringed EastCoast's patents by selling its accused products in the form of downloads, because a download does not meet the claim limitation of instructions on a computer-readable medium.") (emphasis added).   And

Cloudera's hosting the accused CDH software on its server(s) does not constitute an act of "making" the claimed "computer readable medium" because Dr. Conte admitted that Cloudera's customers download only the CDH software from Cloudera, do not receive a physical medium from Cloudera storing CDH, and that Cloudera's customers do not execute CDH from a Cloudera computer (*i.e.*, Cloudera's download server is not a "computer readable medium" for computer program instructions to perform the claimed erasure coding because the software is just stored on the server and the only possible instructions are for transmittal of packets to a customer). Trial Tr. [Conte] at 190:8-14, 192:25-193:3, 200:24-201:11. Dr. Conte further admitted that Cloudera does not sell to customers any server from which CDH is downloaded and customers do not receive or take physical control of Cloudera's servers. Trial Tr. at 192:18-24 [Conte].

As StreamScale can point only to downloading of CDH from an online location, its direct infringement theory for Claims 34 and 35 of the '296 Patent fails because "a download does not meet the claim limitation of instructions on a computer-readable medium." *East Coast Sheet Metal*, 2015 WL 226084 at *18.

### B. Properly Construed, The Accused Products, As Provided to Customers, Are Not "Configured to" Perform Error Correction.

Cloudera is entitled to JMOL of non-infringement for the independent reason that the accused CDH software is not "configured to" perform error correction or erasure coding, as required by the Asserted Claims. The Court declined to construe the term "configured to." Dkt. 303. But as the trial record shows, without a construed limit on the meaning of "configured to," StreamScale engaged in an untenable trial presentation, pursuing its direct infringement theory that the plain and ordinary meaning of the term covers a product merely "capable of" performing erasure coding, even though it is by default set not to perform erasure coding. *See* Trial Tr. at 204:23-205:2, 206:2-12 [Conte]. This case thus requires a post-trial claim construction. *See O2 Micro Int'l*

7

*Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008) ("A determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate … when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute."); *Olaf Sööt Design, LLC v. Daktronics, Inc.*, 839 F. App'x 505, 509 (Fed. Cir. 2021) (granting JMOL of non-infringement based on new claim construction because lack of construction at trial "resulted in a claim construction dispute being 'improperly submitted to the jury'").

As Judge Gilland recently determined, the term "configured to" should be construed as "not merely being capable of being configured but rather actually being configured." *Q Technologies., Inc. v. Neutron Holdings, Inc.*, 6:21-cv-321-ADA-DTG, Dkt. 39 at 3 (W.D. Tex. May 24, 2022) (attached as Exhibit A to the Declaration of Christohper Kao). As Cloudera explained in its summary judgment papers, the Federal Circuit and the Fifth Circuit have consistently reached the same determination that, when properly construed, a claim element reciting a structure "configured to" perform a function is infringed only if the accused structure is actually set to perform the function, as opposed to merely capable of performing the function. *See Huawei Techs. Co. v. Verizon Commc'ns, Inc.*, No. 2:20-CV-00030-JRG, 2021 WL 150442, *18-20 (E.D. Tex. Jan. 15, 2021) (citing *Typhoon Touch Techs. v. Dell, Inc.*, 659 F.3d 1376 (Fed. Cir. 2011) and *Nazomi Communs., Inc. v. Nokia Corp.*, 739 F.3d 1339 (Fed. Cir. 2014)); *Wapp Tech Limited P'ship v. Seatle Spinco, Inc.*, No. 4:18-CV-469, 2020 WL 1983087, *20 (E.D. Tex. 2020) (construing "configured to" to mean "actually programed to"); *Nevro Corp. v. Bos. Sci. Corp.*, 955 F.3d 35, 40, 42 (Fed. Cir. 2020) (construing "configured to" to mean "programmed to": "The asserted claims contemplate that 'configured to' requires programming the signal generator (i.e., setting parameters) to generate the claimed signals."); *Salazar v. HTC Corp.*, No. 216CV01096JRGRSP, 2018 WL 4242416, *2 (E.D. Tex. May 1, 2018) (similar).

