# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

STREAMSCALE, INC.,

                Plaintiff,

    v.

CLOUDERA, INC.,

                Defendants.

Civil Action No. 6:21-cv-00198 ADA

**DEFENDANT CLOUDERA, INC.'S MOTION FOR A NEW TRIAL UNDER RULE 59**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION ........................................................................................ 1

II.     LEGAL STANDARD................................................................................. 1

III.    A NEW TRIAL ON DAMAGES OR REMITTITUR IS REQUIRED BECAUSE
        THE EVIDENCE AT TRIAL CANNOT SUPPORT THE JURY'S AWARD. ................ 2

        A.      StreamScale Did Not Offer Evidence to Support Damages Based On
                Cloudera's Internal Actions, Such as Testing............................................. 2

        B.      Mr. Weintein's Damages Theory Based On A *Rejected* Licensing Offer
                Should Have Been Excluded. .................................................................... 4

                1.      Mr. Weinstein's Reliance On A Single Rejected Offer The Terms
                        Of Which He Had Little Understanding Is Legally Insufficient...................... 4

                2.      Mr. Weinstein Relied On A Noncomparable Agreement and License............. 6

                3.      Mr. Weinstein's Reference To A Purported "Rule Of Thumb" Was
                        Likewise Based On Incomparable Sales And Unreliable. ............................... 7

        C.      Mr. Weintein's Further Damages Analysis Was Likewise Unreliable. .................. 8

        D.      Mr. Weinstein's Testimony On Convoyed Sales Was Also Unreliable. .............. 10

        E.      Cloudera's Foreign Sales Should Not Have Been Included. ............................... 11

        F.      The Jury's Award Was Erroneously Derived From Damages Theories
                That Did Not Account For The Real-World Evidence Of Usage And
                Thus Warrants A New Trial, Or At Least A Remittitur. ...................................... 12

IV.     A NEW TRIAL IS REQUIRED DUE TO THE IMPROPER EXCLUSION OF
        THE 2010-2011 ISA-L CODE. .................................................................... 13

V.      A NEW TRIAL IS REQUIRED UNDER THE CORRECT CONSTRUCTION
        OF "CONFIGURED TO" AND THE PREAMBLE OF THE '296 PATENT. .............. 16

VI.     A NEW TRIAL ON DAMAGES SHOULD BE GRANTED IF ANY PORTION
        OF THE JURY'S INFRINGEMENT VERDICT IS REVERSED................................. 17

VII.    STREAMSCALE'S IMPROPER CLOSING REQUIRES A NEW TRIAL. ................. 17

VIII.   A NEW TRIAL IS WARRANTED ON ALL ISSUES PRESERVED IN THE
        RULE 50(B) MOTION................................................................................. 20

IX.     CONCLUSION........................................................................................... 20

4892-8991-1442

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>Cases</u>

*Am. Seating Co. v. USSC Grp., Inc.*,
514 F.3d 1262 (Fed. Cir. 2008) .................................................................................. 10, 11

*AOS Holding Company v. Bradford White Corporation*,
2021 WL 5411103 (D. Del. Mar. 31, 2021) ...................................................................... 4

*Baisden v. I'm Ready Prods., Inc.*,
693 F.3d 491 (5th Cir. 2012) ........................................................................................... 19

*Brumfield, Tr. for Ascent Tr. v. IB LLC*,
586 F. Supp. 3d 827 (N.D. Ill. 2022) .............................................................................. 12

*Caudle v. D.C.*,
707 F.3d 354 (D.C. Cir. 2013) ......................................................................................... 19

*Cirba Inc. v. VMware, Inc.*,
2023 WL 3151853 (D. Del. Apr. 18, 2023) ...................................................................... 4

*De La Vega v. Microsoft Corp.*,
No. W-19-CV-00612-ADA, 2020 WL 3528411 (W.D. Tex. Feb. 11, 2020) ...................... 3

*Edwards v. Sears, Roebuck and Co.*,
512 F.2d 276 (5th Cir. 1975) ........................................................................................... 19

*ESW Holdings, Inc. v. Roku, Inc.*,
No. 6-19-CV-00044-ADA, 2021 WL 3742201 (W.D. Tex. Aug. 24, 2021) ...................... 1

*George M. Martin Co. v. Alliance Mach. Sys. Int'l LLC*,
618 F.3d 1294 (Fed. Cir. 2010) ....................................................................................... 14

*Guajardo v. GC Services, LP*,
498 F. App'x 379 (5th Cir. 2012) ...................................................................................... 1

*i4i Ltd. P'ship v. Microsoft Corp.*,
598 F.3d 831 (Fed. Cir. 2010) ......................................................................................... 17

*Infernal Tech. LLC v. Activision Blizzard Inc.*,
No. 3:18-CV-01397-M, 2021 WL 4391250 (N.D. Tex. Sept. 16, 2021), *aff'd*,
No. 2021-2349, 2023 WL 370602 (Fed. Cir. Jan. 24, 2023) ..................................... 3, 12

*Interwoven, Inc. v. Vertical Comput. Sys.*,
No. CV 10-04645 RS, 2014 WL 490996 (N.D. Cal. Feb. 3, 2014) ................................... 4

*Juicy Whip, Inc. v. Orange Bang, Inc.*,
382 F.3d 1367 (Fed. Cir. 2004) ....................................................................................... 10

4892-8991-1442

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
   694 F.3d 51 (Fed. Cir. 2012) ................................................................................. 7

*Loose v. Offshore Nav., Inc.*,
   670 F.2d 493 (5th Cir. 1982) ............................................................................... 19

*Lucent Techs, Inc. v. Gateway, Inc.*,
   580 F.3d 1301 (Fed. Cir. 2009) ................................................................. 7, 12, 13

*Medtronic Vascular Inc. v. Abbott Cardiovascular Sys., Inc.*,
   614 F. Supp. 2d 1006 (N.D. Cal. 2009), *amended on reconsideration*,
   2009 WL 1764749 (N.D. Cal. 2009) ................................................................ 14, 15

*MiiCs & Partners, Inc. v. Funai Elec. Co., Ltd.*,
   No. 14-804, 2017 WL 6268072 (D. Del. Dec. 7, 2017) ....................................... 5, 6

*MLC Intel. Prop., LLC v. Micron Tech., Inc.*,
   No. 14-cv-03657-SI, 2019 WL 2716512 (N.D. Cal. June 28, 2019) ..................... 5, 6

*Monarch Knitting Mach. Corp. v. Sulzer Morat GmbH*,
   139 F.3d 877 (Fed. Cir. 1998) .............................................................................. 14

