**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| STREAMSCALE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 6:21-cv-00198-ADA |
| | ) | |
| CLOUDERA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**STREAMSCALE'S OPPOSITION TO DEFENDANT'S RULE 50(b)**
**<u>MOTION FOR JUDGMENT AS A MATTER OF LAW</u>**

## TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................................1

II.   ARGUMENT .......................................................................................................1

      A.    Substantial Evidence Supports the Jury's Infringement Verdict. ........................ 1

            1.    Cloudera Infringes the Asserted System Claims By Making and Using
                  and Infringes the Asserted Computer Readable Storage Media Claims
                  By Making, Using, and Selling. ................................................................... 1

                  a.    Cloudera Infringes the System Claims. ........................................... 2

                  b.    Cloudera Infringes the Non-Transitory Computer-Readable
                        Storage Medium Claims. ................................................................ 5

            2.    Cloudera Sells A "Non-Transitory Computer-Readable Storage
                  Medium" As Claimed in Claims 34–35 of the '296 Patent. ....................... 7

            3.    Cloudera's CDH Product Satisfies the "Configured to" Limitations. ...... 10

            4.    Cloudera "Uses" Under Section 271(a) When it Tests. ........................... 15

      B.    Substantial Evidence Supports the Jury's Validity Verdict. ............................... 16

      C.    Substantial Evidence Supports the Jury's Damages Verdict. .............................. 18

            1.    Mr. Weinstein Properly Used the Facebook Offer as Part of the
                  Hypothetical Negotiation. ......................................................................... 18

            2.    Mr. Weinstein's Alternative Damages Model was Proper. ...................... 19

            3.    Substantial Evidence Supports Damages from Cloudera's Internal
                  Action........................................................................................................ 19

III.  CONCLUSION...................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
694 F.3d 1312 (Fed. Cir. 2012).................................................................13

*Am. Home Assurance v. United Space All., LLC*,
378 F.3d 482 (5th Cir. 2004).....................................................................17

*AOS Holding Co. v. Bradford White Corp.*,
No. 18-412-LPS, 2021 WL 5411103 (D. Del. Mar. 31, 2021)..............20

*Apple, Inc. v. Motorola, Inc.*,
757 F.3d 1286 (Fed. Cir. 2014)..................................................................20

*Arsement v. Spinnaker Expl. Co.*,
400 F.3d 238 (5th Cir. 2005) ......................................................................4

*ATD Combusters, LLC v. Ameritube, LLC*,
No. 6:18-CV-00077-ADA-JCM, 2019 WL 7759503 (W.D. Tex. Oct. 10, 2019)....................4

*Avid Tech., Inc. v. Harmonic, Inc.*,
812 F.3d 1040 (Fed. Cir. 2016)..................................................................13

*Bayer HealthCare LLC v. Baxalta Inc.*,
989 F.3d 964 (Fed. Cir. 2021)....................................................................13

*Bicon, Inc. v. Straumann Co.*,
441 F.3d 945 (Fed. Cir. 2006).....................................................................6

*Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.*,
320 F.3d 1339 (Fed. Cir. 2003)..................................................................17

*Broadcom Corp. v. Qualcomm Inc.*,
543 F.3d 683 (Fed. Cir. 2008)....................................................................12

*Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*,
807 F.3d 1283 (Fed. Cir. 2015)...............................................................2, 8

*Catalina Mktg., Inc. v. Coolsavings.com, Inc.*,
289 F.3d 801 (Fed. Cir. 2002).....................................................................6

*Cirba Inc. v. VMware, Inc.*,
No. 19-742-GBW, 2023 WL 3151853 (D. Del. Apr. 18, 2023).............20

*CloudofChange, LLC v. NCR Corp.*,
   No. W-19-CV-00513-ADA, 2022 WL 15527756 (W.D. Tex. Oct. 27, 2022)..................16, 17

*CollegeNet, Inc. v. ApplyYourself, Inc.*,
   418 F.3d 1225 (Fed. Cir. 2005)...........................................................................................15

*East Coast Sheet Metal Fabricating Corp. v. Autodesk, Inc.*,
   No. 12-cv-517-LM, 2015 WL 226084 (D.N.H. Jan. 15, 2015) ...........................................9

*Fantasy Sports Props., Inc. v. Sportsline.com, Inc.*,
   287 F.3d 1108 (Fed. Cir. 2002)...........................................................................................15

*Finjan. VirnetX Inc. v. Apple Inc.*,
   792 F. App'x 796 (Fed. Cir. 2019) ......................................................................................15

*Finjan, Inc. v. Secure Computing Corp.*,
   626 F.3d 1197 (Fed. Cir. 2010)......................................................................................13, 15

*Flowers v. S. Reg'l Physician Servs. Inc.*,
   247 F.3d 229 (5th Cir. 2001) ................................................................................................4

*Georgia-Pacific Corp. v. United States Gypsum Co.*,
   195 F.3d 1322 (Fed. Cir. 1999)...........................................................................................15

*Global-Tech Appliances, Inc. v. SEB S.A.*,
   563 U.S. 754 (2011)...............................................................................................................1

*Graham v. John Deere Co. of Kansas City*,
   383 U.S. 1 (1966).................................................................................................................16

*Hearing Components, Inc. v. Shure, Inc.*,
   No. 9:07-CV-104, 2009 WL 593836 (E.D. Tex. Mar. 6, 2009) ...........................................17

*Hewlett-Packard Co. v. Mustek Sys., Inc.*,
   340 F.3d 1314 (Fed. Cir. 2003)...........................................................................................13

*Hilgraeve Corp. v. Symantec Corp.*,
   265 F.3d 1336 (Fed. Cir. 2001)...........................................................................................15

*Infernal Tech. LLC v. Activision Blizzard Inc.*,
   No. 3:18-cv-01397-M, 2021 WL 4391250 (N.D. Tex. Sept. 16, 2021) .................................20

*Intelligent Agency, LLC v. 7-Eleven, Inc.*,
   No. 4:20-cv-0185-ALM, 2022 WL 760203 (E.D. Tex. Mar. 11, 2022)....................................6

*Interwoven, Inc. v. Vertical Comput. Sys.*,
   No. CV 10-04645 RS, 2014 WL 490996 (N.D. Cal. Feb. 3, 2014)........................................20

*In re Isbell Recs., Inc.*,
    774 F.3d 859 (5th Cir. 2014) ..................................................................................4

*Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*,
    688 F.3d 1342 (Fed. Cir. 2012).............................................................................16

*Laxton v. Gap Inc.*,
    333 F.3d 572 (5th Cir. 2003) ................................................................................16

*Lexmark Int'l, Inc. v. Impression Prods., Inc.*,
    816 F.3d 721 (Fed. Cir. 2016) (en banc), *rev'd and remanded* 581 U.S. 360 (2017) ...............1