8

In opposing Cloudera's construction, StreamScale ignored the line of cases directly addressing this construction, and instead relied on inapposite cases involving patent claims that do not contain any "configured to" claim language. Dkt. 235 at 17-20. Furthermore, the trial record reinforces that StreamScale's proffered meaning of "configured to" is nonsensical. Dr. Conte admitted that CDH's default replication configuration is <u>mutually exclusive from</u> its optional erasure coding configuration. Trial Tr. at 206:17-207:1 [Conte] (admitting that "a customer can't perform replication and erasure coding on the same directory of files"). Fatally, Dr. Conte testified that despite replication and erasure coding being mutually exclusive, CDH is somehow configured to implement both. *Id*. at 206:2-206:16. This is logically impossible.

Under the proper construction of the "configured to" phrases from the Asserted Claims (i.e., "actually set to perform the function, as opposed to merely capable of performing the function"), StreamScale cannot prove infringement. The evidence at trial demonstrated that the accused CDH software, as provided to customers by Cloudera, is not configured to perform erasure coding steps when executed. Rather, CDH is configured by default to perform replication (again, a mutually exclusive function), and the accused erasure coding functionality is disabled by default. *See* Trial Tr. [Conte] at 203:5-204:4; PXT-444 at 2 ("HDFS by default replicates each block three times"), 22 (same). Thus, if anyone directly infringes, it is the <u>customer</u> who chooses and configures the software to perform erasure coding, <u>but StreamScale does not allege indirect infringement by Cloudera</u>. *See* Dkt. 67 at ¶¶112, 115, 134, 137, 154, 157, 194, 197, 214, 217.

No reasonable jury could conclude that the accused CDH software is "configured to" perform erasure coding as claimed, based on the proper construction of that term.

### C. There Is No Evidence Of Infringement By "Offering To Sell" Or "Importing".

Furthermore, StreamScale did not advance at trial any theory or evidence concerning infringement by "offering to sell" and/or "importing" into the United States the accused CDH

software. However, even if StreamScale had attempted to address these statutory acts of infringement, those theories would fail for the reasons set forth above.

### D. There Is No Evidence Of Infringement By "Using" Because StreamScale Failed To Make Any Comparisons Of Specific Testing Configurations To All Elements Of Any One Of The Asserted Claims.

In its opposition to Cloudera's Motion for Summary Judgment of Non-Infringement and at the Pretrial Conference, StreamScale raised a new argument—that Cloudera internally tested the accused error correction functionality, using its own hardware, and therefore directly infringed the claims. *See* Dkt. 235 at 20; Dkt. 298 at 112-13. StreamScale had not alleged internal testing infringement previously, had not covered the issue in its expert's reports, and presented no damages theory based on testing during discovery. Cloudera objected to this new theory at the Pretrial Conference (Dkt. 298 at 103:13-105:8) and at trial (Trial Tr. at 111:7-16). This improper theory should have been excluded and cannot form the basis for the jury's verdict. *See, e.g., Acceleration Bay LLC v. Activision Blizzard, Inc.*, 324 F. Supp. 3d 470, 483-84 (D. Del. 2018) (non-specific allegations of direct "testing" by accused infringer insufficient to avoid summary judgment of no direct infringement); *Ricoh Co., Ltd. v. Quanta Computer Inc.*, 550 F.3d 1325, 1335-36 (Fed. Cir. 2008) (affirming summary judgment of no direct infringement, where plaintiff "failed to adduce any specific evidence that [defendant] tested any of the products accused of infringing…or that it tested them in a way that would constitute infringement").

In any event, even if StreamScale's new testing theory is allowed, StreamScale failed to prove its case. StreamScale presented incomplete evidence of testing for some, but not all, Asserted Claim limitations, thereby failing to show infringement by testing for any Asserted Claim. *See* Trial Tr. at 209:18-211:15 (Dr. Conte conceding that he only cites to PXT-196 for evidence of alleged testing, which was not cited in every element of his analysis). For instance, Dr. Conte failed to cite to the evidence of the alleged testing for at least elements [b]-[d] of Claim 34 and Claim 35

of the '296 Patent, elements [a], [i], [k] of Claim 12 of the '259 Patent, and elements [f]-[h], [j]-[k] of Claim 1 of the '759 Patent. *Id.* at 134:1-177:25. Accordingly, the Court should grant judgment as a matter of law that StreamScale has failed to prove infringement through testing. *See, e.g., Acceleration Bay*, 324 F. Supp. 3d at 483-84; *Ricoh*, 550 F.3d at 1335-36.