*Multimedia Pat. Tr. v. Apple Inc.*,
   No. 10-CV-2618-H (KSC), 2012 WL 12868264 (S.D. Cal. Nov. 20, 2012) ............ 5

*Muth v. Ford Motor Co.*,
   461 F.3d 557 (5th Cir. 2006) ............................................................................... 13

*Newell Cos., Inc. v. Kenney Mfg. Co.*,
   864 F.2d 757 (Fed. Cir. 1988) .............................................................................. 15

*NTP, Inc. v. Research in Motion, Ltd.*,
   418 F.3d 1282 (Fed. Cir. 2005) ............................................................................ 17

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
   521 F.3d 1351 (Fed. Cir. 2008) ............................................................................ 16

*Omega Patents, LLC v. CalAmp Corp.*,
   13 F.4th 1361 (Fed. Cir. 2021) ........................................................................... 6, 7

*Power Integrations v. Fairchild Semiconductor Int'l*,
   711 F.3d 1348 (Fed. Cir. 2013) ............................................................................ 11

*Realtime Data LLC v. EchoStar Corp.*,
   No. 17-cv-84, 2018 WL 6266301 (E.D. Tex. Nov. 15, 2018) ............................... 10

*Realtime Data, LLC v. Oracle Am., Inc.*,
   2017 WL 11574028 (E.D. Tex. Mar. 30, 2017) .................................................... 13

*ResQNet.com, Inc. v. Lansa, Inc.*,
   594 F.3d 860 (Fed. Cir. 2010)...........................................................................................2

*Sapphire Crossing LLC v. Abbyy USA Software House, Inc.*,
   2020 WL 6318716 (N.D. Cal. 2020) .................................................................................3

*SEB S.A. v. Montgomery Ward & Co.*,
   594 F.3d 1360 (Fed. Cir. 2010)........................................................................................17

*Seidman v. Am. Airlines, Inc.*,
   923 F.2d 1134 (5th Cir. 1991) ...........................................................................................1

*Smith v. Transworld Drilling Co.*,
   773 F.2d 610 (5th Cir. 1985) .............................................................................................1

*TecSec, Inc. v. Adobe Inc.*,
   978 F.3d 1278 (Fed. Cir. 2020).........................................................................................2

*Trustees of Columbia Univ. in City of New York v. Illumina, Inc.*,
   620 F. App'x 916 (Fed. Cir. 2015) ..................................................................................15

*Uniloc USA, Inc. v. Microsoft Corp.*,
   632 F.3d 1292 (Fed. Cir. 2011).......................................................................................7, 9

*VirtnetX, Inc. v. Cisco Sys., Inc.*,
   767 F.3d 1308 (Fed. Cir. 2014).........................................................................................6

*Vocalife LLC v. Amazon.com, Inc.*,
   No. 2:19-CV-00123-JRG, 2020 WL 5815950 (E.D. Tex. Sept. 30, 2020) ..............................3

*Westbrook v. Gen. Tire & Rubber Co.*,
   754 F.2d 1233 (5th Cir. 1985) ....................................................................................18, 19

*Whitehead v. Food Max of Miss., Inc.*,
   163 F.3d 265 (5th Cir. 1998) ......................................................................................18, 19

*Whitserve, LLC v. Comput. Packages, Inc.*,
   694 F.3d 10 (Fed. Cir. 2012)........................................................................................5, 6

*Wordtech Sys., Inc. v. Integrated Networks Sols., Inc.*,
   609 F.3d 1308 (Fed. Cir. 2010).........................................................................................6

## Statues and Rules

35 U.S.C. § 102(g) ...............................................................................................14, 15

Fed. R. Civ. P. 59(a)(1)(A) ........................................................................................1

## I.    INTRODUCTION

Following a four-day trial, a jury found that Cloudera directly infringed Claims 34 and 35 of U.S. Patent No. 8,683,296 ("the '296 Patent"), Claim 1 of U.S. Patent No. 9,385,759 ("the '759 Patent"), and Claim 12 of U.S. Patent No. 10,291,259 ("the '259 Patent") (together, the "Asserted Claims"), and that Cloudera had not met its burden to prove those claims invalid, and awarded StreamScale damages of $240,000,000. Dkt. No. 349. That verdict is contrary to law and based on evidence, including the unreliable and speculative testimony of StreamScale's damages expert, that should have been excluded. If the Court declines to grant JMOL, a new trial untainted by these prejudicially confusing and evidentially unmoored arguments is required.

## II.    LEGAL STANDARD

The Court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court," Fed. R. Civ. P. 59(a)(1)(A), including where "(1) the verdict is against the weight of the evidence, (2) the amount of damages awarded is excessive, or (3) the trial was unfair or marred by prejudicial error," *ESW Holdings, Inc. v. Roku, Inc.*, No. 6-19-CV-00044-ADA, 2021 WL 3742201, at *1 (W.D. Tex. Aug. 24, 2021). "In making this determination, the district court weighs all the evidence, but need not view it in the light most favorable to the nonmoving party." *Smith v. Transworld Drilling Co*., 773 F.2d 610, 613 (5th Cir. 1985).

Alternatively, the Court can condition the denial of a new trial motion upon StreamScale's acceptance of a lower damages award if the damages awarded are excessive. *Seidman v. Am. Airlines, Inc.*, 923 F.2d 1134, 1140 (5th Cir. 1991). If a reviewing court finds that a verdict was motivated by passion or prejudice, then a new trial is the only appropriate remedy. If, however, a court finds that an excessive damages award resulted from some other factor, it may remit the damages to the maximum amount it believes the jury could have awarded given the evidence. *Guajardo v. GC Services, LP*, 498 F. App'x 379, 386–87 (5th Cir. 2012) (per curiam).

4892-8991-1442

**III.    A NEW TRIAL ON DAMAGES OR REMITTITUR IS REQUIRED BECAUSE THE EVIDENCE AT TRIAL CANNOT SUPPORT THE JURY'S AWARD.**

The jury's damages award in this case cannot stand because it was (i) not supported by the evidence presented at trial, (ii) was plainly excessive, and (iii) was improperly prejudiced and confused by the unreliable testimony of StreamScale's damages expert, Mr. Weinstein.[1]

**A.    StreamScale Did Not Offer Evidence to Support Damages Based On Cloudera's Internal Actions, Such as Testing.**

StreamScale is only entitled damages "for the economic harm caused by infringement of the claimed invention." *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010). "The statute does not require an award of damages if none are proven that adequately tie a dollar amount to the infringing acts." *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1291 (Fed. Cir. 2020). The jury is permitted to award damages only for actual damages that StreamScale has proven derived from the specific infringing act(s) that it has established.