*Liberty Mut. Ins. Co. v. Falgoust*,
    386 F.2d 248 (5th Cir. 1967) ................................................................................17

*McGinnis v. Am. Home Mortg. Serv., Inc.*,
    817 F.3d 1241 (11th Cir. 2016) ...............................................................................4

*Mentor H/S Inc. v. Med. Device All., Inc.*,
    244 F.3d 1365 (Fed. Cir. 2001).........................................................................16, 18

*Microsoft Corp. v. AT&T Corp.*,
    550 U.S. 437 (2007)..............................................................................................10

*Mozingo v. Correct Mfg. Corp.*,
    752 F.2d 168 (5th Cir. 1985) ..................................................................................4

*Nichols v. Reliance Stand. Life Ins. Co.*,
    924 F.3d 802 (5th Cir. 2019) ................................................................................17

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
    521 F.3d 1351 (Fed. Cir. 2008).........................................................................12, 13

*OneBeacon Ins. Co. v. T. Wade Welch & Assocs.*,
    841 F.3d 669 (5th Cir. 2016) ..................................................................................4

*Ormco Corp. v. Align Tech., Inc.*,
    609 F. Supp. 2d 1057 (C.D. Cal. 2009) .................................................................9

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) (en banc)............................................................12

*Puga v. RCX Sols., Inc.*,
    922 F.3d 285 (5th Cir. 2019) ..................................................................................4

*Robertson v. Bell Helicopter Textron, Inc.*,
    32 F.3d 948 (5th Cir. 1994) ....................................................................................1

iv

*Roche Prods., Inc. v. Bolar Pharm. Co.*,
  733 F.2d 858 (Fed. Cir. 1984)........................................................................1, 3

*Sapphire Crossing LLC v. Abbyy USA Software House, Inc.*,
  2020 WL 6318716 (N.D. Cal. Oct. 28, 2020).........................................................20

*Summit 6, LLC v. Samsung Elecs. Co.*,
  802 F.3d 1283 (Fed. Cir. 2015)...........................................................................13

*TecSec, Inc. v. Adobe Inc.*,
  978 F.3d 1278 (Fed. Cir. 2020)......................................................................19, 20

*TomTom, Inc. v. Adolph*,
  790 F.3d 1315 (Fed. Cir. 2015)............................................................................6

*Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*,
  546 U.S. 394 (2006)...........................................................................................4

*VLSI Tech. LLC v. Intel Corp.*,
  -- F.4th --, 2023 WL 8360083 (Fed. Cir. Dec. 4, 2023) ...........................................13

*Vocalife LLC v. Amazon.com, Inc.*,
  No. 2:19-cv-00123-JRG, 2020 WL 5815950 (E.D. Tex. Sept. 30, 2020) ............................20

*Waymark Corp. v. Porta Sys. Corp.*,
  245 F.3d 1364 (Fed. Cir. 2001).....................................................................2, 3, 16

*Yeti Coolers, LLC v. RTIC Coolers, LLC*,
  No. A-15-cv-597-RP, 2017 WL 404519 (W.D. Tex. Jan. 27, 2017).......................................12

## **Statutes**

35 U.S.C. § 271 ........................................................................................15

35 U.S.C. § 271(a) ..............................................................................*passim*

35 U.S.C. § 271(e) ......................................................................................2

35 U.S.C. § 271(f) ......................................................................................9

## I.    INTRODUCTION

At trial, the jury heard substantial evidence from which it found that (i) Cloudera infringed claims 34–35 of the '296 Patent, claim 1 of the '759 Patent, and claim 12 of the '259 Patent (collectively, the "Asserted Claims"), (ii) the Asserted Claims were not invalid, and (iii) Cloudera was liable for $240 million in damages for its patent infringement. (ECF No. 340.) The Court properly entered Final Judgment on the jury's verdict. (ECF No. 349.) Substantial evidence supports every part of the jury's verdict and the Court's subsequent Final Judgment. Thus, the Court should deny Cloudera's Rule 50(b) Motion for Judgment as a Matter of Law.

## II.    ARGUMENT

### A.    Substantial Evidence Supports the Jury's Infringement Verdict.

StreamScale presented substantial evidence to the jury on the issue of Cloudera's infringement. That evidence was of such quality and weight that the jury returned a verdict that Cloudera infringed all four of the Asserted Claims of StreamScale's Patents. *See Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 951 (5th Cir. 1994) ("If there is substantial evidence—that is, evidence of such quality and weight that reasonable and fair-minded jurors might reach a different conclusion—then the motion should have been denied.").

1.    <u>Cloudera Infringes the Asserted System Claims By Making and Using and Infringes the Asserted Computer Readable Storage Media Claims By Making, Using, and Selling.</u>

"[W]hoever without authority makes, uses, offers to sell, or sells any patented invention" infringes a United States Patent. 35 U.S.C. § 271(a). Those acts—making, using, offering to sell, and selling—are stated in the disjunctive. Thus, performance of "any one of the listed acts" is infringement. *Lexmark Int'l, Inc. v. Impression Prods., Inc.*, 816 F.3d 721, 732 (Fed. Cir. 2016) (en banc), *rev'd and remanded* 581 U.S. 360 (2017) (citing *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 760 (2011)); *Roche Prods., Inc. v. Bolar Pharm. Co.*, 733 F.2d 858, 861 (Fed.

Cir. 1984), *superseded-in-part by statute*, 35 U.S.C. § 271(e) ("It is beyond argument that

performance of only one of the three enumerated activities is patent infringement."); *see Carnegie*

*Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 807 F.3d 1283, 1306 (Fed. Cir. 2015). Indeed, the Court

has already determined that Cloudera "makes" the infringing products in the United States, (ECF

No. 303 at 1 (granting ECF No. 199)), and Cloudera does not presently challenge that holding.

>            a.    *Cloudera Infringes the System Claims.*

Claim 1 of the '759 Patent and claim 12 of the '259 Patent are system claims. (PTX-3 at 26;

PTX-4 at 28–29.) The jury heard substantial evidence that Cloudera infringes the asserted system

claims when Cloudera builds and tests (i.e., uses) the CDH product.[1] For example, Dr. Thomas

Conte explained that Cloudera infringed the system claims by building and testing CDH:

> Q.    And what is the difference with a system claim?
> A.    The system claim requires -- well, you build the system. You put all the pieces together in order to perform, in this case, accelerated error-correcting code.
> Q.    And did you analyze whether Cloudera has actually built and used that system in its own operations?
> A.    They have. And here's the testing document on the right that we talked about before. They build and use in their own operations the -- and I think I've gone one step too far. So let me go back here.
>            They build and use in their operations CDH and test the accelerated erasure coding.