### E.   There Is No Evidence Of Infringement By "Using" Because Cloudera Does Not Control Or Direct The Making Or Use Of The Asserted Claims By Customers.

Belatedly, StreamScale in its Rule 50(a) Motion for Judgment as a Matter of Law argued that Cloudera "uses the [asserted] system [claims] because it controls and benefits from" them "even if components of the system are in the physical possession of others (such as customers)." Dkt. 330 at 3 (citing *Centillion*, 631 F.3d at 1284). This new theory was not disclosed in the operative Complaint (Dkt. 67), StreamScale's Infringement Contentions, or StreamScale's infringement expert report, and it cannot support the verdict. There is simply no evidence that Cloudera exercised any control over customers' choices of hardware or software configurations. Dr. Conte conceded that the accused software runs on commodity hardware that Cloudera does not make or sell, and that it is customers who download and install the software on their own computers. Trial Tr. at 189:12-190:14, 192:18-193:3, 195:17-22, 197:25-198:10, 198:23-199:4, 200:9-201:11. As set forth in *Centillion*, customers' action cannot be attributable to Cloudera because "it is entirely the decision of the customer whether to install and operate this software." *Centillion*, 631 F.3d at 1287. Moreover, even if StreamScale could show Cloudera provided other systems with the accused software (which it did not), StreamScale must show Cloudera "control[s] the system <u>as a whole</u> and <u>obtain[s] benefit</u> from it." *Id.* at 1284 (emphases added). Mere testimony that Cloudera coded software elements cannot do so as a matter of law (Dkt. 330 at 3, citing Trial Tr. at 138:9-16, 131:18-25, 133:16-20 (Dr. Conte's testimony on Cloudera's purported choice of "computer instructions" and "zeros and ones" in code)), as it relates only to software and not "the

system as a whole." *Centillion*, 631 F.3d at 1284.

      **F.**     **Cloudera Is Entitled To Judgment On The Doctrine Of Equivalents.**

StreamScale addressed only literal, direct infringement and presented no evidence at trial of infringement under the doctrine of equivalents ("DOE"). Trial Tr. at 118:24-218:5. The Court thus indicated it intended to direct a verdict on DOE. *Id.* at 424:5-15. Cloudera requests that the Court formalize that ruling by entering an order granting JMOL of no infringement of the Asserted Claims under the DOE.

**IV.**     **CLOUDERA IS ENTITLED TO JUDGMENT OF INVALIDITY.**

Cloudera is entitled to judgment as a matter of law that the Asserted Claims are rendered obvious in light of U.S. Patent No. 7,343,389 ("Macy," DX-63) alone and/or in combination with the Plank reference (DX64 and DX-65). The "obviousness inquiry [under 35 U.S.C. § 103] assesses 'the differences between the subject matter sought to be patented and the prior art' to ascertain whether 'the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.'" *Senju Pharm. Co. v. Lupin Ltd.*, 780 F.3d 1337, 1341 (Fed. Cir. 2015).

The application for Macy was filed May 2, 2002, and it issued on March 11, 2008. DX-63. It is undisputed that Macy is prior art to the asserted patents. Macy was not cited during prosecution of the asserted patents. Trial Tr. [Hasan] at 91:12-20; *id.* [Long] at 509:12-24. Dr. Long testified at trial that Macy would have rendered the Asserted Claims obvious to a person of ordinary skill in the art alone and/or in combination with Plank.

**Claims 34 and 35 of the '296 Patent.** Dr. Long established by clear and convincing evidence that Claims 34 and 35 of the '296 Patent are obvious in view of Macy alone. Trial Tr. [Long] at 511:13-535:14, 594:4-595:6. For instance, Dr. Long established that Macy discloses a forward error control system that is accelerated with the same Intel instruction as disclosed in the

asserted patents and that also includes the same conventional computer architecture as recited in the Asserted Claims. *Id*. Dr. Long also established that these claims would have been obvious in view of the Macy-Plank combination. *Id*.