StreamScale argued at trial that the accused CDH software, as provided to Cloudera's customers, infringes the Asserted Claims. But as reviewed in Cloudera's Rule 50(b) motion filed concurrently, this infringement theory fails because StreamScale presented no evidence that the accused CDH software, as provided to Cloudera's customers, has the required hardware elements or software configuration. Moreover, StreamScale failed to prove any internal actions by Cloudera infringes every limitation of any Asserted Claim, as explained in Cloudera's Rule 50(b) motion.

To the extent the Court concludes there was evidence at trial supporting a theory of infringement by Cloudera's internal allegedly infringing acts, such as software testing, a new trial on damages is necessary, as StreamScale presented no evidence regarding the amount of such damages to the jury. "[D]amages for such infringement are limited and must be tied to the internal

---

[1] Cloudera preserved its objections to Mr. Weinstein's testimony in its *Daubert* and MIL Nos. 4-6 motions, which the Court denied.

4892-8991-1442

use." *Sapphire Crossing LLC v. Abbyy USA Software House, Inc.*, 2020 WL 6318716, *2 n.3 (N.D. Cal. 2020) (citing, e.g., *De La Vega v. Microsoft Corp.*, No. W-19-CV-00612-ADA, 2020 WL 3528411, at *5 n.7 (W.D. Tex. Feb. 11, 2020) (Albright, J.) ("damages [for testing only] would be limited to the timeframe of infringement, i.e., testing, which are likely to be minimal")); *see also Vocalife LLC v. Amazon.com, Inc.*, No. 2:19-CV-00123-JRG, 2020 WL 5815950 (E.D. Tex. Sept. 30, 2020) ("Since testing was the only pre-suit direct infringement theory proffered by Plaintiff, any pre-suit damages from direct infringement must consequently to be tied to such testing.").

At trial, StreamScale did not offer a damages theory or evidence to account for internal acts, such as testing. StreamScale offered no evidence other than Mr. Weinstein's opinions to support its damages request. But Mr. Weinstein's damages theories are premised entirely upon <u>sales</u> of the accused CDH software and <u>none</u> were tied to internal testing or other internal acts. *See, e.g.*, Trial Tr. [Weinstein] at 366:6-11 ("Q. Did you quantify <u>the use</u> in terms of dollars? A. I did. So this next slide shows <u>Cloudera's sales</u> of accused products….). Mr. Weinstein made no analysis of the purported economic harm of the alleged internal testing of the accused erasure coding functionality by Cloudera—he did not prove any specific instance of the testing, quantify the amount of the testing, or articulate a sound theory of how StreamScale was damaged by the testing. Instead, Mr. Weinstein applied a purported reasonable royalty rate to revenue from <u>sales</u> of the accused products to calculate the reasonable royalty damages. *Id.* But "sales" are different from Cloudera's internal "use," and Mr. Weinstein made no effort to tie the claimed damages base (sales) to Cloudera's internal testing (use). Courts have consistently rejected such damages theory as unreliable. *See Infernal Tech. LLC v. Activision Blizzard Inc.*, No. 3:18-CV-01397-M, 2021 WL 4391250, *12-13 (N.D. Tex. Sept. 16, 2021), *aff'd*, No. 2021-2349, 2023 WL 370602 (Fed. Cir. Jan. 24, 2023) (striking damages expert's opinion since it failed to show a nexus between alleged infringement from internal testing and

4892-8991-1442

product sales); *Cirba Inc. v. VMware, Inc.*, 2023 WL 3151853, *4–*6 (D. Del. Apr. 18, 2023) (same); *AOS Holding Company v. Bradford White Corporation*, 2021 WL 5411103, *38-40 (D. Del. Mar. 31, 2021) ("the Court is left with nothing in the record to justify awarding [plaintiff] anything more than an [] $1 of nominal damages for direct infringement [based on internal testing]" where plaintiff failed to "prove[] any specific instance of such testing, quantif[y] the amount of the testing, or articulate[] a sound theory of how [plaintiff] was financially damaged by that testing"); *Interwoven, Inc. v. Vertical Comput. Sys.*, No. CV 10-04645 RS, 2014 WL 490996, at *4 (N.D. Cal. Feb. 3, 2014) (where the plaintiff's "case for infringement" was limited to the defendant's "own use of the asserted … system claims," finding the plaintiff failed to provide a reasonable, non-speculative basis for damages calculation when the plaintiff "provides no causal connection between any alleged [damages] and [the defendant's] own use").

The Court thus should grant JMOL of no damages, as Cloudera's Rule 50(b) motion requests; the jury award should at least be remitted to nominal damages or a new trial is required.

### B. Mr. Weintein's Damages Theory Based On A *Rejected* Licensing Offer Should Have Been Excluded.

Under StreamScale's damages theory, in the hypothetical negotiation, Cloudera would consider a proposed, but unaccepted, licensing offer from StreamScale to Facebook in 2018 to determine the reasonable royalty. Trial Tr. at 369:2-19, 395:17-396:14 (Mr. Weinstein admitting that he only "rel[ies] on the Facebook offer" in his damages theory). Mr. Weinstein's damages methodology suffers from many fatal flaws. Each of these flaws warrants granting JMOL in Cloudera's favor on damages, but at a minimum, a new trial on damages.

#### 1. Mr. Weinstein's Reliance On A Single Rejected Offer The Terms Of Which He Had Little Understanding Is Legally Insufficient.

Mr. Weinstein's damage theory rests on a rejected offer that no reasonable jury could find that Cloudera would have used, or even considered, to determine a royalty rate. In almost every

circumstance, an unaccepted offer "is an improper starting point" for a damages calculation. *MiiCs & Partners, Inc. v. Funai Elec. Co., Ltd.*, No. 14-804, 2017 WL 6268072, at *4 (D. Del. Dec. 7, 2017) (citing *Whitserve, LLC v. Comput. Packages, Inc.*, 694 F.3d 10, 29-30 (Fed. Cir. 2012)); *Whitserve*, 694 F.3d at 29-30 (reversing damages award and holding that an expert's royalty rate calculation was speculative because it relied on an unaccepted license and was thus "based on fiction"). A "*proposed*, but unaccepted, license" lacks evidentiary value because "patentees could artificially inflate the royalty rate by making outrageous offers." *Id.* (emphasis in original); *Multimedia Pat. Tr. v. Apple Inc.*, No. 10-CV-2618-H (KSC), 2012 WL 12868264, *7 (S.D. Cal. Nov. 20, 2012) (precluding reliance on "unaccepted licensing offers as part of … damages analysis" "[b]ecause their evidentiary value is limited") (collecting cases). That is the situation here. Mr. Weinstein based his entire analysis on a single rejected offer. Trial Tr. at 369:2-19, 395:17-396:14. This methodology was improper and unreliable and should have been excluded.