(Trial Tr. at 147; *see id.* at 167 (summarizing Dr. Conte's opinion that Cloudera makes, tests, and

uses the system described in claim 12 of the '259 Patent), 177 (summarizing Dr. Conte's opinion

that Cloudera makes, uses, and tests the system described in the '759 Patent, claim 1), 229–33

---

[1] Cloudera asserts that it does not infringe the system claims because it does not make, sell, or otherwise provide its customers with hardware components. (ECF No. 360 at 3.) But, as explained in StreamScale's Opposition to Cloudera's Motion for Summary Judgment of Non-Infringement (ECF No. 235, incorporated herein by reference), StreamScale's infringement claims with respect to claim 1 of the '759 Patent and claim 12 of the '259 Patent are based on Cloudera's testing (i.e., use), which is a distinct act of infringement under § 271(a). *E.g., Waymark*, 245 F.3d at 1366.

(describing Cloudera's build and testing processes), 447–49 (describing Cloudera's testing processes), 466–67 (same), 474–76 (same), 740 (describing Cloudera's testing); PTX-196 at 3 (outlining the hardware and software setup used by Cloudera in its testing); PTX-2280 at 6–7 (describing reference architecture and recommended physical components).)

> Q.     And remind us, when does Cloudera test and build and use the accused CDH system specifically with the erasure coding enabled?
> A.     Every night.

(Trial Tr. at 212.)

> Q.     And remind us, did you see evidence that Cloudera itself actively enables erasure coding when it performs its testing?
> A.     Yes. Clearly. They enable it because they test the accelerated erasure code library's performance.

(*Id.* at 217–218.) In fact, Cloudera's expert witness, Dr. Kannan Ramchandran, agreed Cloudera uses CDH when it tests the product and did not opine that Cloudera's testing was not infringing:

> Q.     The next I want to talk about now is you understand that Cloudera does testing of erasure coding, correct?
> A.     Yes.
> Q.     And you didn't tell the ladies and gentlemen of the jury that when it tests erasure coding, it doesn't infringe, correct?
> A.     No.
> Q.     And in fact, as part of the validation process, Cloudera must test erasure coding, correct?
> A.     Yes.

(*Id.* at 740.)

Cloudera contends that the system claims require hardware. (*E.g.*, ECF No. 360 at 3–4.) As Dr. Conte noted in his conclusions about Cloudera's testing, Cloudera supplies that hardware when it makes & tests CDH. (*E.g.*, Trial Tr. at 147, 212, 217–218.) And that testing is "use" under § 271(a). *Waymark Corp. v. Porta Sys. Corp.*, 245 F.3d 1364, 1366 (Fed. Cir. 2001) (citing *Roche*, 733 F.2d at 863 (holding that "testing is a use of the invention that may infringe under § 271(a)").

Cloudera also contends that "StreamScale presented incomplete evidence of testing for

some, but not all, Asserted Claim limitations," particularly faulting StreamScale and Dr. Conte for not relying on a single document, PTX-196, for every limitation of the Asserted Claims. (ECF No. 360 at 10–11.) Infringement is unlike alleged anticipation; proof of infringement need not be sourced from one and only one document. Moreover, the jury heard substantial evidence that the product Cloudera uses when it tests includes every element of every Asserted Claim. (*E.g.*, Trial Tr. at 134–177.) This is particularly important here, where the product that Cloudera tested was a software product comprised of computer instructions that, when compiled by Cloudera (prior to testing) do not change when used (including by Cloudera). (Trial Tr. at 131–32.)

Finally, as an entirely separate, independent basis for infringement, Cloudera controls and directs the system. Cloudera's argument that it allegedly does not control or direct its customers (ECF No. 360 at 11–12) is both procedurally and factually unfounded. *First*, Cloudera failed to make this argument in its Rule 50(a) Motion and, therefore, it is waived and cannot be raised on a "***renewed***" JMOL Motion under Rule 50(b). *E.g.*, *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 290 (5th Cir. 2019) (quoting *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 172 (5th Cir. 1985)) (citing *In re Isbell Recs., Inc.*, 774 F.3d 859, 867 (5th Cir. 2014)) ("[C]ourts prohibit parties from using a Rule 50(b) motion to 'assert a ground that was not included in the [original] motion.'"); *OneBeacon Ins. Co. v. T. Wade Welch & Assocs.*, 841 F.3d 669, 676 (5th Cir. 2016) (citing *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 398 n.1 (2006) and *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 238 (5th Cir. 2001)) ("Any argument made in a renewed motion for judgment as a matter of law under Rule 50(b) must have been previously made in a motion for judgment as a matter of law under Rule 50(a)"); *ATD Combusters, LLC v. Ameritube, LLC*, No. 6:18-CV-00077-ADA-JCM, 2019 WL 7759503, at *3 (W.D. Tex. Oct. 10, 2019) (citing *Arsement v. Spinnaker Expl. Co.,* 400 F.3d 238, 247 (5th Cir. 2005) and *McGinnis v. Am. Home*

*Mortg. Serv., Inc.*, 817 F.3d 1241, 1262 (11th Cir. 2016)) (holding that a party "failed to raise this issue in its original motion for judgment as a matter of law; thus, this argument has been waived"). *Second*, Cloudera is simply wrong that Cloudera does not "exercise[] any control over customers' choices or hardware or software configurations." (ECF No. 360 at 11.) Indeed, Cloudera has extensive hardware requirements that it imposes on its customers, and those requirements also specify configurations for maximum and minimum numbers of processors and drives for both NameNodes and DataNodes, as well as maximum overall supported memory capacity for DataNodes. (PTX-2281 at 4–5.)

> b.    *Cloudera Infringes the Non-Transitory Computer-Readable Storage Medium Claims.*

Claims 34–35 of the '296 Patent are non-transitory computer-readable storage medium claims. (PTX-1 at 28.) Unlike the system claims, claims 34–35 do not require hardware, as StreamScale has previously explained. (ECF No. 235 at 6–10, incorporated herein by reference.) And the Court has already correctly rejected Cloudera's earlier contention that claims 34–35 require hardware. (ECF No. 303 at 2 (denying ECF No. 207).)

Claims 34–35 of the '296 Patent claim "[a] non-transitory computer-readable storage medium containing a computer program comprising a plurality of computer instructions . . . ." (PTX-1 at 28.) Those computer instructions are for the purpose of "performing accelerated error-correcting code (ECC) processing on a computing system comprising a processing core for accessing instructions and data from a main memory," as described in the preamble. (*Id.*) Importantly, the claims relate to computer instructions that achieve the claimed capabilities "***when executed*** on the computing system," (*id.* (emphasis added)); they do not claim the processing core or main memory elements themselves.