Plank is a publication from 1997 titled, "A Tutorial on Reed-Solomon Coding for Fault-Tolerance in RAID-like Systems," that the asserted patents admit is prior art. Trial Tr. [Long] at 516:13-517:3; DX-64; *see, e.g.*, PTX-1 ('296 Patent) at 3:10-17 (discussing Plank as prior art). Plank includes a 2005 publication that corrects a technical aspect of the 1997 paper. Trial Tr. [Long] at 517:4-518:1; DX-65. The asserted patents also recognize that the 2005 correction is prior art and should be considered with Plank. *See, e.g.*, PTX-1 ('296 Patent) at 3:10-17.

Dr. Long showed that, to the extent it was argued that Macy does not disclose using its accelerated forward control techniques for erasure coding in a data storage system as recited in the Asserted Claims, this would have been obvious in view of Plank. Trial Tr. [Long] at 511:13-535:14, 594:4-595:6. And a person of ordinary skill in the art would have combined Macy with Plank because, e.g., they are in the same field and Macy addresses the processing-speed-problem expressly recognized in Plank. *Id*.

**Claim 1 of the '759 Patent.** Under the same reasoning, Dr. Long also established by clear and convincing evidence that Claim 1 of the '759 Patent is obvious in view of Macy alone. Trial Tr. at 535:15-552:7; 595:7-14 [Long]. Dr. Long also established that these claims would have been obvious in view of the Macy-Plank combination. *Id*.

**Claim 12 of the '259 Patent.** Under the same reasoning, Dr. Long further established by clear and convincing evidence that the final asserted claim, Claim 12 of the '759 Patent, is obvious in view of Macy alone. Trial Tr. at 552:8-566:2, 579:23-593:18, 595:15-23 [Long]. Dr. Long also established that these claims were obvious in view of the Macy-Plank combination. *Id*.

4861-9301-4418

StreamScale presented only limited, inapposite validity testimony and failed to rebut Cloudera's showing. Dr. Conte opined that the Macy reference cannot invalidate the Asserted Claims because it is allegedly directed to communications while the Asserted Claims concern data storage and those are "different field[s]." *Id.* at 854:19-861:3, 889:10-890:11 [Conte]. Relatedly, Dr. Conte argued that a person of ordinary skill in the art would not have combined Macy with Plank because Plank is in the same field with the asserted patents while Macy is not. *See, e.g.*, *id.* at 861:6-866:2, 890:23-891:10.

However, Dr. Conte's testimony contradicts the asserted patents themselves, which, right up front, discuss that erasure coding "is a type of error-correcting code (ECC) useful for <u>forward error-correction</u> in applications like a redundant array of independent disks (RAID) <u>or high-speed communications systems</u>." PTX-1 at 1:11-14 (emphasis added); *see also* Trial Tr. at 893:19-896:24 (Dr. Conte acknowledging the specification providing the relevant field for the subject matter of the asserted patents including "high-speed communications systems"; acknowledging and agreeing with the commentary provided in the Notice of Allowance issued by the USPTO that "[e]rasure-coding redundancy often employs Reed-Solomon encoding techniques used for error-control coding of communication messages and other digital data transferred through noisy channels"). Macy discloses that its parallel multiplication techniques are "extremely beneficial within forward error control" and discusses an application in high-speed communications and RAID. DX-63 at 21:62-22:3, 12:14-21. Dr. Conte's validity testimony is contrary to the evidence and StreamScale's own patents and is thus untenable.

StreamScale's only remaining rebuttal was Dr. Conte's baseless testimony about secondary considerations. Trial Tr. at 873:10-876:12. However, Dr. Conte's evidence lacked any nexus to the claimed invention; instead, the evidence concerned alleged praise of performance numbers

(*id*.), which is not claimed in the asserted patents. *Fox Factory, Inc. v. SRAM, LLC*, 944 F.3d 1366, 1373 (Fed. Cir. 2019) ("In order . . . to accord substantial weight to secondary considerations," "there must be a 'legally and factually sufficient connection'"—i.e., a nexus—"between the evidence and the patented invention."); *Boston Scientific SciMed Inc. v. Iancu*, 811 F. App'x 618 (Fed. Cir. 2020) (rejecting evidence of industry praise that addressed unpatented features).