Unaccepted offers are especially unreliable where they lack other "indicia of reliability and commercial value." *MLC Intel. Prop., LLC v. Micron Tech., Inc.*, No. 14-cv-03657-SI, 2019 WL 2716512, at *13-14 (N.D. Cal. June 28, 2019) (collecting cases). Indicia of reliability and commercial value include circumstances where (1) the rejected offer was consistent with the commercial value and profitability of the patent and the extensive remaining life of the patent at the time of infringement; or (2) the unaccepted offer was made to the defendant after a lengthy contractual relationship between the parties, and good faith negotiations to replace their long-standing agreement with the rejected licensing agreement were unsuccessful. *Id.* Yet Mr. Weinstein never analyzed whether the rejected offer bears indicia of reliability and commercial value. Indeed, Mr. Weinstein conceded that a rejected offer "does not establish a market rate" and that "[it] doesn't reflect what someone would be willing to pay for the license." *Id.* at 398:8-14.

Moreover, Mr. Weinstein testified that he had limited understanding of the details of the offer and the negotiations, if any. Trial Tr. at 396:15-398:14 [Weinstein]. Mr. Weinstein cannot base his damages calculation upon an offer he knows nearly nothing about. Such an unfounded opinion promotes just the sort of "fiction" the Federal Circuit warned of when cautioning against reliance on unaccepted licensing offers. *See Whitserve*, 694 F.3d at 29-30; *MLC*, 2019 WL 2716512, at *13-15; *MiiCs*, 2017 WL 6268072, at *4.

**2.      Mr. Weinstein Relied On A Noncomparable Agreement and License.**

"[L]icenses relied on by the patentee in proving damages [must be] sufficiently comparable to the hypothetical license at issue in suit." *VirtnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1330 (Fed. Cir. 2014); *Apple, Inc. v. Wi-Lan, Inc.*, 25 F.4th 960, 972 n.5 (Fed. Cir. 2022) ("Sufficient comparability is a threshold requirement for licenses to be admissible."). Further, "where licenses are at issue," the patentee's burden to prove damages "includes 'the burden to prove that the licenses were sufficiently comparable.'" *Omega Patents, LLC v. CalAmp Corp.*, 13 F.4th 1361, 1377 (Fed. Cir. 2021). "[A]lleging a loose or vague comparability between different technologies or licenses does not suffice," *id.* at 1379, because "comparisons of past patent licenses to the infringement must account for 'the technological and economic differences' between them," *Wordtech Sys., Inc. v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1320 (Fed. Cir. 2010).

StreamScale and Mr. Weinstein failed to show at trial that the rejected Facebook offer was at all comparable to the circumstances of the hypothetical negotiation. For example, Mr. Weinstein used the rejected Facebook offer's $100 per drive fee as the basis for his royalty calculation without adequate facts or data that this amount would sufficiently inform the hypothetical negotiation. Trial Tr. at 367:19-369:16. Mr. Weinstein equated a "drive" in the context of the rejected offer with a "drive" in the context of his damages calculations, without any proof, because he cannot show any due to his complete lack of understanding of the terms of the offer. *Id.* at 397:17-23. But the law is

6

clear: to constitute a reliable methodology for determining patent damages, "there must be a basis in fact to associate the royalty rates used in prior licenses to the particular hypothetical negotiation at issue in the case." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011).

In short, StreamScale failed to establish comparability of the rejected Facebook offer and its license fee for purposes of the hypothetical negotiation, yet that rejected offer and fee were the foundation of its damages request. Thus, Mr. Weinstein's entire analysis was unreliable. *See Uniloc*, 632 F.3d at 1317 (Even where an expert later "adjust[s]" a royalty "based on legitimate considerations," if the expert "[b]egin[s] from a fundamentally flawed premise," that flaw "results in a fundamentally flawed conclusion."); *see also Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1329, 1332, 1340 (Fed. Cir. 2009) (reversing denial of JMOL in part because damages expert relied on noncomparable licenses); *Omega Patents*, 13 F.4th at 1377, 1380-81 ("The patentee has the burden of proving damages, … and where licenses are at issue, that includes the burden to prove that the licenses were sufficiently comparable …."); *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 77-78 (Fed. Cir. 2012) (ordering new damages trial where noncomparable agreements were erroneously admitted).

### 3. Mr. Weinstein's Reference To A Purported "Rule Of Thumb" Was Likewise Based On Incomparable Sales And Unreliable.

Mr. Weinstein's vague reference to some purported "rule of thumb" is subject to the same errors. Mr. Weinstein admitted that the purported "rule of thumb" StreamScale allegedly had was for selling certain software products, not patent licenses. Trial Tr. at 409:16-410:2 [Weinstein]. Mr. Weinstein made no effort whatsoever to show if and how the software products were sufficiently related to the asserted claims to render it reliable for purposes of the hypothetical negotiation. He cannot because, as StreamScale's corporate representative testified, StreamScale never sold a product that embodied the asserted patents. *See* Trial Tr. at 92:19-93:3 [Hasan].

Therefore, to the extent that Mr. Weinstein relied on the purported "rule of thumb" based on sales of software products that did not involve the patented invention, his opinion is flawed under the same precedent discussed in the section immediately above.

### C.    Mr. Weintein's Further Damages Analysis Was Likewise Unreliable.

Mr. Weinstein also relied on the alleged incremental profit earned as between CDH versions without erasure coding and CDH versions with erasure coding. But the trial record conclusively shows that this methodology is likewise unreliable.

In an attempt to arrive at a purported price increase of 39.5% per node for the CDH products (from the non-accused CDH 5 to the accused CDH 6), Mr. Weinstein selected and compared a total of <u>four</u> customer quotes only—two predating 2018, including one for a product code CEDC-247, and two after 2018 for a product code CEDHC-GOLD. Trial Tr. at 401:24-402:11; PDX8.62-8.63.  In his analysis, Mr. Weinstein simply "assumed that CEDC-247 and CEDHC-GOLD are the same products" and based on comparing these four quotes, he concluded that the quotes reflected a price increase. *Id.* at 402:12-16. Mr. Weinstein had no sound basis for his assumption that CEDC-247 and CEDHC-GOLD are the same products. This assumption was made out of a complete lack of understanding of these products. Trial Tr. at 416:15-417:6 (Mr. Weinstein conceding that apart from the brief description in the quotes, he had no understanding of the difference or similarity between the two products). Indeed, the two products are different—CEDHC-GOLD includes at least one additional software package called "Navigator." Trial Tr. at 753:10-4. Mr. Weinstein's conclusion of price increase is unreliable given the erroneous assumption.