Cloudera reads the terms "processing core" and "main memory" in the preamble of

claim 34 in complete isolation to suggest that they are hardware limitations. (ECF No. 360 at 4–5.) "'[W]hether to treat a preamble as a claim limitation is determined on the facts of each case in light of the claim as a whole and the invention described in the patent.'" *TomTom, Inc. v. Adolph*, 790 F.3d 1315, 1323 (Fed. Cir. 2015) (quoting *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 952 (Fed. Cir. 2006)). Claim 34's preamble references to "processing core" and "main memory" are not limitations on the scope of the claim. Rather, the preamble states the purpose and intended use of the invention—performing accelerated ECC processing on an appropriate computing system where the computer instructions will be used or operate "when executed." "[A] preamble is not limiting 'where a patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention.'" *TomTom*, 790 F.3d at 1323 (quoting *Catalina Mktg., Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002)).

The preamble here is not dissimilar from the preamble at issue in *Intelligent Agency, LLC v. 7-Eleven, Inc.*, No. 4:20-cv-0185-ALM, 2022 WL 760203, at *8–9 (E.D. Tex. Mar. 11, 2022). There, the court held that a "computer software system having a set of instructions stored in ***a non-transitory computer-readable medium***" claim's preamble reference to a purpose—"for controlling at least one general purpose digital computer in performing desired functions"—was not limiting. *Id.* (emphasis added). So too here. Claim 34's preamble reference to a "processing core" and "main memory" come in the context of describing the purpose or intended use of the invention, which is "for performing accelerated error-correcting code (ECC) processing on a computing system comprising a processing core for accessing instructions and data from a main memory . . . ***when executed*** on the computing system." (PTX-1 at 28 (emphasis added).)

The jury heard substantial evidence that Cloudera infringes claims 34–35 of the '296 Patent when Cloudera makes, sells, and tests (i.e., uses) the CDH product:

Q.    Now, let's turn next, then, to the topic of the accused Cloudera products.

A.    Okay. So the accused product is called Cloudera CDH. And Cloudera makes, tests, and sells CDH. And erasure coding is a major feature in CDH.

And here's a document from -- one of Cloudera's documents we talked about earlier, we introduced into evidence, where it talks about: Erasure coding, or EC, is a major feature delivered in Apache Hadoop and available in CDH 6.1 for use.

Q.    And that's PTX-196?

A.    That's correct.

(Trial Tr. at 127–28; *see, e.g.*, *id.* at 145–46 (summarizing Dr. Conte's opinion that Cloudera infringes claim 34 of the '296 Patent), 146 (summarizing Dr. Conte's opinion that Cloudera infringes claim 35 of the '296 Patent).)

2.    Cloudera Makes and Sells A "Non-Transitory Computer-Readable Storage Medium" As Claimed in Claims 34–35 of the '296 Patent.

The jury heard substantial evidence that Cloudera sells the CDH software through non-transitory computer-readable storage media, as claimed in claims 34–35 of the '296 Patent:

Q.    Okay. So I understand you to have said earlier that Cloudera sells software to its customers; is that right?

A.    Yes.

Q.    Okay. Does Cloudera sell that software copied onto any physical disks to customers?

A.    Yes.

Q.    Okay. And how so?

A.    So the way it works is when you go to download CDH, you're accessing actually a server, and in that server Cloudera has stored their software on a nontransitory computer readable medium. And so then you're paying for access to that, and then you download it from there.

(*Id.* at 192.) Cloudera's contention that the infringing CDH software is not provided in a non-transitory computer-readable storage medium fails for at least two reasons.

*First*, Cloudera **makes** the infringing non-transitory computer-readable storage medium in accordance with § 271(a), and does not suggest otherwise. (ECF No. 303 at 1 (granting ECF No. 199); *see* ECF No. 298 at 53:24–54:14.) Indeed, Cloudera has previously conceded that "a master copy of CDH is stored in the United States" after it is made. (ECF No. 253 at 3; *see* Trial

Tr. at 200–01, 237.) That infringing act is a necessary predicate to Cloudera's subsequent sales of the CDH product and is, alone, sufficient to support the jury's damages verdict because those sales are directly tied to Cloudera's acts of infringement. *See, e.g.*, *Carnegie Mellon*, 807 F.3d at 1306–07 (holding that the damages-measuring unit or action need not ***itself*** be an infringing unit or action). In addition to this Court's summary judgment ruling, the jury also heard substantial evidence about Cloudera's infringing acts of making and testing the CDH product as a prerequisite to its sales.

> Q.    Now, you mentioned that Cloudera actually sells that software, this accused product CDH.
>        Did you also have the opportunity to review documentation of some of Cloudera's own use in testing of the CDH?
> A.    Yeah. It's not a surprise that they test CDH. And I reviewed a document. And we'll be talking about it over here. And that is, I believe, 196. PTX-196. And it talks about how they set up their testing system, nine nodes, one named node, and all the other things we'll talk about.
> Q.    Why is it so important for Cloudera to test the products before they sell them?
> A.    Could you imagine selling something you didn't test?

(Trial Tr. at 132–33.)

> Q.    And remind us, when does Cloudera test and build and use the accused CDH system specifically with the erasure coding enabled?
> A.    Every night.

(Trial Tr. at 212.)

> Q.    That happens every night?
> A.    The build process runs every night. So new versions of the software are created every night.
> Q.    And where does that process occur?
> A.    We have release-and-build systems where it is automatically built every night.
> Q.    Does Cloudera test the erasure coding capability and functionality of its own products?
> A.    Yes. We have to test it.

(Trial Tr. at 229; *see id.* at 230–33 (describing Cloudera's manufacturing, testing, and validating processes for the infringing CDH product).

8

*Second*, that Cloudera distributes its infringing CDH product via download does not allow Cloudera to escape liability for its infringement of the non-transitory computer-readable storage medium claims. As described above and detailed at trial, Cloudera **makes** the infringing non-transitory computer-readable storage medium and **stores** it. Cloudera then sells access to that non-transitory computer-readable storage medium when it **sells** the infringing CDH product. (*E.g.*, Trial Tr. at 174–75, 192–93, 200.) Cloudera's customers use that access to copy the contents of Cloudera's non-transitory computer-readable storage medium to their own drive. (*E.g.*, *id.*)

Cloudera exalts form over substance when it argues that its customers "do not receive a physical medium from Cloudera storing CDH . . . ." (ECF No. 360 at 7.) As an initial matter, that is facially irrelevant to Cloudera's infringement via making and testing CDH. Moreover, regarding infringement via sales, that Cloudera "distribute[s] [CDH] electronically rather than on a CD-ROM is immaterial." *Ormco Corp. v. Align Tech., Inc.*, 609 F. Supp. 2d 1057, 1070 (C.D. Cal. 2009). Cloudera's reliance on *East Coast Sheet Metal Fabricating Corp. v. Autodesk, Inc.*, No. 12-cv-517-LM, 2015 WL 226084 (D.N.H. Jan. 15, 2015) is unavailing. (ECF No. 360 at 6.) The allegedly infringing product there actually consisted of two separate products, "a 'stand-alone' product and one or two 'add-on' products," both of which could be downloaded but neither of which, alone, would implicate infringement. *E. Coast Sheet Metal*, 2015 WL 226084, at *10. Here, in contrast, there is no issue of multiple, separate products interoperating for infringement. Moreover, the *East Cost Sheet Metal* court inappropriately focused on the act of downloading as allegedly relating to transitory information, instead of the access to the non-transitory computer-readable storage medium that a customer received. *See id.* at *17. The Supreme Court has specifically described software on "a CD-ROM drive or **downloaded from the Internet**" as examples of physical embodiments of software in a "component" for purposes of 35 U.S.C.