## V.    CLOUDERA IS ENTITLED TO JUDGMENT OF NO DAMAGES.

The jury awarded damages totaling $240 million. Dkt. 340 at 5. Even if there was substantial evidence to support the jury's liability verdict—which there is not, for the reasons discussed above—Cloudera is entitled to JMOL of no damages for multiple reasons.

### A.    Cloudera Is Entitled To Judgment Of No Damages Because No Reasonable Juror Could Award Damages Based On Mr. Weinstein's Damages Analysis.

Under StreamScale's damages theory presented at trial, in the hypothetical negotiation, Cloudera would consider a proposed, <u>but unaccepted</u>, licensing offer from StreamScale to Facebook in 2018 to determine the reasonable royalty. Trial Tr. at 369:2-19, 395:17-396:14 [Weinstein]. Mr. Weinstein's damages calculations are based entirely on the "price per drive" of $100 derived from the rejected Facebook offer. *Id.* at 374:6-376:1. His analysis suffers from many fatal flaws, each warranting JMOL in Cloudera's favor on damages.

No reasonable jury could accept Mr. Weinstein's unfounded analysis based entirely on a highly speculative and unreliable rejected offer. Trial Tr. at 369:2-19, 395:17-396:14. At trial, Mr. Weinstein provided no basis for the reliability of the rejected offer. In fact, he conceded that a rejected offer "does not establish a market rate" and that "[it] doesn't reflect what someone would be willing to pay for the license." *Id.* at 398:8-14. Further, Mr. Weinstein testified that he had limited understanding of the details of the offer and the negotiations, if any. Trial Tr. at 396:15-398:14 [Weinstein]. His entire understanding of the rejected Facebook offer was based on his

review of the deposition of Bryan Richardson, who testified that he was not personally involved and effectively had no personal knowledge of the details of the rejected offer. *Id.* Because no reasonable jury could accept Mr. Weinstein's analysis based on a highly speculative and unreliable rejected offer, the details of which he knew nothing about, JMOL of no damages should be entered. *See* Cloudera's Rule 59 Motion, Section III.B.; *see also Whitserve, LLC v. Comput. Packages, Inc.*, 694 F.3d 10, 29-30 (Fed. Cir. 2012) (reversing damages award and holding that an expert's damages opinion was speculative as it relied on an unaccepted license and was thus "based on fiction")).

### B.    Cloudera Is Entitled To Judgment Of No Damages Because No Reasonable Juror Could Award Damages Based On Mr. Weinstein's Alternative Model.

As an alternative, Mr. Weinstein relied on a damages theory that started with the alleged incremental profit earned as between CDH versions without erasure coding and CDH versions with erasure coding. But the trial record conclusively shows that no reasonable jury could accept this methodology as reliable.

To arrive at a purported price increase of the CDH products of 39.5% per node (between non-accused CDH 5 and accused CDH 6), Mr. Weinstein selected and compared a total of <u>four</u> customer quotes only—two predating 2018, including one for a product code CEDC-247, and two after 2018 for a product code CEDHC-GOLD. Trial Tr. at 401:24-402:11; PDX8.62-8.63. Mr. Weinstein "assumed that CEDC-247 and CEDHC-GOLD are the same products." *Id.* at 402:12-16. His assumption was baseless due to his admitted lack of understanding of the products (*id.* at 416:15-417:6), and contrary to the trial evidence that CEDHC-GOLD includes at least one additional software package called "Navigator" (*id.* at 753:10-4). Mr. Weinstein's conclusion of a price increase is unreliable given the erroneous assumption. *Id.* at 403:12-20, 415:4-417:6 (conceding that if facts showed no price increase, "then [his] analysis would be called into

16

question."). Because this analysis was based entirely on this speculative assumption of price increase, it was unreliable. *See* Rule 59 Motion, Section III.C.; *see also Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011) (if expert "[b]egin[s] from a fundamentally flawed premise," that flaw "results in a fundamentally flawed conclusion."); *Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l, Inc.*, 246 F.3d 1336, 1358 (Fed. Cir. 2001) (affirming JMOL on damages where expert's methodology was unreliable).