Mr. Weinstein also assumed that the four quotes, involving different products, are representative of the price of CDH versions without erasure coding and CDH versions with erasure coding, without any basis and contrary to the trial evidence. Trial Tr. at 401:18-402:16. He conceded that if the facts showed that there was no price increase between CDH versions without

4892-8991-1442

erasure coding and CDH versions with erasure coding, "then [his] analysis would be called into question." *Id.* at 403:12-20, 415:4-417:6. This is exactly what the only evidence on the issue shows—<u>there was not a price increase between versions of CDH without erasure coding and versions of CDH that had erasure coding as an optional, disabled feature</u>. Trial Tr. at 755:2-758:8 [Griffin]. Mr. Weinstein's conclusion of an incremental profit between CDH versions without erasure coding and CDH versions with erasure coding is further contrary to the real-world evidence, which shows that CDH customers who had CDH versions without erasure coding can upgrade to a version with erasure coding <u>at no additional cost</u>. Trial Tr. [Griffin] at 751:3-9.

Despite these flaws, Mr. Weinstein relied solely on these four quotes to extrapolate a perceived increase in list price to all CDH customers and across all accused CDH product codes during the entire damages period. Because the purported price increase forms the foundation of Mr. Weinstein's additional damages analysis, his entire analysis was unreliable. *See Uniloc*, 632 F.3d at 1317 (Even where an expert later "adjust[s]" a royalty "based on legitimate considerations," if the expert "[b]egin[s] from a fundamentally flawed premise," that flaw "results in a fundamentally flawed conclusion."). A new trial is warranted.

Mr. Weinstein's flawed methodology did not end there. He relied entirely on the arbitrary opinion of Dr. Conte in apportioning damages. Trial Tr. at 408:11-409:3 [Weinstein]. But Dr. Conte's technical apportionment analysis is insufficient on multiple grounds and cannot support any damages award. Dr. Conte assigned an arbitrary, subjective estimate to the various features added to the CDH, without analyzing any of the features, and attributed 50% of the value of all added features to erasure coding. Trial Tr. at 181:5-182:1 [Conte]. Dr. Conte provides no objective methodology or other basis for the valuation. However, Dr. Ramchandran confirmed that the added features include multiple critical features that are each at least as important as erasure coding and

Dr. Conte did not dispute this. Trial Tr. at 719:13-725:17 [Ramchandran]. Dr. Conte's apportionment methodology was improper and should have been excluded.

### D.   Mr. Weinstein's Testimony On Convoyed Sales Was Also Unreliable.

StreamScale's improper inclusion of convoyed sales in its damages calculations further tainted the jury's award. Specifically, Mr. Weinstein included revenues from sales of "Cloudera Compute, Storage, and Workbench, and other products" in his royalty base and opined that StreamScale should be permitted to recover not just a reasonable royalty on the accused CDH software but also a reasonable royalty that reflects the revenues from sales of Cloudera Compute, Storage, and Workbench. Trial Tr. at 362:12-364:4. StreamScale did not accuse Cloudera Compute, Storage, and Workbench or any other product of infringing any claim. And StreamScale offered no evidence to relate revenues from sales of these products to any actual infringing feature of erasure coding to show why damages on such revenues are proper for infringement.

"A patentee may recover lost profits on unpatented components sold with a patented item, a convoyed sale, if both the patented and unpatented products 'together were considered to be components of a single assembly or parts of a complete machine, or they together constituted a functional unit.'" *Am. Seating Co. v. USSC Grp., Inc.*, 514 F.3d 1262, 1268 (Fed. Cir. 2008). This does not apply to "items that have essentially no functional relationship to the patented invention and that may have been sold with an infringing device only as a matter of convenience or business advantage." *Id.*; *see also Juicy Whip, Inc. v. Orange Bang, Inc.*, 382 F.3d 1367, 1372 (Fed. Cir. 2004) (sales of noninfringing products can be included only if they are sold together with infringing products because they function as one and are intended to be used together). Thus, an expert who wishes to include convoyed sales in a royalty base must show "that the unpatented products share a functional relationship with <u>the patented component</u>." *Realtime Data LLC v. EchoStar Corp.*, No. 17-cv-84, 2018 WL 6266301, at *6 (E.D. Tex. Nov. 15, 2018).

StreamScale offered no evidence to establish a functional relationship between Cloudera Compute, Storage, Workbench and the patented erasure coding functionality. Mr. Weinstein improperly conflates the accused product with the patented erasure coding functionality, which merely forms one of the various functionalities within the accused CDH software. Trial Tr. at 405:22-406:2 [Weinstein] ("Q. My question is not just whether a convoyed sale has to be related to the infringing product. My question is whether it has to be related in some way to the allegedly patented feature within the accused product. A. My answer is no."). Without doubt, Mr. Weinstein misapplied the law on convoyed sales. And he failed to make any analysis of whether there is a functional relationship between Cloudera Compute, Storage, Workbench and the patented erasure coding functionality, rather than the entire CDH. Trial Tr. at 406:9-408:10. StreamScale failed to prove that Cloudera Compute, Storage, or Workbench qualify as convoyed sales, such that their benefits cannot be attributed to the asserted patents. *Am. Seating*, 514 F.3d at 1269.

Also, as Cloudera's MIL No. 5 showed, Mr. Weinstein's expert report failed to include any revenue attributable to alleged convoyed sales in the damages calculation and he should have been precluded from offering evidence or opinions at trial in this regard. Dkt. 229 at 6-7; Dkt. 286 at 4.

### E.    Cloudera's Foreign Sales Should Not Have Been Included.

Mr. Weinstein's damages calculations also incorrectly included Cloudera's foreign sales. At trial, Mr. Weinstein testified that he used the purported "infringing sales … of approximately $1.2 billion" as part of the royalty base. Trial Tr. at 343:8-20. The purported infringing sales clearly included both Cloudera's U.S. sales and foreign sales. Ex. 1 to Declaration of Christopher Kao [Weinstein Report], ¶¶ 131-132, 138-39. The purported foreign sales should have been excluded.

Damages resulting from foreign sales were legally improper here. *See Power Integrations v. Fairchild Semiconductor Int'l*, 711 F.3d 1348, 1371 (Fed. Cir. 2013) ("foreign exploitation of a patented invention . . . is not infringement at all"). Cloudera's purported internal actions of testing

11

or making a master copy domestically does not cure this defect. *See, e.g.*, *Infernal Technology LLC v. Activision Blizzard Inc.*, 2021 WL 4391250, at *13 (N.D. Tex. Sept. 16, 2021) (excluding expert opinions on a royalty on foreign sales supposedly caused by the defendant's s own domestic internal uses); *see also Brumfield, Tr. for Ascent Tr. v. IB LLC*, 586 F. Supp. 3d 827, 839-40 (N.D. Ill. 2022) (excluding expert opinions that "[defendant's] foreign conduct of distributing the infringing [accused software] tool to customers outside the United States was the direct, foreseeable result of [defendant's] domestic acts of infringements, i.e., making [accused software] at its headquarters in the United States."). The inclusion of foreign sales as royalty base contributed to the jury's legal error and was legal error itself. Remittitur or a new trial is thus warranted.