§ 271(f). *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 449 (2007) (emphasis added). If software downloaded from a non-transitory computer-readable storage medium can be a tangible "component" under Section 271(f), its sale can also be an infringement under Section 271(a).

        3.      <u>Cloudera's CDH Product Satisfies the "Configured to" Limitations.</u>

Claims 34 and 35 of the '296 Patent require "computer instructions for performing accelerated error-correcting code (ECC) processing on a computing system" with "the computer instructions being configured to implement an erasure coding system when executed on the computing system. . . . " (PTX-1 at 28.) Claim 1 of the '759 Patent requires computer instructions that "are configured to implement an erasure coding system . . . ." (PTX-3 at 26.) The record contains ample evidence concerning the plain-and-ordinary meaning of computer instructions "configured to" do something "when executed." For example, Dr. Conte testified:

> Q.    Now, with respect to the claim term that we've looked at today, "configured to," what is the plain and ordinary meaning to you of that term?
> A.    Well, instructions configured to, when executed, perform erasure coding means those are how the instructions are written.

(Trial Tr. at 204.)

> Q.    Is it your testimony that software is configured to do anything that it is capable of regardless of whether that functionality is enabled or disabled?
> A.    In part.
> Q.    Can you explain that?
> A.    Well, that -- so it's my testimony, it's my belief, and I think the claims are clear that the computer instructions are configured to perform what the claim calls accelerated error-correcting code, ECC, when they're executed.

(*Id.* at 206.) Even Cloudera's corporate representative, Wei-Chiu Chuang, explained that "configuration" is "a property in a software." (*Id.* at 221.) And the jury heard substantial evidence that Cloudera's CDH software is "configured to" perform all recited functions[2] "when executed"

---

[2] Claim 12 of the '259 Patent, the last of the Asserted Claims, does not use the claim language "configured to." (PTX-4 at 28–29.) It does, however, claim "[a] system adapted to use accelerated

or when "implement[ed]."

> [Q.]  So now why is that? Why does the source code get converted to zeros and ones for the computer?
>
> A.  Well, you have to convert it to zeros and ones. ***You have to configure it that way so that when those instructions are executed, the computer does the things that the software describes***.
>
> Q.  Now, once the computer instructions have been written and those zeros and ones have been set, does the configuration of zeros and ones ever change?
>
> A.  No. It does not.
>
> Q.  So ***in the CDH product, does it actually go out to the customer with all those zeros and ones already set***?
>
> A.  ***Yes***. It does. ***All this is contained in CDH***.

(Trial Tr. at 131–32 (emphases added).)

> Q.  So turning to the final piece, ***is the accused CDH software in fact configured to implement that erasure coding when executed***?
>
> A.  ***Yes. When you execute those instructions like the ones I showed you, it performs erasure coding, and it's accelerated erasure coding, like I discussed***. And this is that testing document. Again, I can't see the label, but I think it's 196.

(Trial Tr. at 137 (emphases added).)

> Q.  Now, have you seen -- were you here in court when Cloudera counsel made the argument that, well, unless a customer does something, this software capability is not present?
>
> A.  Yeah. ***So look at what the claim says. It says: The computer instructions being configured to implement an erasure coding system when executed on the computing system***.
>
>      So the instructions that I showed you, that's -- ***that's how they're configured. And when they're executed, I'll show you, it performs accelerated erasure coding***.
>
> Q.  So when Cloudera ships out that CDH software, when they make available to a customer the software for purchase, does the customer make the decision about whether the computer instructions are configured to implement the erasure coding system, or does Cloudera unilaterally make that choice?
>
> A.  ***Cloudera makes that choice. That's what they do when they compile and assemble the software***.

---

error-correcting code (ECC) processing . . . ." (*Id.* at 28.) In its Motion, Cloudera makes no argument regarding claim 12 of the '259 Patent's use of "adapted to" and not "configured to."

(Trial Tr. at 137–38 (emphases added).)[3] In an effort to avoid the jury's verdict, Cloudera suggests that *O2 Micro International Ltd. v. Beyond Innovation Technology Co.*, 521 F.3d 1351 (Fed. Cir. 2008), requires additional claim construction. (ECF No. 360 at 7–8.) ***Not so.***

*First*, this Court conducted claim construction early in this case and, at the time, no party sought construction of the "configured to" claim language, agreeing that it carried its plain and ordinary meaning. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc); *see Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 696 (Fed. Cir. 2008) ("The term 'selectively couples' was not construed by the district court because the parties agreed to let the ordinary meaning control."); *Yeti Coolers, LLC v. RTIC Coolers, LLC*, No. A-15-cv-597-RP, 2017 WL 404519, at *1 (W.D. Tex. Jan. 27, 2017) (citing *Phillips*, 415 F.3d at 1312). Indeed, that is precisely what counsel for Cloudera argued at the Pretrial Conference. (ECF No. 298 at 67 (arguing that "neither party requested that this ['configured to'] be construed," and "in light of that, that term is given its plain and ordinary meaning").

*Second*, as Cloudera previously argued, "[c]ourts have consistently held that parties may introduce evidence at trial as to the plain and ordinary meaning of unconstrued terms." (ECF No. 250 at 7 (collecting cases).) Cloudera prevailed on that issue, defeating StreamScale's Motion to Strike regarding Dr. Ramchandran. (ECF No. 303 at 1 (denying ECF No. 202).) Thus, the parties submitted the infringement dispute to the jury on the plain and ordinary meaning of "configured to," just as Cloudera wanted. (ECF No. 298 at 67:15–21 (arguing that "the jury is allowed to hear testimony from expert witnesses on what the plain and ordinary meaning of the term is to a person of ordinary skill in the art"). Having gotten what it asked for, Cloudera should

---

[3] These issues were also briefed prior to trial, and StreamScale incorporates those discussions by reference herein. (ECF No. 235 at 15–20; ECF No. 202 at 7–9; ECF No. 264 at 1–3.)

not now be heard to complain about the jury's verdict just because Cloudera does not like it. *VLSI Tech. LLC v. Intel Corp.*, -- F.4th --, 2023 WL 8360083, at *5 (Fed. Cir. Dec. 4, 2023) (citing *Avid Tech., Inc. v. Harmonic, Inc.*, 812 F.3d 1040, 1048–49 (Fed. Cir. 2016) and *Hewlett-Packard Co. v. Mustek Sys., Inc.*, 340 F.3d 1314, 1320–21 (Fed. Cir. 2003)) ("When a claim phrase is not construed, we defer to the jury's view of the claim element unless that view is contrary to the only reasonable view of the claim element.").