In addition, Mr. Weinstein admitted that he relied entirely on the opinion of StreamScale's technical expert, Dr. Conte, in apportioning damages. Trial Tr. at 408:11-409:3 [Weinstein]. But Dr. Conte's technical apportionment analysis is insufficient on multiple grounds and cannot support any damages award. Dr. Conte assigned an arbitrary value to the features added to the CDH products and attributed 50% of the value of all added features to erasure coding. Dr. Conte did not provide any objective methodology or other basis for the valuation. However, Dr. Ramchandran confirmed that the added features include multiple critical features that are each at least as important as erasure coding and Dr. Conte did not dispute this. Trial Tr. at 719:13-725:17 [Ramchandran]. As such, Dr. Conte's technical apportionment analysis is unreliable and unsupported and contrary to the record evidence.

### C. StreamScale Failed to Offer Evidence To Support Damages Based On Any Purported Internal Use.

Cloudera is also entitled to JMOL of no damages because StreamScale's damages evidence was limited to <u>sales</u> of the accused CDH software to customers, but StreamScale's infringement case was instead based on Cloudera's internal use of the software in making or testing it. This is legally deficient. StreamScale is entitled to damages only "for the economic harm caused by infringement of the claimed invention." *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010) (emphasis added). "The statute does not require an award of damages if none are proven

that adequately tie a dollar amount to the infringing acts." *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1291 (Fed. Cir. 2020).

Even if the Court does not grant JMOL of non-infringement, StreamScale's damages must be tied to Cloudera's alleged direct infringement. Because StreamScale's new trial theory based infringement on Cloudera's internal "use" of the allegedly infringing software, by testing or making it, "damages for such infringement are limited and must be tied to the internal use." *Sapphire Crossing LLC v. Abbyy USA Software House, Inc.*, 2020 WL 6318716, *2 n.3 (N.D. Cal. 2020) (citing *Packet Intelligence LLC v. NetScout Sys., Inc.*, 965 F.3d 1299, 1314-15 (Fed. Cir. 2020) and *De La Vega v. Microsoft Corp.*, No. W-19-CV-00612-ADA, 2020 WL 3528411, at *5 n.7 (W.D. Tex. Feb. 11, 2020) (Albright, J.) ("damages [for testing only] would be limited to the timeframe of infringement, i.e., testing, which are likely to be minimal")); *see also Vocalife LLC v. Amazon.com, Inc.*, No. 2:19-CV-00123-JRG, 2020 WL 5815950, *2 (E.D. Tex. Sept. 30, 2020) ("Since testing was the only pre-suit direct infringement theory proffered by Plaintiff, any pre-suit damages from direct infringement must consequently to be tied to such testing.").

StreamScale did not present a damages theory with respect to Cloudera's internal use, however. Mr. Weinstein's damages analysis was premised entirely upon <u>sales of</u> the accused CDH software and <u>none</u> were tied to internal actions. *See, e.g.*, Trial Tr. [Weinstein] at 366:6-11. Mr. Weinstein made no analysis of the purported economic harm of Cloudera's alleged internal actions related to the accused erasure coding functionality—for example, he did not prove any specific instance of testing, quantify the amount of the testing, or articulate a sound theory of how StreamScale was damaged by the testing. Instead, Mr. Weinstein applied a purported reasonable royalty rate to revenue from <u>sales</u> of the accused products to calculate the reasonable royalty damages. *Id.* But "sales" are different from Cloudera's internal "use", and Mr. Weinstein made no

effort to tie the claimed damages base (sales) to Cloudera's internal actions.

Instructively, the Federal Circuit has addressed a very similar situation and <u>affirmed reduction of the damages awarded by the jury to zero dollars</u> where the jury found direct infringement by the accused infringer, a software manufacturer, based on the accused infringer's own use of the accused software product (Acrobat), and the patentee's damages evidence was limited to the sales of the accused products to customers:

> The statute does not require an award of damages if none are proven that adequately tie a dollar amount to the infringing acts. We have explained that a patent owner may waive its right to a damages award when it deliberately abandons valid theories of recovery in a singular pursuit of an ultimately invalid damages theory. More generally, <u>we have observed that there can be an award of no damages where none were proven</u>. …
>
> In this case, TecSec presented no evidence of damages caused by Adobe's direct infringement, which was the only form of infringement that the jury found Adobe to have committed. TecSec did not, for example, provide any evidence regarding the number of Adobe employees in the United States or the number of times that Adobe employees installed Acrobat. TecSec's only damages evidence relied on "sales of accused products." But the district court found, and TecSec does not dispute, that direct infringement occurs only after Acrobat is installed. Sales of Acrobat, therefore, cannot be a measure of damages for direct infringement by Adobe …

*TecSec*, 978 F.3d at 1291-92.