### F. The Jury's Award Was Erroneously Derived From Damages Theories That Did Not Account For The Real-World Evidence Of Usage And Thus Warrants A New Trial, Or At Least A Remittitur.

"Consideration of evidence of usage after infringement started can, under appropriate circumstances, be helpful to the jury and the court in assessing whether a royalty is reasonable" and "[t]he damages award ought to be correlated, in some respect, to the extent the infringing method is used by consumers." *Lucent Techs.*, 580 F.3d at 1333-34 (reversing JMOL denial and vacating damages award based on lump-sum reasonable royalty of almost $360 million because patentee could not show substantial usage of the feature to support magnitude of royalty rate the jury applied). Accounting for actual usage is especially appropriate here because the accused CDH software includes dozens of many other features beyond the accused erasure coding feature. *See, e.g.*, Trial Tr. at 719:18-721:24 [Ramchandran].

The award of $240 million, allocating 50% of the value of CDH to the erasure coding functionality, is simply contradicted by evidence of actual usage. The record evidence shows that only 2.3% of CDH customers had even enabled erasure coding at least once and more specifically, that only 0.242% of the customers' data storage clusters had erasure coding enabled at least once.

Trial Tr. at 791:12-792:16, 794:23-797:6 [Martinez]. StreamScale presented no credible evidence rebutting this data. Instead, Mr. Weinstein ignored the issue of usage entirely and relied solely on Dr. Conte's technical apportionment rate. *Realtime Data, LLC v. Oracle Am., Inc.*, 2017 WL 11574028, at *5 (E.D. Tex. Mar. 30, 2017) (noting that a damages expert cannot "simply rely on the technical value [a technical expert] ascribes to the infringing features of the accused products in determining a proper apportionment value" without economic analysis).

Therefore, even setting aside all other defects of Mr. Weinstein's damages calculations addressed above, the evidence cannot support an award greater than $2.874 million (Trial Tr. at 797:7-799:6 [Martinez] (opining that damages, even including the improperly included foreign sales, should not exceed $2.874 million based on the CDH revenue multiplied by the established usage percentage of 0.242%)). *Lucent Techs.*, 580 F.3d at 1327 ("a minimally used feature, with all else being equal, will usually command a lower lump-sum payment."). The award of $240 million was derived from the damages analysis advocated by Mr. Weinstein, which did not account for actual usage in any way. Accordingly, the jury's verdict should be vacated, or alternatively, if error is found on this ground alone, the jury's award should be remitted to no more than $2.874 million. Indeed, applying the appropriate 1-2% apportionment that represents the value attributable to the optional erasure coding feature compared to the entire CDH software with dozens of other valuable features (*see* Trial Tr. at 719:13-725:17 [Ramchandran]), damages should not exceed $57,480. Trial Tr. at 799:7-802:14 [Martinez].

Finally, because StreamScale gave the jury multiple damages theories and it is impossible to know which the jury accepted, a new trial is required if the Court agrees with even one of the identified errors in those theories. *Muth v. Ford Motor Co.*, 461 F.3d 557, 564 (5th Cir. 2006).

## IV.     A NEW TRIAL IS REQUIRED DUE TO THE IMPROPER EXCLUSION OF THE 2010-2011 ISA-L CODE.

The Court should also grant a new trial because it erroneously precluded Cloudera from introducing or relying on Intel's 2010-2011 ISA-L code for any purpose, including as objective evidence of obviousness, at trial. Dkt. 312 (StreamScale's motion to preclude), Dkt. 316 (Cloudera's opposition), Dkt. 317 (StreamScale's reply), Dkt. 320 (motion hearing). Despite being precluded as "prior art" under 35 U.S.C. § 102(g) (pre AIA) (*see* Dkt. 303),[2] Intel's 2010-2011 ISA-L code should nonetheless be "relevant to obviousness as a secondary consideration." *See Monarch Knitting Mach. Corp. v. Sulzer Morat GmbH*, 139 F.3d 877, 884 (Fed. Cir. 1998); *see also Medtronic Vascular Inc. v. Abbott Cardiovascular Sys., Inc.*, 614 F. Supp. 2d 1006, 1028-29 (N.D. Cal. 2009), *amended on reconsideration*, 2009 WL 1764749 (N.D. Cal. 2009) (denying motion for summary judgment motion that reference that could not qualify as § 102(g) prior art was *per se* inadmissible, ruling that the reference could be used as evidence showing the state of the art or contemporaneous invention for purposes of assessing the obviousness of the claimed invention even though it could not be used as § 102/103 prior art).

Consistent with Dr. Long's expert report, Cloudera intended to rely on the 2010-2011 ISA-L code to show contemporaneous independent invention. "Independently made, simultaneous inventions, made within a comparatively short space of time, are persuasive evidence that the claimed apparatus was the product only of ordinary mechanical or engineering skill." *George M. Martin Co. v. Alliance Mach. Sys. Int'l LLC*, 618 F.3d 1294, 1305 (Fed. Cir. 2010) (cleaned up).

The "contemporaneous independent invention" <u>need not be prior art to be relevant objective evidence of obviousness</u>. *Monarch*, 139 F.3d at 884 ("These needles do not qualify as 'prior art' under 35 U.S.C. § 102 or § 103(a), but are relevant to obviousness as a secondary consideration."). In *Trustees of Columbia Univ. in City of New York v. Illumina, Inc.*, 620 F. App'x

---

[2] Cloudera preserved its objections to the preclusion of the 2010-2011 ISA-L code as prior art under 35 U.S.C. § 102(g) in its filing at Dkt. No. 239.

4892-8991-1442

916 (Fed. Cir. 2015), the Federal Circuit explained why products that are not prior art are nevertheless relevant to determining if an invention was obvious:

> Columbia University first responds that the activities of Solexa and Amersham "are not prior art." This response reflects confusion over the difference between simultaneous invention on the one hand and anticipation and obviousness on the other. If simultaneous invention were only relevant where the object of the simultaneous invention constituted prior art, it would be analyzed under 35 U.S.C. § 102 and as part of the second *Graham* factor (i.e., as part of a determination of the "differences between the prior art and the claims at issue") under 35 U.S.C. § 103. As a secondary consideration, however—which falls under the fourth *Graham* factor—simultaneous invention is relevant when it occurs within a short space of time from the date of invention, and "is strong evidence of what constitutes the level of ordinary skill in the art."