*Third*, when Cloudera belatedly proposed a construction of "configured to," long after claim construction proceedings ended, (*e.g.*, ECF No. 207 at 17–20; ECF No. 238 at 3–4, 7–8), this Court properly declined to adopt Cloudera's new proposed construction. (*E.g.*, ECF No. 303 at 1–2 (denying ECF Nos. 202, 207); ECF No. 335 at 18 ("For any words in the claim for which I have not provided you with a definition, you should apply the plain and ordinary meaning of those terms as understood by a person of ordinary skill in the art, which is to say, in the field of technology of the patent at the time of the invention.").) *E.g.*, *Bayer HealthCare LLC v. Baxalta Inc.*, 989 F.3d 964, 977–79 (Fed. Cir. 2021) (finding no *O2 Micro* error when the district court rejected a party's argument); *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1291 (Fed. Cir. 2015) (same); *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1326 (Fed. Cir. 2012) (same); *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1207 (Fed. Cir. 2010).

*Fourth*, even under Cloudera's proposed construction of "configured to," the jury heard substantial evidence that CDH infringes. Cloudera has asserted that "configured to" requires some "default" behavior in order to be "actually set to perform the function." (*E.g.*, ECF No. 360 at 9; *see* Trial Tr. at 739.) The code that Dr. Conte presented was all actually set in the source code, as discussed above. Additionally, the jury heard evidence that accelerated erasure coding using the

ISA-L library is a default behavior in CDH:

> Q.    Then the data processing node uses ISA-L to perform an erasure coding process on that 1 megabyte of data and populates the output of that into an output buffer; is that right?
> A.    Yes.
> Q.    In CDH Versions 6.0 and later, ***is the default for using erasure coding to use the ISA-L library***?
> A.    ***Yes***.

(Trial Tr. at 225.)

> Q.    And then within HDFS, there's a default erasure coding policy, correct?
> A.    There is a default erasure coding policy if the customer uses erasure coding.
> Q.    This is your code for CDH, correct? This is the code that's shipped to a customer, correct?
> A.    That is correct.
> Q.    And it says: Ec.system.default.policy, correct?
> A.    Ec.system -- yes. Correct.
> Q.    And it says: The default erasure coding policy, correct?
> A.    That is correct.

(Trial Tr. at 679.) And even Cloudera's exhibits state that "ISA-L is packaged and shipped with CDH" and "it is enabled by default."

***Using ISA-L (#hdfs_ee_verify)***

Intel Intelligent Storage Acceleration Library (ISA-L) is an open-source collection of optimized low-level functions used for storage applications. The library can improve EC performance when the Reed-Solomon (RS) codecs are used. ISA-L is packaged and shipped with CDH. Additionally it is enabled by default.

(DX-83 at 2 (emphasis added).)

*Finally*, while Cloudera continues to couch this argument—which it made repeatedly before trial—as about the meaning of "configured to," its only argument is about ***what*** is "configured," not what "configured" means. Cloudera's claim-construction-styled argument abrogates the actual claim language, which is tied to the computer instructions, not hardware, or user policies, or something else. Further, it allows Cloudera to misleadingly suggest that, although CDH includes the requisite computer instructions to implement accelerated erasure coding, the presence of additional, unrecited computer instructions to implement storage via replication allows

14

Cloudera to avoid infringement. But each of the Asserted Claims use the transition "comprising." And, it is black letter law that "[t]he transitional term 'comprising' . . . is inclusive or open ended and does not exclude additional, unrecited elements." *CollegeNet, Inc. v. ApplyYourself, Inc.*, 418 F.3d 1225, 1235 (Fed. Cir. 2005) (quoting *Georgia-Pacific Corp. v. United States Gypsum Co.*, 195 F.3d 1322, 1327–28 (Fed. Cir. 1999)); *see also Hilgraeve Corp. v. Symantec Corp.*, 265 F.3d 1336, 1343 (Fed. Cir. 2001) ("[A]n accused device may be found to infringe if it is reasonably capable of satisfying the claim limitations, even though it may also be capable of non-infringing modes of operation.").

Here, the requisite computer instructions to implement accelerated erasure coding are "already present" in the underlying software product when used or sold by Cloudera. *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1205 (Fed. Cir. 2010); *Fantasy Sports Props., Inc. v. Sportsline.com, Inc.*, 287 F.3d 1108, 1118 (Fed. Cir. 2002). A user of the CDH software need not modify any code to use the accelerated erasure coding capabilities of CDH. *Finjan*, 626 F.3d at 1205; *Fantasy Sports*, 287 F.3d at 1118. Thus, the CDH product infringes under 35 U.S.C. § 271, regardless of the extent to which the software is "active" or "enabled," *Finjan*, 626 F.3d at 1204–05, or the "default" mode of operation. And, importantly, the Federal Circuit has held that "when executed" claim language, like that found in the claims 34 and 35 of the '296 Patent, invokes the analysis of *Finjan*. *VirnetX Inc. v. Apple Inc.*, 792 F. App'x 796, 808 (Fed. Cir. 2019).

> The "when executed" language does not preclude the need for any activation action to enable the execution, any more than the language in *Finjan*— i.e., "storage medium storing program code for causing" performance of specified steps—required that the relevant code be "active" without the need for any user action to activate it.

*Id.*

### 4.     Cloudera "Uses" Under Section 271(a) When it Tests.

As described in Section II.A.1 above, Cloudera infringes the Asserted Claims by "using"

when it tests CDH. 35 U.S.C. § 271(a). Such use is infringement. *Waymark*, 245 F.3d at 1366 (holding that "testing is a use of the invention that may infringe under § 271(a)").

**B.    Substantial Evidence Supports the Jury's Validity Verdict.**

The Court should reject Cloudera's invitation to upend the jury's verdict that the Asserted Claims are valid based upon the testimony of Dr. Darrell Long. (ECF No. 360 at 12–15.) At trial, Cloudera presented only obviousness attacks on the validity of the Asserted Claims. An obviousness claim "is a question of law based on factual findings: (1) the scope and content of the prior art; (2) the differences between the claims and the prior art; (3) the level of ordinary skill in the art; and (4) objective indicia of nonobviousness." *Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1360 (Fed. Cir. 2012) (citing *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17–18 (1966)). Here, the jury was presented with substantial evidence on these underlying factual findings supporting its verdict of no invalidity.