As in *TecSec*, StreamScale bases its entire damages request on sales of the accused CDH software. But "sales" are different from Cloudera's internal "use", and Mr. Weinstein made no effort to tie the claimed damages base (sales) to Cloudera's internal actions. Courts have consistently rejected such damages theory as unreliable. *See Infernal Tech. LLC v. Activision Blizzard Inc.*, No. 3:18-CV-01397-M, 2021 WL 4391250, *12-13 (N.D. Tex. Sept. 16, 2021), *aff'd*, No. 2021-2349, 2023 WL 370602 (Fed. Cir. Jan. 24, 2023) (striking patentee's damages expert's opinion since it failed to show a nexus between the alleged infringement from internal testing and the sale of the accused products, noting that the patentee failed to "identify any

connection between the internal use … and sales"); *Cirba Inc. v. VMware, Inc.*, 2023 WL 3151853, *4–*6 (D. Del. Apr. 18, 2023) (same); *AOS Holding Company v. Bradford White Corporation*, 2021 WL 5411103, *38-*40 (D. Del. Mar. 31, 2021) ("the Court is left with nothing in the record to justify awarding [plaintiff] anything more than an [] $1 of nominal damages for direct infringement [based on internal testing]" where plaintiff failed to "prove[] any specific instance of such testing, quantif[y] the amount of the testing, or articulate[] a sound theory of how [plaintiff] was financially damaged by that testing"); *Interwoven, Inc. v. Vertical Comput. Sys.*, No. CV 10-04645 RS, 2014 WL 490996, at *4 (N.D. Cal. Feb. 3, 2014) (where the plaintiff's "case for infringement" was limited to the defendant's "own use of the asserted … system claims," finding the plaintiff failed to provide a reasonable, non-speculative basis for damages calculation when the plaintiff "provides no causal connection between any alleged [damages] and [the defendant's] own use"). The complete lack of analysis and evidence to connect the damages based on sales with Cloudera's internal actions is fatal to Mr. Weinstein's damages analysis, and judgment as a matter of law of no damages is warranted.

As StreamScale provided the jury no way to award damages only for any internal actions, this Court should enter a judgment of no damages. *See TecSec*, 978 F.3d 1278, 1291-92.

## VI.    CONCLUSION

For the reasons provided above, the Court should enter judgment as a matter of law in favor of Defendant Cloudera.

Dated:  November 29, 2023                              Respectfully submitted,

By:   */s/ Christopher Kao*

4861-9301-4418

Christopher Kao (*admitted*)
  christopher.kao@pillsburylaw.com
Brock S. Weber (*admitted*)
  brock.weber@pillsburylaw.com
Surui Qu (*pro hac vice*)
  surui.qu@pillsburylaw.com
John Steger (*pro hac vice*)
  johh.steger@pillsburylaw.com
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
4 Embarcadero Center, 22nd Floor
San Francisco, CA  94111
Telephone:  415.983.1000
Facsimile:  415.983.1200

Steven P. Tepera (TX Bar No. 24053510)
  steven.tepera@pillsburylaw.com
Benjamin L. Bernell (TX Bar No. 24059451)
  ben.bernell@pillsburylaw.com
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
401 Congress Avenue, Suite 1700
Austin, TX  78701-3797
Telephone: 512.580.9600
Facsimile:  512.580.9601

Audrey Lo (*pro hac vice*)
  audrey.lo@pillsburylaw.com
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
2550 Hanover Street
Palo Alto, CA  94304
Telephone: 650.233.4500

*Counsel for Defendant*
*Cloudera, Inc.*

4861-9301-4418

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's CM/ECF filing system and/or electronic mail on November 29, 2023.

*/s/ Christopher Kao*

4861-9301-4418