*Id.* at 929-30 (citations omitted). Indeed, the precise situation here—whether suppressed/concealed prior art can nevertheless be objective evidence of obviousness—was directly addressed in *Medtronic Vascular Inc. v. Abbott Cardiovascular Sys., Inc.*, 614 F. Supp. 2d 1006 (N.D. Cal. 2009), amended on reconsideration on other grounds, 2009 WL 1764749 (N.D. Cal. June 22, 2009). In *Medtronic*, the court held that activities which were suppressed or concealed, and therefore unavailable under § 102(g), were still admissible as evidence of contemporaneous invention:

> while Medtronic correctly suggests that the references of the designs mentioned do not qualify as invalidating prior work under section 35 U.S.C. § 102(g) or as prior art under 35 U.S.C. § 103, a summary judgment ruling that the references are inadmissible per se is inappropriate, as the references may nonetheless be admissible as evidence of contemporaneous invention going to the level of ordinary knowledge or skill in the art, or evidencing secondary considerations of obviousness.

614 F. Supp. 2d at 1028-29 (emphasis added); *see also Newell Cos., Inc. v. Kenney Mfg. Co.*, 864 F.2d 757, 766 n.12 (Fed. Cir. 1988) (evidence "not technically 'prior art'" admissible to show "others of ordinary skill in the art had, prior to [the] invention," proposed similar solutions).

Similarly, the law is clear that evidence of simultaneous invention need not be an anticipation reference—i.e., it need not disclose every element of an asserted claim—to be relevant. Instead, the evidence can just pertain to the allegedly "novel" features of the claimed invention. *See, e.g.*, *Trustees of Columbia Univ.*, 620 F. App'x at 929 (determining that non-prior art that

15

only purportedly taught "the novel features" of the "patent claims" was relevant evidence of simultaneous invention). This makes complete sense—if a reference or system discloses every element of a patent claim, then it would be "primary" evidence of invalidity (anticipation), not a "secondary" consideration of obviousness. The excluded Intel's 2010-2011 ISA-L code shows that Intel invented the same or very similar inventions—and certainly the purportedly novel aspect of "accelerating" known erasure coding—around the same time that the subject matter of the asserted patents was purportedly invented. This evidence was a key part of Cloudera's invalidity defense. But the jury was deprived of that critical evidence, and Cloudera was prejudiced in its ability to present its invalidity defense. The remedy is a new trial on invalidity to allow Cloudera to present Intel's 2010-2011 ISA-L code.

## V.    A NEW TRIAL IS REQUIRED UNDER THE CORRECT CONSTRUCTION OF "CONFIGURED TO" AND THE PREAMBLE OF THE '296 PATENT.

As StreamScale's infringement theory evolved, it became clear that leaving "configured to" unconstrued failed to resolve the parties' dispute over plain and ordinary meaning. Cloudera therefore requested an explicit construction: "a claim element reciting a structure 'configured to' perform a function is infringed only if the accused structure is actually set to perform the function, as opposed to merely capable of performing the function." Dkt. 207 at 17-18; *see* Dkt. 235 at 17-19; Dkt.262 at 9-10 (further briefing and argument). The Court did not construe the term. Dkt. 303.

Given the parties' dispute, however, the result was that they effectively argued claim construction to the jury, presenting expert testimony on the term "configured to." *See, e.g.*, Trial Tr. at 205:2, 206:2-12 (Dr. Conte); at 712:13-718:6 (Dr. Ramchandran). That was improper. "When the parties raise an actual dispute regarding the proper scope of the[] claims, the court, not the jury, must resolve that dispute." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008). At a minimum, a new trial, based on a construction by the Court

resolving the proper scope of the term "configured to," is required.

Likewise, the parties disputed whether the hardware elements recited in the preambles of the asserted claims of the '296 Patent are limiting. Cloudera requested a construction that these elements are limiting. Dkt. 207 at 17-18; *see also* Dkt. 235 at 17-19; Dkt.262 at 9-10 (further briefing and argument). The Court did not construe the preambles. For the same reasons, a new trial based on a construction of the preambles by the Court is required.

## VI.    A NEW TRIAL ON DAMAGES SHOULD BE GRANTED IF ANY PORTION OF THE JURY'S INFRINGEMENT VERDICT IS REVERSED.

There is no evidence in the record regarding StreamScale's allocation of damages between each of the Asserted Claims. Indeed, Mr. Weinstein refused to do so even as he acknowledged that each of the asserted patents had independent value. Trial Tr. at 385:11-386:13. Accordingly, if the Court grants Cloudera judgment as a matter of law as to non-infringement or invalidity of any of the Asserted Claims, a new trial should be granted for the reevaluation of damages. *See NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1326 (Fed. Cir. 2005) (reversing infringement as to some but not all claims and instructing district court to "determine the effect of any alteration of the jury verdict" on the damages award since "the jury verdict did not specify the amount of infringing sales attributed to each individual patent claim"); *see also i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 849 (Fed. Cir. 2010) (the court "must set aside a general verdict if the jury was told it could rely on any of two or more independent legal theories, one of which was defective"); *SEB S.A. v. Montgomery Ward & Co.*, 594 F.3d 1360, 1374 (Fed. Cir. 2010).

## VII.    STREAMSCALE'S IMPROPER CLOSING REQUIRES A NEW TRIAL.

The Fifth Circuit has noted that while counsel is afforded "reasonable latitude" in closing, a new trial is necessary in order to preserve substantial justice when improper remarks by counsel cause a jury verdict to be influenced by passion and prejudice. "[A]wards influenced by passion and prejudice are the antithesis of a fair trial." *Whitehead v. Food Max of Miss., Inc.*, 163 F.3d

265, 276 (5th Cir. 1998). When closing arguments "exceed[] the limits of advocacy as to cause a prejudicial verdict," a new trial is warranted. *Westbrook v. Gen. Tire & Rubber Co.*, 754 F.2d 1233, 1238 (5th Cir. 1985). Here, StreamScale's closing included a conscious and deliberate appeal to the jury's prejudices and passions. These improper statements necessitate a new trial, including 'to preserve substantial justice.'" *Whitehead*, 163 F.3d at 276.