Cloudera generically references dozens of pages of Dr. Long's testimony as the basis for its request for JMOL on the question of validity. (ECF No. 360 at 12–15.) When seeking JMOL of invalidity contrary to the jury's verdict, the issue is not whether there exists ***any*** evidence in the record of alleged invalidity. Instead, the question is whether Cloudera has established its case by evidence so credible and so persuasive that this case becomes one of those "extreme cases" in which JMOL for the party bearing the burden of proof is appropriate. *Mentor H/S Inc. v. Med. Device All., Inc.*, 244 F.3d 1365, 1375 (Fed. Cir. 2001) . This is not such a case, as the jury heard all of the evidence to which Cloudera now points and returned a verdict that the Asserted Claims are valid. Though Cloudera itself might disagree with the jury's verdict, "the record evidence is such that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions," making JMOL inappropriate. *CloudofChange, LLC v. NCR Corp.*, No. W-19-CV-00513-ADA, 2022 WL 15527756, at *1 (W.D. Tex. Oct. 27, 2022) (citing *Laxton v.*

16

*Gap Inc.*, 333 F.3d 572, 579 (5th Cir. 2003)).

The jury's verdict should stand in the presence of substantial evidence, in the light most favorable to StreamScale. *Am. Home Assurance v. United Space All., LLC*, 378 F.3d 482, 487 (5th Cir. 2004) (citing *Liberty Mut. Ins. Co. v. Falgoust*, 386 F.2d 248, 253 (5th Cir. 1967)). "Substantial evidence is more than a scintilla, but less than a preponderance." *CloudofChange*, 2022 WL 15527756, at *2 (citing *Nichols v. Reliance Stand. Life Ins. Co.*, 924 F.3d 802, 808 (5th Cir. 2019)). Here, even Cloudera concedes that StreamScale presented the jury with more than a scintilla of evidence of validity. (ECF No. 360 at 14 (recognizing that StreamScale presented at least "limited" testimony of validity).) Because Cloudera had the burden of proving obviousness by clear and convincing evidence, it cannot prevail unless it shows that its evidence was so overwhelming that "that no reasonable jury could have failed to conclude that [its invalidity] case had been established by clear and convincing evidence." *Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.*, 320 F.3d 1339, 1353 (Fed. Cir. 2003).

Cloudera complains that StreamScale allegedly failed to rebut Dr. Long's testimony. Setting aside the factual inaccuracy of that assertion, it is a red herring. Cloudera bears the heavy burden of proof by clear and convincing evidence to prevail on invalidity. StreamScale was not obligated to present ***any*** evidence in response, as the jury could have simply found that Cloudera failed to meet its burden of proof. *E.g.*, *Hearing Components, Inc. v. Shure, Inc.*, No. 9:07-CV-104, 2009 WL 593836, at *6 (E.D. Tex. Mar. 6, 2009) (holding that patentee did not have to prove validity, patents are presumed valid, and an infringer cannot win JMOL of invalidity "by pointing to a lack of evidence" from the patentee). The jury was not required to believe Cloudera's argument through Dr. Long's testimony. But StreamScale presented substantial evidence of validity through documents and the testimony of Dr. Conte. Because competing expert testimony and evidence

17

supports the jury's finding, the Court should deny Cloudera's Motion for JMOL.

The jury heard extensive evidence about the alleged disclosures of Macy and Plank as they relate to the Asserted Claims. (*E.g.*, Trial Tr. at 854–76.) That evidence included Dr. Conte's testimony that a person of ordinary skill in the art would not have combined Macy and Plank. (*E.g.*, *id.* at 854–70, 889–91, 897–99.) The jury heard about claim elements that were ***not disclosed at all*** in either Macy or Plank. (*E.g.*, *id.* at 870:24–873:9.) And the jury heard substantial evidence of praise for the invention tied specifically to ***work the inventor did***—the veritable definition of "nexus" Cloudera asserts was lacking. (*E.g.*, Trial Tr. at 127.) Though Cloudera might disagree with Dr. Conte, that is an insufficient basis on which to grant JMOL in favor of the party bearing the burden of proof. This is not an "extreme case[]," *Mentor H/S*, 244 F.3d at 1375, and the Court should deny Cloudera's Motion.

### C.  Substantial Evidence Supports the Jury's Damages Verdict.

Cloudera raises three alleged bases for overturning the jury's $240 million verdict and instead awarding StreamScale $0 for Cloudera's infringement of StreamScale's patented technology. None have merit. Substantial evidence supports the jury's damages award and the Court should affirm it in all respects.

#### 1.    Mr. Weinstein Properly Used the Facebook Offer as Part of the Hypothetical Negotiation.

Cloudera again challenges Mr. Weinstein's damages opinion for making use of the Facebook offer. (ECF No. 360 at 15–16.) As explained in StreamScale's opposition to Cloudera's Motion for a New Trial (filed concurrently herewith and incorporated by reference), (1) Cloudera has waived this argument, (2) Mr. Weinstein's reliance on the Facebook offer is legally proper; and (3) Mr. Weinstein's reliance on StreamScale's pricing model of $100 per drive was reliable and proper. Indeed, the Court already rejected many of Cloudera's arguments in this regard. (*See,*

*e.g.*, ECF No. 303 at 2.) As a result, Cloudera's motion in this regard should be denied.

2.    Mr. Weinstein's Alternative Damages Model was Proper.

Cloudera wrongly challenges Mr. Weinstein's damages opinion based on Cloudera's incremental profit for the infringing products over prior non-infringing products. (ECF No. 360 at 16–17.) As explained in StreamScale's opposition to Cloudera's Motion for a New Trial (filed concurrently herewith and incorporated by reference), (1) Cloudera waived this argument, (2) substantial evidence supported Mr. Weinstein's incremental profit analysis, and (3) Dr. Conte's opinions supporting Mr. Weinstein's incremental profits analysis are well-supported and reliable. As a result, Cloudera's motion in this regard should be denied.

3.    Substantial Evidence Supports Damages from Cloudera's Internal Action.

Cloudera also wrongly argues that StreamScale has no evidence to support damages because StreamScale's evidence was limited to sales of the infringing products. (ECF No. 360 at 17–20.) As explained in StreamScale's opposition to Cloudera's Motion for a New Trial (filed concurrently herewith and incorporated by reference), (1) even if correct (which it is not), Cloudera's argument would not change the damages award; (2) Cloudera waived this argument, and (3) StreamScale presented substantial evidence tying Cloudera's infringing testing use to its damages model. As a result, Cloudera's motion in this regard should be denied.