StreamScale's counsel made repeated false characterizations about evidence—including misleading the jury that the erasure coding functionality of CDH is enabled by default, specifically pointing to DX-83, which is a Cloudera customer manual teaching customers the steps for enabling erasure coding from the default disabled status. *See, e.g.*, Trial Tr. at 953:14-954:3, 958:20-25 (StreamScale's counsel mischaracterizing DX-83). This assertion was clearly in contradiction with testimony in the record. *See, e.g.*, Trial Tr. at 444:23-445:18 (Mr. Krishnamoorthy testifying about the content of DX-83). Indeed, StreamScale's own expert, Dr. Conte, acknowledged that "by default, erasure coding is disabled." *Id.* at 203:20-204:4. StreamScale's counsel deliberately misrepresented this critical point that erasure coding is disabled by default in CDH.

StreamScale's closing argument not only misrepresented the evidence at trial, it was also exceedingly prejudicial. StreamScale's counsel told the jury Cloudera was a fraud, and improperly imposed his personal assessment of credibility upon the jury. Trial Tr. at 955:23-25 ("Shame on Cloudera. Shame on Cloudera to force [employees] to say things that have no connection to what the documents actually show."); 956:6-9 ("Mr. Krishnamoorthy and Dr. Chuang. I understand this. They have children. Cloudera's their employee (sic). You have to tow your employer's line. That's how reality works."). Such significant and prejudicial statements lacked any evidentiary basis.

Moreover, StreamScale's counsel concluded his closing with the following:

> We are an imperfect union. We can make ourselves a more perfect union. One of the ways we make ourselves a more perfect union is that when <u>we as citizens, we as the people, have the ability to protect the least among us, the small companies</u>

18

<u>and small inventors</u> that our founders created the patent system for, we take this. We take this opportunity.

Ladies and gentlemen of the jury, a verdict for anything less than Mr. Weinstein provided to you is Cloudera walks out of this courtroom, <u>calls the private equity entity that owns it, and says, we got away with it</u>.

Trial Tr. at 992:14-25 (emphases added). Such "pleas intended to evoke a sense of community loyalty, duty and expectation" "serve no proper purpose" and warrant a new trial. *Westbrook*, 754 F.2d at 1239; *see also Whitehead*, 163 F.3d at 277 ("Arguments which invite a jury to act on behalf of a litigant become improper 'conscience of the community' arguments when the parties' relative popular appeal, identities, or geographical locations are invoked to prejudice the viewpoint of the jurors."); *Loose v. Offshore Nav., Inc.*, 670 F.2d 493, 496 (5th Cir. 1982) (granting new trial where statements "ask[ed] jurors to put themselves in the plaintiff's position"). StreamScale exhorted the jury to punish Cloudera, calling upon the jurors not to let Cloudera "get away with it," and that was also highly prejudicial. *Caudle v. D.C.*, 707 F.3d 354, 361-363 (D.C. Cir. 2013) (ordering new trial where counsel made arguments that "diverted the jury's attention from its duty to decide the case based on the facts and the law instead of emotion, personal interest or bias").

These significant and prejudicial statements in StreamScale's closing argument rose to the "level of severity that would require a new trial to avoid a miscarriage of justice." *Baisden v. I'm Ready Prods., Inc*., 693 F.3d 491, 509 n.17 (5th Cir. 2012). Counsel painted Cloudera as some villainous, deep-pocketed, private equity firm seeking to bully small inventors. It misled the jury about critical evidence. It espoused groundless credibility criticisms relating to Cloudera's witnesses. It sought to enflame the jury's emotions and asked the jury to punish Cloudera. Combined, StreamScale's closing argument is "seriously prejudice[d]" and warrants a new trial. *Edwards v. Sears, Roebuck and Co*., 512 F.2d 276, 286 (5th Cir. 1975).

**VIII.    A NEW TRIAL IS WARRANTED ON ALL ISSUES PRESERVED IN THE RULE 50(B) MOTION.**

To the extent the Court denies Cloudera's concurrently filed Rule 50(b) Motion, Cloudera also moves for a new trial on all other grounds asserted in the Rule 50(b) Motion. Specifically, the Court should grant a new trial on infringement because StreamScale failed to present legally sufficient evidence that the accused CDH software made and sold by Cloudera contain the required hardware or computer-readable medium elements (*see* Rule 50(b) Motion, Section III.A), or that the accused the accused CDH software made and sold by Cloudera is "configured to" perform the claimed functionality (*see* Rule 50(b) Motion, Section III.B). Separately, StreamScale failed to advance any theory or evidence at trial concerning infringement by "offering to sell" and/or "importing" the accused products into the United States. Rule 50(b) Motion, Section III.C.

In addition, a new trial on infringement is warranted because StreamScale failed to present legally sufficient evidence of Cloudera's infringement by "use," either by Cloudera's internal actions, because StreamScale failed to present an infringement analysis for various elements of each Asserted Claim, or by control over its customers, because StreamScale presented no evidence that Cloudera exercises control over customers' installation of the accused CDH software on their own hardware or their use of the software. Rule 50(b) Motion, Section III.D-E.

Cloudera also requests a new trial because the evidence is overwhelming that the asserted claims are obvious in light of U.S. Patent No. 7,343,389 ("Macy," DX-63) alone and/or in combination with the Plank reference (DX64 and DX-65) and StreamScale presented no evidence to rebut Cloudera's showing.  Rule 50(b) Motion, Section IV.

**IX.    CONCLUSION**

For the reasons provided above, Cloudera respectfully requests that the Court grant the relief requested herein.

4892-8991-1442

Dated:  November 29, 2023

Respectfully submitted,

By:  _/s/ Christopher Kao_____
Christopher Kao (*admitted*)
  christopher.kao@pillsburylaw.com
Brock S. Weber (*admitted*)
  brock.weber@pillsburylaw.com
Surui Qu (*pro hac vice*)
  surui.qu@pillsburylaw.com
John Steger (*pro hac vice*)
  johh.steger@pillsburylaw.com
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
4 Embarcadero Center, 22nd Floor
San Francisco, CA  94111
Telephone:  415.983.1000
Facsimile:   415.983.1200

Steven P. Tepera (TX Bar No. 24053510)
  steven.tepera@pillsburylaw.com
Benjamin L. Bernell (TX Bar No. 24059451)
  ben.bernell@pillsburylaw.com
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
401 Congress Avenue, Suite 1700
Austin, TX  78701-3797
Telephone: 512.580.9600
Facsimile:  512.580.9601

Audrey Lo (*pro hac vice*)
  audrey.lo@pillsburylaw.com
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
2550 Hanover Street
Palo Alto, CA  94304
Telephone: 650.233.4500

*Counsel for Defendant*
*Cloudera, Inc.*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's CM/ECF filing system and/or electronic mail on November 29, 2023.

*/s/ Christopher Kao*

4892-8991-1442