Cloudera's citation to *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278 (Fed. Cir. 2020) is inapplicable. *TecSec* concluded that direct infringement could occur only after installation of Adobe Acrobat, which means sales could not be the measure of damages for Adobe's direct infringement. *Id.* at 1291–92. Here, making, selling, and testing all constitute infringing acts for one or more of the Asserted Patents and the jury was instructed—by agreement—that the amount of damages would be the same regardless of the number of infringed patents. (Trial Tr. at 941.) Accordingly, sales is an appropriate measure of damages. Indeed, absent a complete failure of

proof that does not exist here, the *TecSec* court aptly noted that the Federal Circuit has at various times "stated that it is 'unlikely' that a hypothetical negotiation would result in a zero royalty rate." *TecSec*, 978 F.3d at 1291 (quoting *Apple, Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1328 n.7 (Fed. Cir. 2014)).[4]

In sum, StreamScale has provided substantial evidence of an appropriate nexus between internal testing and sales. As such, Cloudera's motion should be denied. *E.g.*, *Infernal*, 2021 WL 4391250, at *12 ("The Court agrees that, in some instances, it may be appropriate to base damages for internal use of a claimed method on product sales.").

## III.   CONCLUSION

Substantial evidence exists in the record to support the jury's verdict that (i) Cloudera infringes the Asserted Claims, (ii) the Asserted Claims are not invalid, and (iii) Cloudera is liable for $240 million in damages for its patent infringement. (ECF No. 340.) Accordingly, the Court should deny Cloudera's Rule 50(b) Motion for Judgment as a Matter of Law.

---

[4] Cloudera's other cited cases are similarly unavailing. *Sapphire Crossing LLC v. Abbyy USA Software House, Inc.* is distinguishable because the claims at issue were method claims and the footnote about damages is dicta relying exclusively on internal testing. Nos. 20-cv-03590-YGR, 20-cv-03593-YGR, 2020 WL 6318716, at *2 (N.D. Cal. Oct. 28, 2020). *Vocalife LLC v. Amazon.com, Inc.* similarly is distinguishable because its method claims could only be infringed by internal testing or customer use. No. 2:19-cv-00123-JRG, 2020 WL 5815950, at *2 (E.D. Tex. Sept. 30, 2020). *Cirba Inc. v. VMware, Inc.* is also based on method claims and a lack of nexus between testing/use and sales. No. 19-742-GBW, 2023 WL 3151853, at *4–6 (D. Del. Apr. 18, 2023). *AOS Holding Co. v. Bradford White Corp.* also involved a method claim and lost profits with no nexus shown to internal direct infringement. No. 18-412-LPS, 2021 WL 5411103, at *2, *37–40 (D. Del. Mar. 31, 2021). *Infernal Technology LLC v. Activision Blizzard Inc.* also was based on a failure to show a nexus between method claims and sales. No. 3:18-cv-01397-M, 2021 WL 4391250, at *11–12 (N.D. Tex. Sept. 16, 2021). Lastly, Cloudera misleading quotes *Interwoven, Inc. v. Vertical Computer Systems* to suggest the court was addressing reasonable royalties, it was not. (ECF No. 360 at 20.) The quoted language actually was directed to a failure to prove a causal connection for **lost profits** damages based on internal use. No. CV 10-04645 RS, 2014 WL 490996, at *4 (N.D. Cal. Feb. 3, 2014). Indeed, the *Interwoven* court expressly allowed the expert to opine on sales-based **reasonable royalty** damages.

Dated: December 22, 2023

Respectfully submitted,

*/s/ Jamie H. McDole*

Jamie H. McDole
  State Bar No. 24082049
Phillip B. Philbin
  State Bar No. 15909020
Michael D. Karson
  State Bar No. 24090198
David W. Higer
  State Bar No. 24127850
Miranda Y. Jones
  State Bar No. 24065519
Matthew K. Joeckel
  State Bar No. 24110052
Grant Tucker
  State Bar No. 24121422
WINSTEAD PC
2728 N. Harwood Street
Suite 500
Dallas, Texas 75201
Tel.: 214.745.5400
Fax: 214.745.5390
Email: jmcdole@winstead.com
      pphilbin@winstead.com
      mkarson@winstead.com
      dhiger@winstead.com
      mjones@winstead.com
      mjoeckel@winstead.com
      gtucker@winstead.com

Jason G. Sheasby (*pro hac vice*)
IRELL & MANELLA LLP
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067
Tel.: 310.277.1010
Fax: 310.203.7199
Email: jsheasby@irell.com

Lisa Glasser (*pro hac vice*)
Stephen M. Payne (*pro hac vice*)
IRELL & MANELLA LLP
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660
Tel.: 949.760.0991
Fax: 949.760.5200
Email: lglasser@irell.com
           spayne@irell.com

Max Ciccarelli
   State Bar No. 00787242
CICCARELLI LAW FIRM LLC
100 N. 6th Street, Suite 502
Waco, Texas 76701
Tel.: 214.444.8869
Email: Max@CiccarelliLawFirm.com

*Attorneys for Plaintiff StreamScale, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that, on December 22, 2023, I electronically submitted the foregoing document with the clerk of the United States District Court for the Western District of Texas, using the electronic case management CM/ECF system of the Court which will send notification of such filing to the following:

Brock S. Weber
brock.weber@pillsburylaw.com
Christopher Kao
christopher.kao@pillsburylaw.com
John J. Steger
john.steger@pillsburylaw.com
Surui Qu
surui.qu@pillsburylaw.com
Pillsbury Winthrop Shaw Pittman LLP
4 Embarcadero Center, 22nd Floor
San Francisco, CA 94111

Steven P. Tepera
steven.tepera@pillsburylaw.com
Benjamin L. Bernell
ben.bernell@pillsburylaw.com
Christopher L. Drymalla
chris.drymalla@pillsburylaw.com
Pillsbury Winthrop Shaw Pittman LLP
401 Congress Avenue, Suite 1700
Austin, TX 78701

Audrey Lo
audrey.lo@pillsburylaw.com
Pillsbury Winthrop Shaw Pittman LLP
2550 Hanover Street
Palo Alto, CA 94304

Jeffrey E. Faucette
jeff@skaggsfaucette.com
Skaggs Faucette LLP
Four Embarcadero Center, Suite 1400
San Francisco, CA 94111

Darryl J. Adams
dadams@sgbfirm.com
Slayden Grubert Beard PLLC
401 Congress Avenue, Suite 1650
Austin, TX 78701

Deanne E. Maynard
dmaynard@mofo.com
Morrison & Foerster LLP
2100 L Street, NW, Suite 900
Washington, DC 20037

*Counsel for Defendant Cloudera, Inc.*

*/s/ Jamie H. McDole*
Jamie H. McDole